**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of New York

Case number (if known). _____ Chapter 15

☐ Check if this is an
amended filing

## Official Form 401
# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | |
|---|---|
| 1. Debtor's name | Platinum Partners Value Arbitrage Fund L.P. |
| 2. Debtor's unique identifier | **For non-individual debtors:**<br>☑ Federal Employer Identification Number (EIN)  1 4 – 1 8 6 1 9 5 4<br>☐ Other _____, Describe identifier _____<br><br>**For individual debtors:**<br>☐ Social Security number: xxx – xx– ___ ___ ___ ___<br>☐ Individual Taxpayer Identification number (ITIN): 9 xx – xx – ___ ___ ___ ___<br>☐ Other _____, Describe identifier _____ |
| 3. Name of foreign representative(s) | Matthew James Wright and Christopher Barnett Kennedy |
| 4. Foreign proceeding in which appointment of the foreign representative(s) occurred | Fin. Servs. Div. of Grand Ct. of Cayman Is. (cause no. FSD 131 of 2016 (AJJ)) |
| 5. Nature of the foreign proceeding | Check one:<br>☐ Foreign main proceeding<br>☐ Foreign nonmain proceeding<br>☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding |
| 6. Evidence of the foreign proceeding | ☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.<br>☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.<br>☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached. |
| 7. Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)? | ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)<br>☑ Yes |

| Debtor | Platinum Partners Value Arbitrage Fund L.P. | Case number (if known) |
|---|---|---|
| | Name | |

| 8. | Others entitled to notice | Attach a list containing the names and addresses of: |
|---|---|---|
| | | (i)   all persons or bodies authorized to administer foreign proceedings of the debtor, |
| | | (ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and |
| | | (iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code. |

| 9. | Addresses | Country where the debtor has the center of its main interests: | Debtor's registered office: |
|---|---|---|---|

Cayman Islands

Debtor's registered office:

C/o Intertrust Corp. Servs. (Cayman) Ltd.

190 Elgin Avenue, George Town
Number        Street

KY1-9005
P.O. Box

Grand Cayman
City          State/Province/Region        ZIP/Postal Code

Cayman Islands
Country

Individual debtor's habitual residence:

Number        Street

P O Box

City          State/Province/Region        ZIP/Postal Code

Country

Address of foreign representative(s):

RHSW (Cayman) Limited

2nd Fl., Windward 1, Regatta Office Park
Number        Street

897, KY1-1103
P.O. Box

Grand Cayman
City          State/Province/Region        ZIP/Postal Code

Cayman Islands
Country

| 10. | Debtor's website (URL) | http://www.platinumlp.com |
|---|---|---|

| 11. | Type of debtor | Check one: |
|---|---|---|
| | | ☑ Non-individual (check one): |
| | | ☐ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1. |
| | | ☑ Partnership |
| | | ☐ Other.  Specify: _____ |
| | | ☐ Individual |

| Debtor | Platinum Partners Value Arbitrage Fund L.P. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**12. Why is venue proper in *this district*?**

Check one:

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:
Debtor conducts business and possess assets within the District

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

X _____     Matthew James Wright
Signature of foreign representative         Printed name

Executed on  10 / 16 / 2016
MM / DD / YYYY

X _____     Christopher Barnett Kennedy
Signature of foreign representative         Printed name

Executed on  10 / 16 / 2016
MM / DD / YYYY

**14. Signature of attorney**

X _____     Date  10/14/2016
Signature of Attorney for foreign representative       MM / DD / YYYY

Warren Gluck
Printed name
Holland & Knight LLP
Firm name
31 W. 52nd St., 13th Floor
Number    Street
New York                                         NY        10019
City                                             State     ZIP Code

(212) 513-3200                                   warren.gluck@hklaw.com
Contact phone                                    Email address

4701421                                          NY
Bar number                                       State

HOLLAND & KNIGHT LLP
Warren E. Gluck, Esq.
Barbra R. Parlin, Esq.
Arthur E. Rosenberg, Esq.
31 West 52nd Street
New York, New York 10019
Telephone:  (212) 513-3200
Facsimile:  (212) 385-9010

*Counsel for the Liquidators of the Funds*

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| | : | |
| PLATINUM PARTNERS VALUE | : | Case No. 16-_____ (___) |
| ARBITRAGE FUND L.P. (IN | : | |
| PROVISIONAL LIQUIDATION),[1] *et al.,* | : | (Joint Administration Requested) |
| | : | |
| Debtors in | : | |
| Foreign Proceedings. | : | |
| | : | |
| | : | |

------------------------------------------------------------x

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY
## PROCEEDINGS AND APPLICATION FOR ADDITIONAL RELIEF PURSUANT TO
## SECTIONS 1504, 1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE

Matthew James Wright and Christopher Barnett Kennedy, duly appointed joint provisional

liquidators (**"Petitioners"** or **"Liquidators"**) of Platinum Partners Value Arbitrage Fund L.P. (in

Provisional Liquidation) (**"Master Fund"**) and the duly appointed joint official liquidators of Platinum

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: Platinum Partners Value Arbitrage Fund L.P. (in Provisional Liquidation) (1954) and Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) (2356).  The registered office of the International Fund is c/o The R&H Trust Co. Ltd., Windward 1, Regatta Office Park, P.O. Box 897, Grand Cayman KY1-1103, Cayman Islands. The Master Fund's registered address is c/o Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9005, Cayman Islands.

Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) ("**International Fund**" and together with Master Fund, the "**Funds**"), both Funds in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (the "**Grand Court**") (cause nos. FSD 131 of 2016 (AJJ) (Master Fund) and 118 of 2016 (AJJ) (International Fund)) as a result of the Grand Court's orders made pursuant to petitions for the winding up of the Funds presented under, as applicable, sections 92 and 104 of the Companies Law of the Cayman Islands (2016 Revision) (the "**Companies Law**")[2] and section 36 of the Exempted Limited Partnership Law, 2014 ("**ELP Law**")[3] , by its undersigned United States counsel, Holland & Knight LLP, respectfully submit the Official Form Petitions, this Verified Petition (together, the "**Petition**"), the accompanying Declaration of Christopher Barnett Kennedy executed on October 18, 2016 (the "**Kennedy Declaration**"), the Declaration of Stephen Leontsinis, executed on October 17, 2016 (the "**Leontsinis Declaration**"), and the Declaration of Warren E. Gluck, executed on October 17, 2016 (the "**Gluck Declaration**" and, together with the Kennedy Declaration and the Leontsinis Declaration, the "**Declarations**"), for entry of an Order pursuant to Chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

    (i)    recognizing the Cayman Liquidations as foreign main proceedings, or in the alternative, foreign nonmain proceedings, pursuant to chapter 15 of the Bankruptcy Code, and Petitioners as the Funds' foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

    (ii)    granting relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

---

[2] Excerpts of the relevant provisions of the Companies Law are attached as Exhibit A to the Leontsinis Declaration.
[3] Excerpts of the relevant provisions of the ELP Law are attached as Exhibit B to the Leontsinis Declaration.

## PRELIMINARY STATEMENT

1.    The purpose of Chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses. *See, e.g., In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014); 11 U.S.C. § 1501(a)(1)-(5)). To that end, the Liquidators request recognition of the Cayman Liquidations as foreign main proceedings primarily to obtain this Court's assistance in enforcing the stay of proceedings and actions against the Funds and property of their estates as ordered by the Grand Court through the Liquidation Orders. Recognition of the Cayman Liquidations as foreign main proceedings would confer upon the Funds the protection of sections 362 and 1520 of the Bankruptcy Code, thereby preventing any one creditor from gaining an advantage over similarly situated creditors or otherwise interfering with the Cayman Liquidations and implementation of orders of the Grand Court.

2.    Both Funds are in liquidation pursuant to the orders of the Grand Court (cause nos. FSD 131 of 2016 (AJJ) (Master Fund) and 118 of 2016 (AJJ) (International Fund)) (the "**Liquidation Orders**"). The Liquidation Orders were issued pursuant to sections 92 and 104 of the Companies Law, of the Cayman Islands (2016 Revision) in relation to the International Fund and Master Fund, respectively. Together, the Master Fund and the International Fund liquidations are referred to herein as the Cayman Liquidations (the "**Cayman Liquidations**").

3

3.        As this Petition, the accompanying Declarations and the exhibits thereto demonstrate, the Cayman Liquidations should be recognized as foreign main proceedings. In the event that the Cayman Liquidations are recognized as foreign nonmain proceedings, this Court has the discretion to order the protections and relief it deems appropriate pursuant to sections 1507 and 1521 of the Bankruptcy Code - including the requested stay of the continuation of actions or proceedings against the Funds' assets. 11 U.S.C. § 1521(a).

4.        The Liquidators seek precisely the type of relief that chapter 15 was designed to provide, and the Cayman Liquidations and this Petition meet all the requirements for recognition and the requested relief. In particular, the Liquidators were appointed by the Grand Court to administer the Funds' assets, liabilities, and any ongoing business occurring in connection with the court-ordered Cayman Liquidations of the Funds pursuant to the Companies Law, a law relating to insolvency or adjustment of debt. *Kennedy Declaration*, ¶ 8.

5.        Likewise, the Cayman Liquidations are collective judicial proceedings as referenced in 15 U.S.C. § 101(23), subject to the oversight and control of the Grand Court, encompassing all creditors and stakeholders of the Funds, which are pending in the Cayman Islands, the country in which both the International Fund and the Master Fund were formed, maintain registered offices, maintain their center of main interests ("**COMI**"), and where the Liquidators are engaged in substantial, non-transient, ongoing economic activity involving the wind-down and liquidation of the Funds' businesses and affairs. *Kennedy Declaration*, ¶¶ 46-72.

6.        Pursuant to section 1516(c) of the Bankruptcy Code, the Cayman Islands are presumed to be the Funds' COMI because the Funds were incorporated there and maintain their registered office there. *Kennedy Declaration*, ¶ 46.    This Petition and the accompanying Declarations further demonstrate that the Funds' counterparties and creditors had clear and actual knowledge that each of

the Funds was a Cayman Islands entity. *Kennedy Declaration*, ¶ 51. Since the commencement of the Cayman Liquidations, the Cayman Islands are the obvious and demonstrable "nerve center" of the Funds' ongoing liquidation and the Liquidators have conducted and overseen the conducting of substantial negotiations, transactions and litigation and the business of the Funds as going concerns from the Cayman Islands. Hence, the Cayman Liquidations are "foreign main proceedings" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

7.    This and other Courts have recognized similar liquidation proceedings of Cayman Island entities as foreign main proceedings. *See, e.g., In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (commencement of provisional Cayman Islands proceedings, together with subsequent activities of liquidators, had the effect of transferring holding company's COMI to Cayman); *In re Millard,* 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013); *In re AJW Offshore Ltd.,* No. 13-70078, (Bankr. E.D.N.Y. Feb. 5, 2013); *In re Bancredit Cayman Ltd. (in Liquidation),* No. 06-11026 (SMB) (Bankr. S.D.N.Y. June 16, 2006); *In re LDK Solar Co., Ltd.,* No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) (recognizing Cayman Islands liquidation as foreign main proceeding); *In re Saad Invs. Fin. Co. (No. 5) Ltd.,* No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) (same); *see also In re Niton Fund SPC,* 15-13252 (SMB) (Bankr. S.D.N.Y.) (Wright/Kennedy as Liquidators); *In re Madison Niche Assets Fund, Ltd., et. al.,* 16-10043 (KJC) (Bankr. D. Del.) (Wright/Kennedy as Liquidators); *In re Richcourt Euro Strategies Inc., et. al,* 15-12273 (REG) (Bankr. S.D.N.Y) (Wright as Liquidator).

8.    For all of these reasons and as will be shown below, the Liquidators respectfully submit that: (i) the Cayman Liquidations are foreign main proceedings within the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) the Liquidators are the duly appointed foreign representatives of the Funds within the meaning of section 101(24); (iii) the Liquidators and the Petition comply with

all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (iv) recognition of the Cayman Liquidations would not be contrary to public policy under Bankruptcy Code section 1506.

9.     Under the circumstances, this Court can and should enter an order recognizing the Cayman Liquidations as foreign main proceedings under section 1517(b)(l), or in the alternative, as foreign nonmain proceedings under section 1517(b)(2) of the Bankruptcy Code, and granting additional relief as set forth in section 1521 of the Bankruptcy Code.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

11.     Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1410 because the Funds conduct business and possess assets within the District.

12.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

13.     The statutory predicates for the relief requested herein are sections 105(a), 362, 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## FACTUAL BACKGROUND

### I.     The Funds' Pre-Liquidation Business

14.     On October 25, 2002, the International Fund was incorporated as an exempted limited company under the laws of the Cayman Islands. *Kennedy Declaration*, ¶ 9. The Master Fund was formed pursuant to a Second Amended and Restated Limited Partnership Agreement, dated July 1, 2008, registered with the Cayman Islands Registrar of Exempted Limited Partnerships. *Leontsinis Declaration*, ¶ 11.

15.    The Master Fund was registered with and regulated by the Cayman Islands Monetary Authority ("**CIMA**") as a master fund. The International Fund was registered with and regulated by CIMA as a mutual fund. Both Funds' CIMA licenses were terminated following their entry into liquidation. *Leontsinis Declaration*, ¶ 12.

16.    Following the International Fund's entry into liquidation, its registered address was changed from c/o Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9005, Cayman Islands to c/o The R&H Trust Co. Ltd., Windward 1, Regatta Office Park, PO Box 897, Grand Cayman KY1-1103, Cayman Islands.  The Master Fund's registered address is c/o Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9005, Cayman Islands. *Leontsinis Declaration*, ¶ 13.

17.    The Funds belong to a group of companies (the "**Platinum Group**") that was ultimately controlled and managed by Platinum Management (NY), LLC ("**Platinum Management**"). *Kennedy Declaration*, ¶ 9.

18.    By the International Funds' offering documents, namely, a Confidential Private Offering Memorandum dated in or about April 2015 (the "**Offering Memorandum**"), the International Fund carries on business as an investment fund. The International Fund invests all of its investable capital in Platinum Partners Value Arbitrage Intermediate Fund Ltd., an exempted, limited liability company incorporated in the Cayman Islands on April 9, 2010 (the **"Intermediate Fund"**).  Under the laws of the Cayman Islands, the shares of a Cayman Islands company constitutes the personal property of the holder of those shares. As the International Fund is domiciled in the Cayman Islands, the *lex situs* of the shares held by the International Fund in the Intermediate Fund, is the Cayman Islands. Consequently, virtually all of the assets of the International Fund are located in the Cayman Islands. *Leontsinis Declaration*, ¶ 13.

19.    The Intermediate Fund invests all of its investable capital in, and is a limited partner of, the Master Fund. The Master Fund invests all its investable capital in certain assets and holding companies as described below. *Leontsinis Declaration*, ¶ 14.

20.    In addition to the Intermediate Fund, one additional fund acts as a feeder fund into and a limited partner of the Master Fund. This entity is registered in Delaware and is known as Platinum Partners Value Arbitrage Fund (USA) L.P., which feeds directly into the Master Fund. *Leontsinis Declaration*, ¶ 15.

21.    The Liquidators understand that the assets of the International Fund consist solely of its share of the Intermediate Fund, and the assets of Intermediate Fund consist solely of its share of the Master Fund. As such, the financial position of the International Fund is dependent upon the performance of the Master Fund and, in turn, the value of the assets in which the Master Fund holds interests. The assets of the Master Fund, as valued by Platinum Management as of June 30, 2016 consist of, in part[4]:

(a)    investments in securities, debt and other investment assets with a value of approximately $915,000,000;

(b)    securities purchased under agreements to resell with a value of approximately $46,000,000;

(c)    unrealised appreciation on open derivative contracts with a value of approximately $6,900,000;

(d)    amounts due from brokers with a value of approximately $49,700,000;

(e)    interest receivable in the amount of approximately $23,000,000;

---

[4] While our review of the Master Funds' assets is ongoing, the Liquidators do caveat the asset values described herein in the following principal respect. The Master Fund holds the majority of its assets via wholly-owned subsidiaries and other vehicles. In connection with the Liquidators' fundraising efforts, some of these assets, held via wholly-owned subsidiaries of the Master Fund, were considered for sale. During this process, it has become clear that many of the Master Funds' subsidiaries and those subsidiaries' assets are themselves subject to various loan and encumbrance agreements that have the effect of substantially diminishing underlying or operational assets' value from the perspective of the Master Fund level.

(f)     a potential asset in respect of the purchase of notes under a Put Agreement with a value of $30,000,000;

(g)     notes receivable with a value of approximately $16,000,000;

(h)     participation interest with a value of approximately $3,000,000;

(i)     claims receivable with a value of approximately $2,000,000;

(j)     cash in the approximate amount of $68,500; and

(k)     prepayments of approximately $1,000,000.

*Kennedy Declaration*, ¶ 17.

22. According to unaudited information provided to the Liquidators, the Master Fund's liabilities as of May 31, 2016 totaled approximately $382,000,000 and principally comprise:

(a)     a number of structured financial liabilities in the approximate combined principal and interest amount of $94,378,544 owed to:

    (i)     Heartland Bank, a United States bank based in Arkansas; and

    (ii)     the holders of a series of promissory notes issued by the Master Fund, some of whom were former investors in certain of the Master Fund's feeder funds and who hold the promissory notes in settlement of historic redemption requests submitted to such feeder funds and, indirectly, to the Master Fund;

(b)     a potential liability to New Mountain Finance Corporation ("**New Mountain**") in the amount claimed by New Mountain of approximately $31,800,000 (as at May 18, 2016 and subject to daily accruing interest claimed for the period thereafter) regarding payments which New Mountain claims are due from the Master Fund in respect to a securities purchase and put agreement dated November 7, 2014;

(c)     indirect liabilities to certain of its ultimate redemption creditors in respect of:

    (i)     unpaid redemptions and withdrawals in the approximate amount of $66,711,212; and

    (ii)     audit holdback amounts in the amount of $9,910,029;

(d)     the following management fee liabilities to the Intermediate Fund and the Onshore Fund:

(i)    $4,716,731 due to the Intermediate Fund; and

(ii)    $2,683,160 due to the Onshore Fund;

(e)    accrued expenses and liabilities in the approximate amount of $6,449,468;

(f)    an amount payable to the general partner of the Master Fund of $4,291,275;

(g)    accrued trader fees of $13,073,209;

(h)    amounts due to the holders of minority interests in the Master Fund's subsidiary companies of $1,813,251;

(i)    liabilities of approximately $106,824,701 representing the amount the Master Fund expects to be required to cover in respect of short sale contracts entered into by the Master Fund; and

(j)    unrealised depreciation on derivative contracts of approximately $15,742,077.

*Kennedy Declaration*, ¶ 18.

23.    The investigations by the Liquidators have revealed additional liabilities of the Funds not made known to them upon their appointment. For example, on March 21, 2016, the Master Fund entered into a Master Guaranty Agreement ("**Master Guaranty**") in favor of, among others, BAM Administrative Services LLC, pursuant to which the Master Fund guaranteed the repayment of certain debts owed by each of (i) Golden Gate Oil LLC (a company into which the Master Fund invests); and (ii) Montsant Partners LLC (a wholly-owned subsidiary of the Master Fund). The terms of the Master Guaranty also provide that, if the Master Fund is considered to be 'insolvent' for the purposes of the Master Guarantee, BAM Administrative Services LLC may exercise the option to deem all amounts guaranteed by the Master Guaranty to be due and payable. BAM Administrative Services LLC has filed a proof of debt in connection with the Cayman Liquidations in the amount of $79,146,350.65.

*Kennedy Declaration*, ¶ 19.

24.     The Master Fund, together with its wholly-owned subsidiary, DMRJ Group, LLC, entered into a Forbearance and Security Agreement (the "**Forbearance Agreement**") with Epocs Real Estate Partnership, Ltd. ("**Epocs**") and West Loop South LLC ("**West Loop**") dated July 5, 2016, in connection with loans made by Epocs and West Loop to the Master Fund. The terms of the Forbearance Agreement permitted Epocs and West Loop to collect on their claims in the event of an insolvency proceeding against the Master Fund. To that end, Epocs and West Loop have filed claims against the Master Fund in connection with the Cayman Liquidations in the amount of $2,596,619.91 and $4,955,040.61, respectively. *Kennedy Declaration*, ¶ 20.

## II.     The Cayman Liquidations

25.     Parris Investments Limited is a previous investor and shareholder in the International Fund ("**Parris**"). In or about August 2015, Parris purchased 556.9018 L-shares in the International Fund ("**Parris Shares**"). *Leontsinis Declaration*, ¶ 17.

26.     On October 21, 2015, an article was published in Bloomberg News raising a number of concerns regarding the Funds, including: (a) a third party broker doing business with the Funds that was sanctioned by regulators for running a scheme to profit from imminent deaths of terminally ill patients; (b) one of the Master Fund's largest investments, an oil company, being charged over the death of three workers killed in an explosion; (c) a former principal of an energy company in which the Funds had a significant stake in, being arrested for tax evasion; and (d) the Master Fund's portfolio being comprised primarily of hard to value, illiquid assets. *Kennedy Declaration*, ¶ 22.

27.     On October 27, 2015, Parris submitted a request to the International Fund for the full redemption of the Parris Shares, the redemption date of which was December 31, 2015 ("**Redemption Request**"). The Redemption Request was approved by the International Fund via its administrator and,

11

consequently, under the terms of the Offering Memorandum, 90% of the payment of Parris' redemption proceeds was due on January 30, 2016. *Leontsinis Declaration*, ¶ 17.

28.     On July 28, 2016, Parris, citing, among other things, the International Fund's failure to honor the Redemption Request, filed a creditor's petition seeking the liquidation and winding up of the International Fund by the Grand Court and the appointment of the Liquidators as Joint Official Liquidators of the International Fund pursuant to Section 92 the Companies Law ("**International Petition**"). *Leontsinis Declaration*, ¶ 18.

29.     As required by the Companies Law and the CWR (defined below), Parris placed notice of the filing of the International Petition and its request for appointment of the Liquidators in the *Cayman Times* and *The Financial Times* which was published on August 15, 2016. *Leontsinis Declaration*, ¶ 19.

30. On August 23, 2016, the Master Fund, through its general partner, Platinum Management (NY) LLC, presented a petition (the "**Master Petition**", and collectively with the International Petition, the "**Liquidation Petitions**," attached as Exhibit A to the Kennedy Declaration) to the Grand Court under section 92 of the Companies Law, made applicable to the Master Fund by way of Section 36 of the ELP Law, seeking, among other orders, orders that provided for: the liquidation of the Master Fund to commence under the authority of the Grand Court; the appointment of Messers. Wright and Kennedy as the Liquidators of the Funds; and the granting of certain powers to the Petitioners in their capacities as the Liquidators of the Funds, as described in the Liquidation Petitions and as discussed in greater detail below. *Leontsinis Declaration*, ¶ 20.

31.     Simultaneously with the presentation of the Master Petition, the general partner of the Master Fund issued an *ex parte* summons to appoint the Liquidators as Joint Provisional Liquidators of the Master Fund in accordance with section 104 of the Companies Law, pending adjudication of the

Master Petition (the **"Provisional Summons**," attached as Exhibit B to the Kennedy Declaration). *Leontsinis Declaration*, ¶ 21.

32.    Also on August 23, 2016, the Grand Court issued a Winding Up Order for the International Fund on the terms requested through the International Petition ("**International Order**"). *Leontsinis Declaration*, ¶ 22.

33.    On August 29, 2016, the Grand Court issued an Order for the Master Fund to be placed into provisional liquidation pending the determination of the Master Petition which is due to be heard on October, 27 2016 and appointed the Liquidators as Joint Provisional Liquidators of the Master Fund. ("**Master Order**," attached together with the International Order as Exhibit C to the Kennedy Declaration). *Leontsinis Declaration*, ¶ 23.

34.    The general partner of the Master Fund reached the conclusion to voluntarily wind up the Master Fund based upon their analysis of all relevant factors, including the evidence of the following deteriorating financial conditions:

A.    The shift in the concentration of the Master Fund's assets to illiquid private equity style investments, which has caused an imbalance between liquid and illiquid assets. In that regard:

  (i)    Historically, the Master Fund's investment portfolio had been balanced between liquid and illiquid asset classes. However, in recent years the Master Fund has built up a large concentration of illiquid, private equity style investments, which are mostly in the oil and gas sectors (which sector comprises approximately 40% of the Master Fund's investments). This has caused an imbalance in the Master Fund between liquid and private equity style investments, which historically were balanced on an approximate 50/50 basis; and

  (ii)    The shift in the constitution of the Master Fund's investment portfolio assets to a large holding of illiquid assets has been primarily due to the successful appreciation of assets that caused the private equity style illiquid investments to occupy a larger position in the Master Fund and volatility in the markets whereby the Master Fund drew down its exposure in the liquid trading strategies and therefore was unable to restore such liquid trading strategies and delayed monetization events;

B.    A global decline in oil prices which has negatively affected the Master Fund's assets which operate in the oil and gas sector;

C.    A delay in the availability of audited financial statements due to the esoteric nature of many of the investment assets of the Master Fund, the ongoing investigations by United States regulatory agencies and the fact that the Master Fund's Administrator has not been in a position to assist due to its remaining a creditor of the Master Fund in respect of unpaid professional services fees;

D.    Delayed monetization events in relation to the Master Fund's investment assets which has delayed a rebalancing of the Master Fund's liquidity position;

E.    A large amount of investor redemptions remaining unpaid past their due date, such as Parris;

F.    The necessary borrowing of funds by the Master Fund to fund certain of its investment assets; and

G.    The filing by Parris of a petition with the Grand Court seeking the winding up of the International Fund.

*Kennedy Declaration*, ¶ 30.

## III.    The Cayman Liquidations and Cayman Islands Insolvency Law

35.    The substantive law relating to the winding up of companies incorporated in the Cayman Islands is contained in Part V of the Companies Law. *Leontsinis Declaration*, ¶ 28. The provisions of Part V apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies and limited partnerships. *Leontsinis Declaration*, ¶ 28. By virtue of section 36 of the ELP Law, the provisions of Part V of the Companies Law and the CWR (defined below) apply to the winding up of an exempted limited partnership with the exception of certain irrelevant sections. *Leontsinis Declaration* ¶ 28.

36.    The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Law, which is supplemented by the Companies Winding Up Rules 2008 (as revised) ("**CWR**"), the Insolvency Practitioners Regulations 2008 (as revised) (the

"**IPR**") the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2008 (as revised) and the Grand Court Rules 1995 (as revised) (the "**GCR**"). *Leontsinis Declaration*, ¶ 28.

37.    A Cayman Islands company may be wound up: (a) voluntarily, following the passing of a special resolution of its shareholder(s)[5] or pursuant to a mandatory term in its constitutional documents[6]; (b) compulsorily, by order of the Grand Court;[7] or (c) under the supervision of the Grand Court.[8] *Leontsinis Declaration*, ¶ 29.

38.    The Companies Law provides that a Cayman Islands company may be placed into provisional liquidation if the Court finds there is a *prima facie* case for making a winding up order, and the appointment of provisional liquidators is necessary to prevent the dissipation or misuse of the company's assets, to prevent the oppression of minority shareholders or to prevent the mismanagement or misconduct on the part of the company's directors.[9] *Leontsinis Declaration*, ¶ 31.

39.    In the case of both of the Funds, they entered into liquidation as a result of their inability to pay their respective debts as they fell due, following the presentation of the Master Petition by the Master Fund and the presentation of the International Petition by Parris (an undisputed creditor of the International Fund). *Leontsinis Declaration*, ¶ 33.

40.    The Liquidators are fiduciaries and officers of the Grand Court. As Official Liquidators of the International Fund, the Liquidators' duties pursuant to section 110 of the Companies Law are to: (a) collect, realise and distribute the assets of the Funds to its creditors and if there is a surplus, to equity holders, and (b) report to the Funds' creditors and other stakeholders upon the affairs of the Funds and

---

[5] Section 90(b)(i) of the Companies Law.
[6] Section 90(b)(ii) of the Companies Law.
[7] Section 90(a) of the Companies Law.
[8] Section 90(c) of the Companies Law.
[9] Section 104(2) of the Companies Law..

the manner in which they are being wound up.[10]  As Provisional Liquidators of the Master Fund their duties (a) are to prevent the dissipation of and to generally protect the assets of the Master Fund for the benefit of all of its stockholders, and (b) report to the Grand Court and the Master Funds' creditors and other stakeholders upon the affairs of the Master Fund *Leontsinis  Declaration*, ¶ 37.

41.       Except as otherwise ordered by the Grand Court, Schedule 3 to the Companies Law sets out the powers that the Liquidators may exercise with and without the supervision of the Grand Court. *Leontsinis  Declaration*, ¶¶ 38.

42.       Generally, the Liquidators are authorized and empowered to take the following actions, subject to the Grand Court's supervision:

- Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

- Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

- Power to dispose of any property of the company to a person who is or was related to the company.

- Power to pay any class of creditors in full.

- Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

- Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

---

[10] Section 110 of the Companies Law.

- Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

- The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

- The power to raise or borrow money and grant securities therefor over the property of the company, the power to engage staff (whether or not as employees of the company) to assist them in the performance of their functions.

- The power to engage attorneys and other professionally qualified persons to assist them in the performance of their functions.

*Leontsinis Declaration*, ¶ 38 (citing Companies Law, section 110, Schedule 3, Part I).

43.    Schedule 3, Part II of section 110 of the Companies Law further provides that the

Liquidators are permitted to exercise the following powers without the Grand Court's sanction:

- The power to take possession of, collect and enter the property of the company and for that purpose to take all such proceedings as the Liquidators consider necessary.

- The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

- The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against the Funds' estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

- The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

- The power to promote a scheme of arrangement pursuant to section 86.

- The power to convene meetings of creditors and contributories.

- The power to do all other things incidental to the exercise of their powers.

*Leontsinis Declaration*, ¶ 39 (citing Companies Law, section 110, Schedule 3, Part II).

44.     Under the Companies Law, the Liquidators are also empowered to investigate (i) the causes for the failure of the Funds' business, as well as (ii) generally, the promotion, business, dealings and affairs of the Funds. *Leontsinis Declaration*, ¶ 40 (citing Companies Law, section 102).

45.     A key principle underlying the Companies Law and the Cayman Liquidations is that the claims of investors and creditors within the same class are treated on a *pari passu* basis. *Leontsinis Declaration*, ¶ 34 (citing Companies Law, section 140).

46.     Cayman liquidation proceedings are fair and equitable. All creditors have an opportunity to be heard by the Grand Court and no creditor will be prejudiced because it is foreign-based. *Leontsinis Declaration*, ¶ 36.

47.     Section 97(1) of the Companies Law provides that upon the entry of a winding up order or appointment of a provisional liquidator, no suit or other proceeding may be commenced or continued against the company except with leave of the Grand Court and subject to such terms as that Court might impose. This automatic stay mirrors the stay imposed in U.S. bankruptcy proceedings and serves to promote the Liquidators' ability to deal with claims and creditors collectively and comprehensively. *Leontsinis Declaration*, ¶ 35.

## IV.     Events Leading Up to the Chapter 15 Petitions and the Funds' Activities in the Cayman Islands

48.     The Funds were formed as exempted limited companies under the laws of the Cayman Islands and maintained their registered office in the Cayman Islands. *Leontsinis Declaration*, ¶¶ 11, 13.

49.     An "exempted" company under the Companies Law is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside the Cayman

Islands.[11] Specifically, it may effect and conclude contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands, meaning that it may employ staff or agents in the Cayman Islands and have offices in the Cayman Islands in furtherance of its business outside the Cayman Islands, which the Funds have always had. *Leontsinis Declaration,* ¶ 45.

50.    Although upon their incorporation the Funds were restricted from carrying on business within the Cayman Islands, this did not mean that the Funds had no presence there. For example, the Funds' registered offices prior to the commencement of the liquidations were located at c/o Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9005, where the Funds' annual filings with the Registrar of Companies were made. *Leontsinis Declaration,* ¶ 13.  Under the law of the Cayman Islands, situs of the shares of a Cayman Islands company is the place of its incorporation, *i.e.* the Cayman Islands. *Leontsinis Declaration,* ¶ 13.  In addition, the Funds were regulated by CIMA from its headquarters in the Cayman Islands and registered as funds with CIMA. *Leontsinis Declaration,* ¶ 12.

51.    The restriction on the carrying on of an "exempted" company's business inside the Cayman Islands also does not apply after a company commences liquidation in the Cayman Islands. *Leontsinis Declaration,* ¶ 45.

52.    In addition, it is a requirement of Cayman Islands law that at least one official liquidator be resident in the Cayman Islands. In this case, both Liquidators are residents of the Cayman Islands, as required by the IPR. *Leontsinis Declaration,* ¶ 46.

---

[11] Requirements are such that the operation of the proposed company must be "... *conducted mainly outside the* [Cayman] *Islands.*" *See* sections 163 and 165 of the Companies Law. Exempted companies are also required to file an annual return with the Registrar of Companies to this effect, along with its annual fees, pursuant to section 168(b) of the Companies Law.

53.    Upon the entry of the Liquidation Orders, the Liquidators took the various steps required under the Companies Law and the CWR, including the publication of statutory notices and the convening of meetings of creditors of the Funds. At the first meeting of the creditors of the Funds, liquidation committees, comprised by nominated representatives of the Funds' investors, were elected (the "**Liquidation Committees**"). The Liquidation Committees continue in their role of assisting the Liquidators; they are both aware of this chapter 15 petition. *Kennedy Declaration*, ¶¶ 39-41.

54.    Since their appointment, the Liquidators have overseen and directed all activities related to the Funds from the Cayman Islands. A significant proportion of the work to date relating to the Cayman Liquidations has been conducted in the Cayman Islands, and all of the work is supervised by the Liquidators and ultimately subject to the orders of the Grand Court. *Kennedy Declaration*, ¶ 53.

55.    Moreover, while the Funds were operating, they issued and received voluminous documentation, and in all such documentation, each of the Funds is referred to and addressed as a Cayman Islands company. Based upon partner meetings, statutory demands and resolutions to wind up the Funds, and the liquidation of the Funds themselves, all of which focused on the Cayman Islands, it is clear that all relevant creditors, stakeholders, and shareholders regard the Funds to be Cayman Islands entities. *Kennedy Declaration*, ¶ 51.

56.    Initially, the Liquidators caused the requisite notices and filings to be filed, published, and served in the Cayman Islands, and in regards to the International Fund, arranged for the transfer of the Funds' books and records to the new registered offices of the Funds in the Cayman Islands. *Kennedy Declaration*, ¶ 54.

57.    The Liquidators have also taken emergency steps to protect and realize the Funds' assets, including emergency meetings with creditors and financial counterparties, all from the Cayman Islands. *Kennedy Declaration*, ¶ 37.

58.    The Liquidators have also engaged in substantial formal and informal communications with the Funds' former principals and all relevant stakeholders, including meetings with creditors, toward arriving at a consensus for liquidation strategy and handling the day-to-day operations of the Funds' operating assets. All such communications have been presided over from the Cayman Islands. *Kennedy Declaration*, ¶ 55.

59.    The liquidations of the Funds has been unusual in three main respects. <u>First</u>, there is an unusual level of <u>ongoing</u> business activity in respect of the Funds and their directly-owned subsidiaries. Control and direction of this substantial business has been assumed by the Liquidators. The Funds' subsidiaries, Platinum Management, and all of the Funds' counterparties have dealt directly with the Liquidators across myriad business, financial and legal issues that have arisen in the short time since our appointment. *Kennedy Declaration*, ¶¶ 33-34.

60.    <u>Second</u>, the Funds are experiencing severe and substantial liquidity problems that threaten to result in devaluation of the Funds' assets and/or assets held by wholly owned subsidiaries of the Funds. In order to stabilize and protect these assets, the Liquidators have engaged in near-daily negotiations with (i) third party funds and investors; and (ii) insider shareholders and creditors, with the goals of obtaining financing or facilitating short-term asset sales as a means of raising additional capital. All of these entities and persons have looked to the Liquidators as the sole persons with authority to deal and conduct business on behalf of the Funds. To date, much of the Liquidators work has consisted of either (a) emergency "triage" in respect of ongoing threats to the value of the Funds' assets; (b) meeting with the Funds' most significant creditors, investors, counterparties and stakeholders; (c) defending against litigation; and (d) reporting to and seeking the sanction of the Cayman Court and Liquidation Committees. *Kennedy Declaration*, ¶ 35.

61.    <u>Third</u>, the liquidations of the Funds are atypical due to the ongoing investigations into the actions of the Funds' prior management by the United States Department of Justice ("**DOJ**") and the United States Securities and Exchange Commission ("**SEC**").  In this regard, since the outset of the Cayman Liquidations, the Liquidators have been in direct contact with the SEC and the United States Attorneys' Office for the Eastern District of New York in respect of current and contemplated actions by the Liquidators.  While the urgent "triage" work associated with protecting the Funds' assets from devaluation and otherwise engaging with the Funds' investors, creditors and potential lenders has consumed most of the Liquidators' time to date, the Liquidators have already begun examining the allegations of asset overvaluation and will execute a detailed investigation in respect of the causes of the Funds' insolvency, the value of the Funds' assets, and any claims that the Funds' may have in respect of the same. *Kennedy Declaration*, ¶ 38.

62.    The Liquidators, both personally and via their United States legal counsel, Holland & Knight LLP, have engaged in telephone and email correspondence with the SEC and DOJ since their appointment and are fully cooperating with these U.S. federal agencies.  *Kennedy Declaration*, ¶ 59.

63.    In particular, the Liquidators have communicated with the SEC and DOJ concerning (i) the potential sale of the Implant Sciences Corporation ("**Implant Sciences**") notes to Platinum "insiders" and (ii) the potential investment to be made by the Master Fund in Northstar Offshore Group LLC ("**Northstar**") so as to avoid the continuation of its involuntary bankruptcy (discussed below). *Kennedy Declaration*, ¶ 60.

64.    The SEC has requested various materials concerning these topics, which have been furnished to the SEC by the Liquidators.  *Kennedy Declaration*, ¶ 62.

65.    In addition to the ongoing government investigations, two items were flagged as critical because of their urgency or the potential for serious asset devaluation.

66.     One item that the Liquidators and their counsel immediately began to address was the status of certain swap transactions with a value of more than $80 million. The Funds' counterparties in respect of these swap transactions are major U.S. financial institutions, and the circumstances surrounding these swap transactions were urgent from the outset of the Liquidators' appointment. The Liquidators and their counsel have spent dozens of hours working with these financial institutions toward unwinding these swaps. *Kennedy Declaration*, ¶ 63.

67.     Second, and from the perspective of asset devaluation, perhaps the most significant and immediate threat concerned the Funds' lack of liquidity that is necessary to support the Funds' investments. One of these investments is Northstar Offshore Group LLC. A substantial amount of Northstar's equity and a substantial amount of Northstar's debt is held by a subsidiary of the Master Fund and the Master Fund itself, respectively. It has been estimated that the Funds' Northstar holdings comprise approximately 22% of the Funds' total assets. *Kennedy Declaration*, ¶ 64.

68.     Northstar was, at the time of the Liquidators' appointment, as well as currently, the subject of a contested involuntary bankruptcy proceedings in the Southern District of Texas, Case No. 16-34028 ("**Northstar Bankruptcy**"). *Kennedy Declaration*, ¶ 65.

69.     The Liquidators have formed the initial view that that a Northstar Bankruptcy would likely result in both a significant devaluation of the Master Funds' assets and may result in a significant creditor claim against the Master Fund because the Master Fund has guaranteed the "plugging and abandonment" liabilities associated with Northstar's oil and gas wells. *Kennedy Declaration*, ¶ 66.

70.     Under the circumstances, the Liquidators have been in continuous negotiations with Northstar's management, creditors, relevant parties, and have been in contact with potential lenders, asset purchasers and other capital sources in an attempt to arrange additional financing for Northstar, in the form of a loan or an equity investment. *Kennedy Declaration*, ¶ 67.

71.    The Liquidators further made an application for directions to the Cayman Court on September 27, 2016 concerning the urgent Northstar situation (see affidavits of Kennedy and Wright, attached as Exhibit D to the Kennedy Declaration).    At a September 30, 2016 hearing, the Cayman Court suggested that the JPLs should consider whether it would be appropriate for one of them to personally appear at the hearing before this Court scheduled for October 5, 2016.    The Cayman Court further suggested that the JPLs should consider requesting an adjournment of the status hearing in order to allow Northstar to provide the JPLs and the Cayman Court with a reorganization plan, in order for it to properly determine whether or not Northstar could continue as a going concern. The Cayman Court was not prepared to sanction the JPLs' further investment in Northstar without first considering that reorganization plan and granted the JPLs leave to reapply on short notice for sanction of the investment as soon as they were in position to place the appropriate evidence before the Cayman Court. *Kennedy Declaration*, ¶ 68.

72.    In addition to that stated above, the Liquidators have engaged and overseen the following specific and general matters on their own and through and with the assistance of Cayman and U.S. counsel, commencing the process within days of the Liquidation Orders:

- Overseeing the administrative and investment management operations of the Master Fund and the International Fund;

- Gaining access to and control over all electronic files of the Funds;

- Meeting and communicating with Bart Schwartz of Guidepost Solutions.   Since their appointment, the Liquidators have opened and maintained an ongoing dialogue with Guidepost and continue to share information and cooperate in their respective roles as far as possible.   Upon the appointment of the Liquidators, Guidepost's role with respect to the Master Fund has been limited to it acting as a representative of the Onshore Fund and maintaining a dialogue with respect to the wider Platinum group of companies which are currently not in liquidation in the Cayman Islands or bankruptcy proceedings in the United States;

- Engaging in significant and substantial negotiations and meetings with Beechwood in respect of a collateral account held by Master Fund wholly owned subsidiary, approximately $11 million in proceeds due to the Master Fund from Beechwood in relation to the Agera transaction, and the nature and substance of other transactions between Beechwood and the Funds;

- Working with the Master Fund's counterparties – major financial institutions – toward unwinding of $80 million in swap contracts;

- Litigating against Twosons Corporation, which has filed a lawsuit in the Supreme Court of the State of New York styled Twosons Corp. v. Platinum Partners Value Arbitrage Fund, L.P., Index No. 654865-2015. In this litigation, Twosons alleges breach of an 18 September 2014 promissory note with a current face value of approximately $6 Million, that contains a security provision. In connection with this litigation, Twosons has sought the issuance of a temporary restraining order freezing the Master Fund's assets.

- Monitoring litigation involving a wholly-owned subsidiary of the Master Fund, Meserole, LLC, which is engaged in offensive litigation in relation to the dilution of its interest in a fund that owns debt and equity in respect of the company Airdye, LLC. The Master Fund is a nominal party to the various claims in arbitration that are currently pending before the American Arbitration Association and JAMS.

- Negotiating with New Mountain, a significant participant in the Cayman Liquidations, in respect of litigation in which New Mountain is plaintiff and the Master Fund is the defendant, which case is pending in the New York State Supreme Court for New York County, Index No. 651186/2016, which plaintiff has agreed to participate in the Cayman Liquidations and is serving on the Master Fund Liquidation Committee;

- Supervising and coordinating the Funds' substantial creditor and equity interests, held via a wholly owned subsidiary, in respect of the just-filed Implant Sciences bankruptcy petition, including participating as a creditor in the IMX Acquisition Bankruptcy. The Master Fund, via its wholly owned subsidiaries including but not limited to DMRJ Group, LLC ("**DMRJ**"), holds equity and debt of positions in Implant Sciences Corporation. The notes associated with the Implant Sciences Corporation debt were the subject of an application for directions. Implant Sciences Corporation has filed a Chapter 11 petition styled In re IMX Acquisition Corp., et al., 16-12238 (D.Del) and DMRJ has appeared in that proceeding as a party in interest.

- Holding ongoing discussions with all of the major creditors of and equity holders in the Funds;

- Forming and working with the Liquidation Committees, under the authority and upon the instructions and approval of the Grand Court of the Cayman Islands. The Liquidators have met with the Liquidation Committees on two occasions subsequent to formation (September

30, 2016 and October 7, 2016) and met with the Master Fund Committee on October 14, 2016 to discuss urgent funding matters and to provide updates in relation to several of the Master Fund's assets. The Liquidators have had, and continue to have, an active and open dialogue with the Master Committee and will continue to use it as a sounding board as the liquidation progresses

- Holding the official meetings of the Creditors and Investors of the International Fund (September 23, 2016) and the Master Fund (September 28, 2016) from the Cayman Islands and New York, with one Liquidator in each location and with telephone access to all creditors and investors of the applicable Fund;

- Working with prior Funds' counsel and opposing counsel in connection with two pending arbitrations being held in the United States;

- Working to sell promissory notes owned by a subsidiary of the Master Fund and issued by Implant Sciences;

- Holding discussions and coordinating with the Funds' prior counsel regarding the ongoing investigations of the Funds by the SEC;

- Engaging in correspondence and conferences with the SEC concerning the status of the Liquidations, the Liquidators, and the Northstar situation and other matters;

- Meeting, holding discussions and coordinating with the Funds' prior counsel regarding the ongoing investigations of the Funds by the U.S. Attorney for the Southern and Eastern Districts of New York; and

- Issuing the first comprehensive report by the Joint Provisional Liquidators of the Master Fund on October 13, 2016, which report details the activities of the Liquidators and the assets and liabilities of the Master Fund as well its wholly owned subsidiaries in substantially greater detail that this petition. A copy of this report can be furnished to the Court *in camera* upon request.

*Kennedy Declaration*, ¶ 70.

73.    As the Liquidators' investigation continues, the relationships of the Funds, their operations, and potential claims against third parties are becoming clearer. Potential claims will be overseen, managed and resolved (by litigation or negotiation) by the Liquidators from the Cayman Islands, subject to oversight by the Grand Court. *Kennedy Declaration*, ¶ 71.

74.     As a result, not only is the management of the Funds being conducted by the Liquidators

from within the Cayman Islands, but the key aspects of the Funds' management are subject to the orders

and jurisdiction of the Grand Court. *Leontsinis Declaration*, ¶ 48.

## RELIEF SOUGHT

75.     By this Verified Petition, the Liquidators seek the following relief:

- Recognition of the Cayman Liquidations as foreign main proceedings, or in the alternative, foreign nonmain proceedings, pursuant to Chapter 15 of the Bankruptcy Code, and Petitioners as the Funds' foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

- Relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

## BASIS FOR RECOGNITION

76.     Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign

proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1) such foreign

proceeding for which recognition is sought is a foreign main proceeding or foreign non-main

proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition

is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a).

77.     Each of those requirements is met here, and entry of an order substantially in the form

attached hereto as **Exhibit A** will significantly aid the Liquidators' efforts to administer the Funds'

assets and liabilities, and ensure a fair and equitable treatment of and greater distributions to the Funds'

creditors and interest holders.

## I.     The Cayman Liquidations Are Foreign Proceedings and the Liquidators Are Foreign Representatives.

78.     Section    101(23)    of    the    Bankruptcy    Code    defines    a    foreign

proceeding as:

a collective judicial or administrative proceeding in a foreign country,

> including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). This definition incorporates the term foreign representative, which the Bankruptcy Code in turn defines as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Liquidators and the Cayman Liquidations undoubtedly satisfy each of these requirements.

79. First, the Cayman Liquidations are judicial proceedings in a foreign country, the Cayman Islands, subject to the control and supervision of the Grand Court. *Leontsinis Declaration*, ¶ 42. All claims against the Funds may be submitted in the Cayman Liquidations and all claimants have the right to access the Grand Court and appeal decisions of the Liquidators. *Kennedy Declaration*, ¶ 52.

80.    Second, the Cayman Liquidations are being conducted by the Liquidators, who were appointed by the Grand Court pursuant to the Companies Law as joint liquidators to oversee the winding up of the Funds according to the provisions of the Companies Law. *Leontsinis Declaration*, ¶ 44. As such, each of the Liquidators is a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [the Funds'] assets or affairs," within the meaning of section 101(24).

81.    Third, the relevant portions of the Companies Law and related rules that govern the Cayman Liquidations specifically relate to proceedings in the Cayman Islands concerning "insolvency or adjustment of debt." 11 U.S.C. § 101(23); *Leontsinis Declaration*, ¶ 28.

82.    Finally, the Cayman Liquidations are "collective … proceeding[s]" because they "consider[] the rights and obligations of all creditors." *See, e.g., In re Ashapura Minechem Ltd.*, No.

11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (citations omitted). Pursuant to the Liquidation Orders and the Companies Law, the Cayman Liquidations and the Liquidators' management of the Funds' assets and affairs are subject to the supervision and control of the Grand Court. *Leontsinis Declaration*, ¶ 48. In addition to the urgent business discussed above, the Liquidators currently are in the process of assessing claims from all of the Funds' creditors and collecting claims against current and contingent debtors in respect of the Funds, have met with the Funds' stakeholders, are well engaged in the process of liquidating the Funds' illiquid assets and hard assets, and have been working in a cooperative manner with federal investigations of the Funds. *Kennedy Declaration*, ¶¶ 56-71.

83.     As discussed above, numerous courts in this and other districts have found that official liquidation proceedings brought pursuant to the Companies Law qualify as a "foreign proceeding," and that joint liquidators appointed and overseen by the Grand Court qualify as a "foreign representative" for purposes of section 101(23) and (24). *See, e.g., In re LDK Solar Co., Ltd.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) (recognizing Cayman Islands liquidation as foreign main proceeding); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (commencement of provisional Cayman proceedings, together with subsequent activities of liquidators had the effect of transferring holding company's COMI to Cayman); *In re Millard*, 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013) (individual bankruptcies before Cayman Grand Court); *In re AJW Offshore Ltd.*, Case No. 13-70078, (Bankr. E.D.N.Y. Feb. 5, 2013); *In re Bancredit Cayman Ltd. (in Liquidation)*, No. 06-11026 (SMB) (Bankr. S.D.N.Y. Nov. 2, 2007).

84. In addition, courts have found that provisional liquidation proceedings brought pursuant to the Companies Law qualify as a "foreign proceeding." *See, e.g., In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399 (Bankr. S.D.N.Y. 2014); *In re Vitro S.A.B. de CV,* 701 F.3d 1031 (5th Cir. 2012).

85. For the foregoing reasons, the Cayman Liquidations are "foreign proceedings" within the meaning of section 1517(a)(1) of the Bankruptcy Code.

## II.    The Cayman Liquidations are Foreign Main Proceedings.

86. The Cayman Liquidations are "foreign main proceedings" within the meaning of section 1502(4) of the Bankruptcy Code because the Funds' COMI is in the Cayman Islands. *Kennedy Declaration,* ¶¶ 46-72. The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI. *See* 11 U.S.C. § 1517(b)(1).

87. Although the Bankruptcy Code does not define "center of main interests," pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office, which in this case is the Cayman Islands, is presumed to be its COMI. 11 U.S.C. §1516(c). *See also In re ABC Learning Centres Ltd.,* 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that debtor's registered jurisdiction was its COMI where debtor established the section 1516 presumption, and no evidence was presented rebutting that presumption).

88. Here, the registered offices of both of the Funds are in the Cayman Islands, and have been since the time of formation of both of the Funds. *Kennedy Declaration,* ¶ 11. Further, there is no contrary evidence to rebut the resulting presumption that the Cayman Islands is the Funds' COMI.

89. As discussed in detail above, although the Funds were formed as "exempt" companies, they nevertheless maintained their registered offices in the Cayman Islands even before the

commencement of the Cayman Liquidations, and their documents and other correspondence made it clear that each of the Funds was a Cayman Islands company registered with CIMA. *Kennedy Declaration*, ¶¶ 10-11.

90.    In any case, a foreign debtor's COMI is determined at the time the Chapter 15 petition is filed. *In re Fairfield Sentry Ltd.,* 714 F.3d 127, 137 (2d Cir. 2013) ("a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests."); *In re Millennium Global Emerging Credit Master Fund Limited,* 458 B.R. 63 (Bankr. S.D.N.Y. 2011) (describing same COMI test in respect of similar Bermuda fund structure). Where, as here, a debtor has engaged in substantial restructuring efforts and related activities prior to the filing of the Chapter 15 petition, courts will consider such activities in the determination of the debtor's COMI. *Fairfield Sentry Ltd.*, 714 F.3d at 137.

91.    On this basis, numerous similar offshore funds and structures have been recognized by courts in various jurisdictions as foreign main proceedings pursuant to Chapter 15. *See, e.g., In re Niton Fund SPC*, 15-13252 (SMB) (Bankr. S.D.N.Y.) (Wright/Kennedy as Liquidators); *In re Madison Niche Assets Fund, Ltd., et. al.,* 16-10043 (KJC) (Bankr. D. Del.) (Wright/Kennedy as Liquidators); *In re Richcourt Euro Strategies Inc., et. al,* 15-12273 (REG) (Bankr. S.D.N.Y) (Wright as Liquidator); *In re Tranen Capital Alternative Investment Fund Ltd.,* No. 15-12620 (Bankr. S.D.N.Y. Oct. 29, 2015) (recognizing liquidation of British Virgin Island Fund structure as a foreign main proceeding); *In re Lawndale Group S.A.,* No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) (recognizing liquidation of British Virgin Islands entity as foreign main proceeding); *In re Pioneer Freight Futures*, No. 13-12324 (Bankr. S.D.N.Y. Aug. 23, 2013) (recognizing British Virgin Islands liquidation proceeding as foreign main proceeding); *In re Farenco Shipping Co. Ltd.,* No. 11-14138 (REG) (Bankr. S.D.N.Y Feb. 24, 2012) (same); *see also In re British American Isle of Venice (BVI), Ltd.*, 441 B.R. 713 (Bankr.

S.D. Fla. 2010) (recognition of offshore funds as foreign main proceedings); *In re Grand Prix Assocs., Inc.*, No. 09-16545 (DHS), (Bankr. D.N.J. May 18, 2009) (same); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) (Cayman fund).

92.    In addition to the presumption provided under section 1516, courts consider any relevant factors, including: (i) the location of the debtor's assets; (ii) the location of the debtor's books and records; (iii) the location of the majority of the debtor's creditors; (iv) the commercial expectations and knowledge of the debtor's creditors; and (v) the location of those who actually manage the debtor. *See, e.g., In re Suntech Power Holdings Co., Ltd.*, 520 B.R. at 416; *In re Grand Prix Assocs.*, No. 09-16545, 2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009). These factors, however, are not dispositive or exclusive, and none of the factors are required. *See In re Fairfield Sentry Ltd.*, 714 F.3d at 137-38. Further, courts have also looked to whether a Chapter 15 debtor's COMI would have been readily ascertainable to parties in interest, such as the debtor's creditors. *See Grand Prix Assocs.*, 2009 WL 1410519, at *6.

93.    Applying the foregoing factors to this case, there is no doubt that the Funds' COMI is the Cayman Islands. Substantial assets of the Funds are located in and overseen from the Cayman Islands and the Liquidators are operating and overseeing the winding up and liquidation of the Funds, including negotiating various transactions and overseeing several pending litigations from the Cayman Islands, as discussed above. *Kennedy Declaration*, ¶ 70. The Liquidators are investigating the Funds' intangible rights in the form of potential claims, liabilities, and regulatory violations, which is and will continue to be controlled and coordinated by the Liquidators from the Cayman Islands. *Kennedy Declaration*, ¶ 53. Based on the documentation issued both by and to the Funds, the partner and corporate meetings, statutory demands and resolutions to wind up the Funds, shareholder meetings and the Funds' liquidations, all of which focused on the Cayman Islands, it is clear that all relevant

creditors, stakeholders, and shareholders regard the Funds to be Cayman Islands companies and that all relevant persons, entities, investors, creditors and counter-parties regard the Cayman Islands to be the "nerve center" of the Funds. *Kennedy Declaration*, ¶ 51.

94.    Since the commencement of the Cayman Liquidations, substantially all activities associated therewith have been conducted and/or overseen by the Liquidators from the Cayman Islands, including the ongoing operation of the Funds' assets and activities as a going concern. Among other things, the Liquidators have overseen and filed all necessary notices and displaced the prior management of the Funds and assumed their duties, are engaged in the process of investigating and assessing the claims of the Funds and their creditors and interest holders, and of gathering information about the operation and management of the Funds' businesses before the Cayman Liquidations, and are engaged in discussions with creditors and interest holders. *Kennedy Declaration*, ¶¶ 56-71.

95.    The *Suntech* opinion issued by this Court is instructive.  In *Suntech*, the Court held that the activities of a Cayman provisional liquidator were sufficient to establish the Cayman Islands as the debtor's COMI, even though the debtor's principal place of business prior to foreign liquidation was in China. *In re Suntech Power Holdings Co., Ltd.,* 520 B.R. at 419.

96.    A primary factor in this Court's COMI analysis for *Suntech* was the provisional liquidator's active involvement in managing the debtor fund's subsidiaries.  As set forth above, the Liquidators have been continuously working on managing the Master Fund's subsidiaries. In *Suntech*, day to day operations of the debtor fund was left to a board of directors, while the Liquidators in this case have absolute management control over the Funds subject to the supervision of the Grand Court. *In re Suntech Power Holdings Co., Ltd.,* 520 B.R. at 417.

97.    As set forth in detail in paragraphs 53-75 above, as well as in the accompanying Kennedy Declaration, It is respectfully submitted that the level of liquidation and ongoing business

activity in this case substantially exceeds what this Court and other Courts have previously found sufficient to establish COMI.

98.    Under the circumstances, the Liquidators submit that there is ample evidence and precedent to support recognition of the Cayman Liquidations as foreign main proceedings.

## III.    Alternatively, the Cayman Liquidations Should Be Recognized as Foreign Non-Main Proceedings.

99.    As set forth above, the Cayman Liquidations meet the requirements of a "foreign main proceeding" pursuant to section 1502 of the Bankruptcy Code. Nevertheless, should the Court determine that the Cayman Liquidations should not be recognized as foreign main proceedings, the Liquidators submit that, in the alternative, the Cayman Liquidations should be recognized as foreign nonmain proceedings under sections 1517(b)(2) and 1502(5) of the Bankruptcy Code.

100.    Section 1502(5) of the Bankruptcy Code defines a foreign nonmain proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). In turn, "establishment" is defined by section 1502(2) as being "any place of operations where the debtor carries out nontransitory economic activity." 11 U.S.C. § 1502(2). The "establishment" requirement is satisfied by the local conduct of business. *See In re Fairfield Sentry Ltd.*, No. 10-13164, 2011 WL 4357421 at *10 n.8 (S.D.N.Y. Sept. 16, 2011) ("This Court agrees with the Bankruptcy Court that if main recognition were not granted, non-main recognition of Sentry's BVI Proceeding would be appropriate because Sentry has an establishment in the BVI for the conduct of nontransitory economic activity, i.e. a local place of business.").

101.    The Liquidators respectfully submit that, at a minimum, their activities in the Cayman Islands constitute non-transitory economic activity. *Kennedy Declaration*, ¶ 46. The Liquidators are continuing the remaining business of the Funds as part of the winding-up of the Funds' affairs from the

Liquidators' offices in the Cayman Islands. *Kennedy Declaration*, ¶ 52. There is no foreign or domestic insolvency proceeding other than the Cayman Liquidation. *Kennedy Declaration*, ¶ 73.

102.    As such, there can be no dispute that the Cayman Liquidations are legitimate insolvency proceedings. Under the circumstances, and given that the Funds' ongoing business activities are being conducted from the Cayman Islands, at a minimum this Court should recognize the Cayman Liquidations as foreign nonmain proceedings pursuant to Chapter 15 and further, to grant the Liquidators the discretionary relief requested.

**IV.     The Cayman Liquidations Meet All Other Requirements for Recognition.**

103.    In addition to being foreign main (or nonmain) proceedings brought by duly appointed foreign representatives, the Cayman Liquidations meet all other requirements for recognition under section 1515 of the Bankruptcy Code. The Petition is accompanied by certified copies of the Liquidation Orders issued by the Grand Court, which evidence the commencement of the Cayman Liquidations and the appointment of the Liquidators as joint liquidators of the Funds. The Petition also is accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to the Funds that are known to the Liquidators. *See* 11 U.S.C. §§ 1515(b), (c); *see also Kennedy Declaration*, ¶ 73.

104.    The Petition likewise is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Liquidators that are authorized to administer foreign proceedings with respect to the Funds, and a list of all parties to litigation with the Funds in the United States. *See Kennedy Declaration*, ¶ 74, Exhibit E.  All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d).

105.    For all of these reasons, this Court can and should find that all of the requirements for recognition of the Cayman Liquidations as foreign main proceedings under Chapter 15 have been satisfied.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

WHEREFORE, the Liquidators respectfully request that this Court enter an Order, substantially in the form of **Exhibit A** to this Petition, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: October 17, 2016        HOLLAND & KNIGHT LLP
      New York, New York

                                   Warren E. Gluck, Esq.
                                   Barbra R. Parlin, Esq.
                                   Arthur E. Rosenberg, Esq.
                                   31 West 52nd Street
                                   New York, New York 10019
                                   Telephone:  (212) 513-3200
                                   Facsimile:  (212) 385-9010

                                   *Counsel for the Liquidators of the Funds*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Christopher Barnett Kennedy declares as follows:

My colleague Matthew James Wright and I are the duly appointed joint provisional Liquidators (the "**Liquidators**") of Platinum Partners Value Arbitrage Fund L.P. (in Provisional Liquidation) and duly appointed joint official liquidators of Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation), both of which are in liquidation by way of the Financial Services Division of the Grand Court of the Cayman Islands (the "**Grand Court**") cause nos. FSD 131 of 2016 (AJJ) (re the Master Fund) and 118 of 2016 (AJJ) (re the International Fund)) as a result of the Grand Court's orders made pursuant to certain petitions for the Grand Court's supervision under section 92 of the Companies Law of the Cayman Islands (2013 Revision). I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Insolvency Proceedings and Application for Additional Relief, Pursuant to Sections 1504, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code* (the "**Verified Petition**"). I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of October, 2016, in Grand Cayman Cayman Islands

Christopher Barnett Kennedy
Provisional Liquidator Platinum Partners
Value Arbitrage Fund L.P. (in
Provisional Liquidation) and Official
Liquidator Platinum Partners Value
Arbitrage Fund (International) Ltd. (in
Official Liquidation)