HOLLAND & KNIGHT LLP
Warren E. Gluck, Esq.
Barbra R. Parlin, Esq.
Arthur E. Rosenberg, Esq.
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010

*Counsel for the Liquidators of the Funds*

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 15 |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN PROVISIONAL LIQUIDATION), *et al.*, | Case No. 16-_____ (___) |
| | (Joint Administration Requested) |
| Debtors in Foreign Proceedings. | |

----------------------------------------------------------x

**DECLARATION OF STEPHEN LEONTSINIS IN SUPPORT OF
CHAPTER 15 PETITIONS OF DEBTORS IN FOREIGN PROCEEDINGS
FOR RECOGNITION AS FOREIGN MAIN PROCEEDINGS**

I, **STEPHEN LEONTSINIS**, hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

**Introduction**

1. I am a partner of the law firm of Collas Crill, a law firm with offices in the Cayman Islands, the Channel Islands of Guernsey and Jersey, England and Singapore. We advise financial, institutional and business clients worldwide. I am an admitted attorney-at-law of, *inter*

7125765.1
#48334968_v1

*alia*, the Cayman Islands and, consequently, I regularly advise clients on the laws of the Cayman Islands.

2. My practice in the Cayman Islands primarily focuses on contentious commercial litigation with an emphasis on insolvency and restructuring matters. I am the head of Collas Crill's Cayman Islands dispute resolution department, which is responsible for all of the office's contentious insolvency and restructuring matters. I was previously employed as a foreign practicing lawyer by a boutique litigation firm in Miami, Florida, that specializes in cross-border insolvency, asset-tracing, judgment enforcement and trust and private client disputes.

3. In December 2002, I was awarded a Bachelor of Laws by the University of Stellenbosch in the Republic of South Africa. I was called to the Johannesburg Bar of Advocates during March of 2003, and subsequently practiced as an advocate of the High Court of South Africa for a period of 5 years. I have been admitted as an attorney-at-law in the Cayman Islands since January 2009. In September 2009, I requalified and was admitted to practice as a solicitor and, subsequently, as a solicitor-advocate of the High Court of England & Wales. I was called as a solicitor-advocate to the bar of the Supreme Court of the Eastern Caribbean in May 2013.

4. I have appeared before the Privy Council, the Courts of Appeal of the Caribbean, England and Wales and the Republic of South Africa and have regularly appeared before the Grand Court of the Cayman Islands, High Court of the Republic of South Africa and, on occasions in the past, the Supreme Courts of the British Virgin Islands and the Turks & Caicos. By far the majority of my appearances concern aspects of the respective insolvency regimes of the various jurisdictions to which I am admitted.

5. I act as Cayman Islands legal counsel to Matthew Wright and Christopher Kennedy (the "**Liquidators**"/"**Petitioners**") who, on August 23, 2016, were appointed by the

#48334968_v1

Financial Services Division of the Grand Court of the Cayman Islands (the "**Grand Court**") as the Joint Official Liquidators of Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) ("**International Fund**") and, on August 29, 2016, as the Joint Provisional Liquidators of Platinum Partners Value Arbitrage Fund L.P. (in Provisional Liquidation) ("**Master Fund**", and together with International Fund, the "**Funds**").

6. Although I am not a U.S. attorney and therefore do not purport to make any authoritative statements concerning matters of U.S. law, I am well acquainted with Chapter 15 of the United States Bankruptcy Code ("**Chapter 15**") due to my experience advising clients on complex cross-border corporate restructurings and insolvencies. I have previously submitted a declaration concerning the law of the Cayman Islands in support of the Chapter 15 petition filed by Mr. Kennedy and Mr. Wright as Joint Official Liquidators of a Cayman Islands Fund, Niton SPC, which Cayman liquidation was recognized as a foreign main proceeding by this Court. *See in re Niton Fund SPC*, 15-13252 (SMB) (Bankr. S.D.N.Y.).

7. I make this declaration in support of the petitions dated October 17, 2016 seeking the U.S. Bankruptcy Court's recognition of (i) the liquidation of the Funds as "foreign main proceedings" pursuant to 11 U.S.C. § 1517(b)(1) and (ii) the Petitioners as "foreign representatives" of the Funds pursuant to 11 U.S.C. § 101(24) (the "**Chapter 15 Petitions**").

8. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal experience and knowledge and my review of relevant documents, which include the sworn declarations of Christopher Barnett Kennedy dated October 17, 2016 (the "**Kennedy Declaration**") and Warren Gluck dated October 17, 2016 (the "**Gluck Declaration**"). To the extent that statements in this declaration are of my own legal opinion, they represent my views and understanding of the laws of the Cayman Islands as a practicing Cayman Islands attorney.

3

#48334968_v1

9. For the reasons set out herein and on the basis of the advice that I have received from US counsel, I consider that: (a) the Liquidators qualify as "foreign representatives" of the Funds in accordance with my understanding of 11 U.S.C. § 101(24); (b) the liquidations of the Funds constitute "foreign proceedings" in accordance with my understanding of 11 U.S.C. § 101(23); and (c) the liquidations of the Funds constitute "foreign main proceedings" within my understanding of the meaning of Sections 1502(4) and 1517(b)(1) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

10. I have been asked by the Petitioners to explain the relevant substantive Cayman Islands law and procedural rules considered to be relevant to the liquidation and dissolution of Cayman Islands companies and, more particularly, the Funds.

## Background

11. On October 5, 2002, the International Fund was incorporated as an exempted limited company under the laws of the Cayman Islands. The Master Fund was formed pursuant to a Second Amended and Restated Limited Partnership Agreement, dated July 1, 2008, registered with the Cayman Islands Registrar of Exempted Limited Partnerships.

12. The Master Fund was registered with and regulated by the Cayman Islands Monetary Authority ("**CIMA**") as a master fund. The International Fund was registered with and regulated by CIMA as a mutual fund. Both Funds' CIMA licenses were terminated following their entry into liquidation.

13. Following the International Fund's entry into liquidation, its registered address was changed from c/o Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9005, Cayman Islands to c/o The R&H Trust Co. Ltd., Windward 1, Regatta Office Park, PO Box 897, Grand Cayman KY1-1103, Cayman Islands.

#48334968_v1

The Master Fund's registered address is c/o Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY1-9005, Cayman Islands. Under the terms of its Confidential Private Offering Memorandum (the "**Offering Memorandum**"), the International Fund: carries on business as an investment fund; and, invests all of its investable capital in Platinum Partners Value Arbitrage Intermediate Fund Ltd., an exempted, limited liability company incorporated in the Cayman Islands on April 9, 2010 (the "**Intermediate Fund**"). Under the laws of the Cayman Islands, the shares of a Cayman Islands company constitutes the personal property of the holder of those shares. As the International Fund is domiciled in the Cayman Islands, the *lex situs* of the shares held by the International Fund in the Intermediate Fund, is the Cayman Islands. Consequently, virtually all of the assets of the International Fund are located in the Cayman Islands.

14. According to the terms of the Offering Memorandum, the Intermediate Fund invests all of its investable capital in, and is a limited partner of, the Master Fund. Furthermore, the Master Fund invests and trades in U.S. and non-U.S. financial instruments and other funds, as defined in the Offering Memorandum, as well as, in certain other assets and holding companies as described in more detail in the Kennedy Declaration.

15. In addition to the Intermediate Fund, one additional fund acts as a direct feeder fund into and is a limited partner of the Master Fund. This entity is registered in Delaware and is known as Platinum Partners Value Arbitrage Fund (USA) L.P. ("**Onshore Fund**").

16. In summary, the Petitioners are presently appointed as the Joint Official Liquidators of the International Fund and as the Joint Provisional Liquidators of the Master Fund. As the Petitioners do not currently consider it necessary to petition for Chapter 15

#48334968_v1

recognition of the Intermediate Fund or the Onshore Fund, in the interests of succinctness I focus solely on the Funds for the balance of this declaration.

**Entry by the Funds into Liquidation**

17. Parris Investments Limited ("**Parris**") is a prior investor and shareholder in the International Fund. In or about August 2015, Parris purchased 556.9018 L-shares in the International Fund ("**Parris Shares**"). On October 27, 2015, Parris submitted a request to the International Fund for the full redemption of the Parris Shares, the redemption date of which was December 31, 2015 ("**Redemption Request**"). The Redemption Request was approved by the International Fund via its administrator and, consequently, under the terms of the Offering Memorandum, 90% of the payment of Parris' redemption proceeds was due on January 30, 2016.

18. On July 28, 2016, Parris, citing, among other things, the International Fund's failure to honour the Redemption Request, filed a creditor's petition seeking the liquidation of the International Fund by the Grand Court and the appointment of the Liquidators as Joint Official Liquidators of the International Fund pursuant to the Companies Law of the Cayman Islands (2013 Revision) (the "**Companies Law**") ("**International Petition**").

19. As required by the Companies Law and the Companies Winding Up Rules 2008 (as revised) (discussed below), Parris placed notice of the filing of the International Petition and its request for appointment of the Liquidators in the *Cayman Times* and *The Financial Times* which were published on August 15, 2016.

20. On August 23, 2016, the Master Fund, acting through its general partner, Platinum Management (NY) LLC, presented a petition (the "**Master Petition**", and collectively with the International Petition, the "**Liquidation Petitions**") to the Grand Court under section 92 of the Companies Law, made applicable to the Master Fund by section 36 of the Exempted

#48334968_v1

Limited Partnership Law, 2014 ("**ELP Law**"), seeking, among other orders, orders that provided for: the liquidation of the Master Fund to commence under the authority of the Grand Court; the appointment of Messers. Wright and Kennedy as the Joint Official Liquidators of the Master Fund; and the granting of certain powers to the Petitioners in their capacities as the Joint Official Liquidators of the Master Fund as described in the Liquidation Petitions and as discussed in greater detail below. A true and correct copy of the Liquidation Petitions are attached to the Kennedy Declaration as Exhibit A.

21. Simultaneously with the presentation of the Master Petition, the general partner of the Master Fund issued an *ex parte* summons to appoint the Liquidators as Joint Provisional Liquidators of the Master Fund in accordance with section 104 of the Companies Law, pending adjudication of the Master Petition (the "**Provisional Summons**"). True and correct copies of the Provisional Summons are attached to the Kennedy Declaration as Exhibit B.

22. Also on August 23, 2016, the Grand Court issued a Winding Up Order for the International Fund on the terms requested through the International Petition ("**International Order**").

23. On August 29, 2016, the Grand Court issued an Order for the Master Fund to be placed into provisional liquidation pending the determination of the Master Petition which is due to be heard on October 27, 2016 and appointed the Liquidators as Joint Provisional Liquidators of the Master Fund, (the "**Master Order**" and, collectively with the International Order, the "**Liquidation Orders**"). True and correct copies of the Liquidation Orders are attached to the Kennedy Declaration as Exhibit C.

24. As a consequence of the foregoing, the Liquidators have, since August 29, 2016, been empowered by the Grand Court to exercise certain powers and functions set forth in the

#48334968_v1

Master Order, in relation to the Master Fund and statutorily empowered to exercise certain powers set forth in sections 104 -110 of the Companies Law in respect of the International Fund. True and correct copies of the relevant sections of the Companies Law are attached hereto as **Exhibit A**. True and correct copies of the relevant sections of the ELP Law are attached hereto as **Exhibit B**.

### Sources of Law of the Cayman Islands

25.    The Cayman Islands is a British Overseas Territory and, as such, its laws are derived from: (a) original local statutes enacted by the local general legislative assembly; (b) English common law brought to the Cayman Islands by early settlers, as adapted to local circumstances and subsequently developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

26.    Where no specific local statutory provision applies, the courts of the Cayman Islands will apply English common law as adapted to the circumstances of the Cayman Islands. On questions governed by the common law, the doctrine of judicial precedent applies. The court of first instance is the Grand Court which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong.[1] There is a right of appeal from the Grand Court to the Cayman Islands Court of Appeal. The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the

---

[1] Re Bank of Credit & Commerce International, CILR 56 [1994-95].

"**Privy Council**") which sits in London and which is comprised of members of the English Supreme Court (the highest court in England and formerly known as the Judicial Committee of the House of Lords). The Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

27. There is an increasing body of jurisprudence in the Cayman Islands developed mainly over the last 40 years and reported in the Cayman Islands Law Reports. Notwithstanding that, it still regularly transpires that there is no local Cayman Islands authority on a particular issue. Where there is no Cayman Islands authority on a particular issue, the Cayman Islands courts will look to and apply decisions of the English courts and, less frequently, decisions of the courts of other Commonwealth jurisdictions. Decisions of the English Court of Appeal and Supreme Court are regarded as highly persuasive. So too are decisions of the Privy Council on appeals originating from other Overseas Territories and Commonwealth jurisdictions. The decisions of the highest courts of the other developed Commonwealth jurisdictions such as Australia, New Zealand, Canada, and Hong Kong might have persuasive effect on the decisions of the Grand Court, depending on their subject matter.

**Liquidation of Cayman Islands Companies**

28. The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Law, which is supplemented by the Companies Winding Up Rules 2008 (as revised) ("**CWR**"), the Insolvency Practitioners Regulations 2008 (as revised) (the "**IPR**") the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2008 (as revised) and the Grand Court Rules 1995 (as revised) (the

9

"GCR"). The provisions of Part V of the Companies Law apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies. By virtue of section 36 of the Exempted Limited Partnership Law, 2014 (the "**ELP Law**"), the provisions of Part V of the Companies Law and the CWR apply to the winding up of an exempted limited partnership with the exception of certain sections thereof, as they relate to the voluntary winding up of an exempted limited partnership but which, for current purposes, are irrelevant to this declaration.

29.  A Cayman Islands company may be wound up: (a) voluntarily, following the passing of a special resolution of its shareholder(s)[2] or pursuant to a mandatory term in its constitutional documents[3]; (b) compulsorily, by order of the Grand Court;[4] or (c) under the supervision of the Grand Court.[5]

**Liquidation by the Grand Court**

30.  The compulsory or supervised liquidation of a Cayman Islands company is carried out by the Grand Court, pursuant to certain statutory mechanisms set out in the Companies Law. That is, a Cayman Islands company may be compulsorily wound up by the Grand Court where (a) the company has passed a special resolution requiring the company to be wound up by the Court, (b) the company has not commenced business within a year from its incorporation, or suspends its business for a whole year, (c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association with the

---

[2] Section 90(b)(i) of the Companies Law.
[3] Section 90(b)(ii) of the Companies Law.
[4] Section 90(a) of the Companies Law.
[5] Section 90(c) of the Companies Law.

10

#48334968_v1

company is to be wound up, (d) the company is unable to pay its debts, or (e) the court is of the opinion that it is just and equitable that the company be wound up.[6]

31. The Companies Law provides that a Cayman Islands company may be placed into provisional liquidation, where upon the application of a creditor or contributory of the company (or in the case of a regulated business the Cayman Islands Monetary Authority), the Court finds there is a *prima facie* case for making a winding up order, and the appointment of provisional liquidators is necessary to prevent the dissipation or misuse of the company's assets, to prevent the oppression of minority shareholders or to prevent the mismanagement or misconduct on the part of the company's directors.[7]

32. An application for the appointment of a provisional liquidator can be made *ex-parte* where the company is or is likely to become unable to pay its debts and the company intends to present a compromise or arrangement to its creditors.[8]

33. In the case of both of the Funds, they entered into liquidation as a result of their inability to pay their respective debts as they fell due, following the presentation of the Master Petition by the Master Fund and the presentation of the International Petition by Parris (an undisputed creditor of the International Fund).

34. A general principle underlying the Cayman Islands' insolvency regime is that the claims of investors and creditors within the same class are treated on a *pari passu* basis.[9]

35. Section 97(1) of the Companies Law provides that upon the entry of a winding up order or the appointment of a provisional liquidator, no suit or other proceeding may be commenced or continued against the company except with leave of the Grand Court and subject

---

[6] Section 92 of the Companies Law.
[7] Section 104(2) of the Companies Law..
[8] Section 104(3) of the Companies Law.
[9] Section 140 of the Companies Law.

#48334968_v1

to such terms as the Grand Court may impose. This automatic stay serves to promote the Liquidators' ability to deal with the claims of creditors collectively and comprehensively.

36. In my experience, Cayman Islands liquidation proceedings are fair and equitable. All creditors and interest holders have an opportunity to be heard by the Cayman Court and no creditor will be prejudiced because it is foreign-based.

**The Liquidators**

37. The Liquidators are fiduciaries and officers of the Grand Court. As Official Liquidators of the International Fund, their duties are to (a) collect, realise and distribute the assets of the International Fund to its creditors and if there is a surplus, to equity holders, and (b) report to the International Funds' creditors and other stakeholders upon the affairs of the Funds and the manner in which they are being wound up[10]. As Provisional Liquidators of the Master Fund, their duties (a) are to prevent the dissipation of and to generally protect the assets of the Master Fund for the benefit of all of its stockholders, and (b) report to the Grand Court and the Master Funds' creditors and other stakeholders upon the affairs of the Master Fund.

38. Unless otherwise ordered by the Grand Court, Schedule 3, Part I to the Companies Law sets out the powers that the Official Liquidators may exercise with the sanction of the Grand Court. They are:

    a.    *"Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.*

    b.    *Power to carry on the business of the company so far as may be necessary for its beneficial winding up.*

    c.    *Power to dispose of any property of the company to a person who is or was related to the company.*

    d.    *Power to pay any class of creditors in full.*

---

[10] Section 110 of the Companies Law.

#48334968_v1

e. *Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.*

f. *Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.*

g. *Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.*

h. *The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.*

i. *The power to raise or borrow money and grant securities therefor over the property of the company, the power to engage staff (whether or not as employees of the company) to assist him in the performance of his functions.*

j. *The power to engage attorneys and other professionally qualified persons to assist him in the performance of his functions."*

39. Schedule 3, Part II of the Companies Law further provides that the Official Liquidators are permitted to exercise the following powers without the Grand Court's sanction:

a. *"The power to take possession of, collect and enter the property of the company and for that purpose to take all such proceedings as he considers necessary.*

b. *The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.*

c. *The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.*

13

#48334968_v1

  d. *The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.*

  e. *The power to promote a scheme of arrangement pursuant to section 86.*

  f. *The power to convene meetings of creditors and contributories.*

  g. *The power to do all other things incidental to the exercise of his powers."*

40. The Official Liquidators are also empowered to investigate (i) the causes for the failure of the Funds' business, as well as (ii) generally, the promotion, business, dealings and affairs of the Funds.[11]

**US Bankruptcy Code**

<u>The Official Liquidations of the Funds are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code</u>

41. I am advised by U.S. Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code as:

> "... *a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganisation or liquidation."*

11 U.S.C. § 101(23).

42. In my view, the Grand Court's liquidation of the Funds satisfies the above definition: the collective liquidation process of the Funds was commenced pursuant to Part V of the Companies Law, pursuant to Liquidation Orders entered into by the Grand Court of the Cayman Islands.

<u>The Petitioners are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code</u>

---

[11] Section 102 of the Companies Law.

#48334968_v1

43.     I am also advised by U.S. Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code as:

> "... *a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.*"

11 U.S.C. § 101(24).

44.     In my view, the Petitioners satisfy this definition: as fiduciaries and officers of the Grand Court, the Liquidators are duly authorised and empowered by the Grand Court to administer the reorganisation of the Master Funds' assets or affairs and the liquidation of the International Funds' assets and to act as the duly authorised representatives of both of the Funds.

45.     The International Fund was established as a Cayman Islands exempted limited company and the Master Fund was established as a Cayman Islands exempted limited partnership. An exempted entity is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside of the Cayman Islands. Specifically, any proposed company applying for registration as an exempted limited company under the Companies Law must show that its objects are to be carried out mainly outside of the Cayman Islands. However, in order to further those objects outside of the Cayman Islands, it may effect and conclude contracts and exercise all of its powers necessary for the carrying on of its business, within the Cayman Islands. In other words, it can employ staff or agents in the Cayman Islands and hold offices in the Cayman Islands. Although, upon their incorporation, the Funds were restricted from carrying on business within the Cayman Islands, that did not mean that the Funds had no presence at all in this jurisdiction. For example, as pointed out previously, the registered offices of the Funds have been situated in the Cayman Islands, since their inception and continue to be so situated, namely, the Funds' registered office prior to the commencement of the liquidation was located at c/o Intertrust Corporate Services (Cayman) Limited, 190 Elgin

15

#48334968_v1

Avenue, George Town, Grand Cayman, KY1-9005, where the Funds' annual filings with the Registrar of Companies were made. Under private international law, shares are deemed to be situated in the country where they can be effectively dealt with between the shareholder and that company. See *160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256. By virtue of the fact that the register of members of the Funds is maintained at their respective registered offices, any issues relating to the title of those shares will be governed by the laws of the Cayman Islands Meetings of the directors of the Funds would take place annually in the Cayman Islands In addition, three of the Funds' four directors were each domiciled and resident in the Cayman Islands and both of the Funds filed with and were regulated by the Cayman Islands Monetary Authority.

46.     It is also a requirement of the IPR that at least one official liquidator be resident in the Cayman Islands. In the present case, both of the Petitioners are resident in the Cayman Islands.

47.     Under the Liquidation Orders, the Petitioners were granted various powers to enable them to effectively carry out their duties, but it remains the case that where they are contemplating actions that are not of automatic statutory application or as expressly provided for in the Liquidation Orders, they are required to seek the Grand Court's approval.

48.     In practice, this means that the management of the Funds being conducted by the Petitioners from within the Cayman Islands and key aspects of the management of the Funds are subject to the supervision of the Grand Court. Accordingly, it is submitted that there is a substantial nexus to the Cayman Islands in respect of the operating control over the Funds.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 17th day of October, 2016.

_____
STEPHEN LEONTSINIS