16-12925-scc    Doc 656    Filed 01/25/18    Entered 01/25/18 21:17:43    Main Document
Pg 1 of 30
16-12925-scc    Doc 656    Filed 01/25/18    Entered 01/25/18 19:46:33    Memorandum of
Law in Support of Motion    Pg 1 of 30

Hearing Date and Time: March 6, 2018 at 2:00 p.m. (ET)
Opposition Due: February 16, 2018

Jack B. Gordon
Bruce R. Grace
**LEWIS BAACH KAUFMANN**
**MIDDLEMISS PLLC**
1899 Pennsylvania Ave., NW, Suite 600
Washington, DC 20006
(202) 833-8900

*Attorneys for the Foreign Representatives of Platinum*
*Partners Value Arbitrage Fund (International) Limited*
*(in Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                        :
In re                                                   :        Chapter 15
                                                        :
PLATINUM PARTNERS VALUE                                 :        Case No. 16-12925 (SCC)
ARBITRAGE FUND L.P. (IN                                 :
OFFICIAL LIQUIDATION), [1] *et al.*,                    :        (Jointly Administered)
                                                        :
                            Debtors in                  :
                            Foreign Proceedings.        :
                                                        :
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF THE FOREIGN REPRESENTATIVES'**
**MOTION FOR AN ORDER COMPELLING COHNREZNICK LLP TO COMPLY**
**WITH SUBPOENA FOR PRODUCTION OF DOCUMENTS**

---

[1]    The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) (1954); Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) (2356); and Platinum Partners Value Arbitrage Intermediate Fund Ltd. (in Official Liquidation) (9530).

16-13923-scc   Doc 56-1   Filed 01/25/18   Entered 01/25/18 15:46:33   Memorandum of
Law in Support of Motion   Pg 2 of 30

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY, JURISDICTION AND VENUE ................................................... 4

RELEVANT BACKGROUND .................................................................................................. 4

     A.     The PPVA Funds ............................................................................................. 4

     B.     Pre-Liquidation Management of the Funds ...................................................... 5

     C.     The CohnReznick Subpoena ............................................................................ 6

ARGUMENT ............................................................................................................................. 8

I.     The Subpoena Is Proper Under Sections 542(e) and 1521(a)(4) of the Bankruptcy
Code and Bankruptcy Rule 2004 ............................................................................... 8

II.     CohnReznick's Objections to the Subpoena Have No Merit........................................ 12

     A.     The Scope of Discovery Available under Cayman Law is Irrelevant to the
Scope of Discovery Available under Chapter 15 ............................................ 12

     B.     The Arbitration Provisions in the CohnReznick Engagement Letters are
Irrelevant to the Scope of Permissible Discovery in Aid of the Foreign
Representatives' Investigation ....................................................................... 17

     C.     The Recognition Order Was Properly Granted ............................................... 19

     D.     The Subpoena is Neither Overbroad nor Unduly Burdensome ....................... 22

CONCLUSION ......................................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES                                                                    PAGE(S)

*Application of Malev Hungarian Airlines*,
    964 F.2d 97, 101 (2d Cir. 1992) ........................................................... 13, 15

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ................................................................... 12

*Intel Corp. v. Advanced Micro Devices, Inc.*, ............................................. 12
    542 U.S. 241, 259–64 (2004)

*In re Aerovias Nacionales de Colombia S.A.*,
    303 B.R. 1 (Bankr. S.D.N.Y. 2003) ....................................................... 21

*In re AJW Offshore Ltd.*,
    488 B.R. 551 (Bankr. E.D.N.Y. 2013) ................................................... 11

*In re Am. Metrocomm Corp.*,
    274 B.R. 641 (Bankr. D. Del. 2002) ...................................................... 11

*In re Barnet*,
    737 F.3d 238 (2d Cir. 2013) ................................................................... 20

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) ................................................................... 14

*In re Bennett Funding Grp., Inc.*,
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) .................................................... 10

*In re British Am. Ins. Co.*,
    488 B.R. 205 (Bankr. S.D. Fla. 2013) .................................................... 21

*In re Catalyst Managerial Servs., DMCC*,
    680 F. App'x 37 (2d Cir. 2017) .............................................................. 15

*In re China Fishery Group Ltd.*,
    No. 16-11895(JLG), 2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ............................ 9

*In re Daisytek, Inc.*,
    323 B.R. 180 (N.D. Tex. 2005) ............................................................... 18

*In re Drexel Burnham Lambert Grp., Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ................................................... 10

16-13925-jlm    Doc 56    Filed 01/25/18    Entered 01/25/18 21:17:43    Main Document
Pg 4 of 30
16-13923-scc    Doc 551    Filed 01/25/18    Entered 01/25/18 15:46:43    Memorandum of
Law in Support of Motion    Pg 4 of 30

*In re Friedman's, Inc.,*
    356 B.R. 779 (Bankr. S.D. Ga. 2005) ........................................................................ 18, 19

*In re Gawker Media L.L.C.,*
    No. 16-11700(SMB), 2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) ........................ 10

*In re Gee,*
    53 B.R. 891 (Bankr. S.D.N.Y. 1985) .................................................................................. 14

*In re GHR Companies, Inc.,*
    41 B.R. 655 (Bankr. D. Mass. 1984) .................................................................................. 10

*In re GHR Energy,*
    33 B.R. 451 (Bankr. D. Mass 1983) .................................................................................. 10

*In re Global Ocean Carriers Ltd.,*
    251 B.R. 31 (Bankr. D. Del. 2000) .................................................................................... 22

*In re Head,*
    223 B.R. 648 (Bankr. W.D.N.Y. 1998) ............................................................................. 21

*In re Hopewell,*
    258 B.R. 580 (Bankr. S.D.N.Y. 2001) .......................................................................... 15, 16

*In re Hughes,*
    281 B.R. 224 (Bankr. S.D.N.Y. 2002) .......................................................................... 10, 14

*In re Ionosphere Clubs, Inc.,*
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ...................................... 10

*In re J & R Trucking, Inc.,*
    431 B.R. 818 (Bankr. N.D. Ind. 2010) ............................................................................. 19

*In re Kroh,*
    80 B.R. 488 (Bankr. W.D. Mo. 1987) ............................................................................... 11

*In re McKenzie,*
    716 F.3d 404 (6th Cir. 2013) ............................................................................................ 11

*In re McTague,*
    198 B.R. 428 (Bankr. W.D.N.Y. 1996) ......................................................................... 20, 21

*In re Metallgesellschaft AG,*
    121 F.3d 77 (2d Cir. 1997) ............................................................................................... 14

*In re Millennium Global Emerging Credit Master Fund Ltd.,*
471 B.R. 342 (Bankr. S.D.N.Y. 2012) ...................................................... 9, 15, 19

*In re Millennium Lab Holdings II, LLC,*
562 B.R. 614 (Bankr. D. Del. 2016) .................................................................. 18

*In re New Century TRS Holdings, Inc.,*
407 B.R. 558 (Bankr. D. Del. 2009) .................................................................. 18

*In re Octaviar Admin. Pty Ltd,*
511 B.R. 361 (Bankr. S.D.N.Y. 2014) ............................................................... 20

*In re Paper I Partners, L.P.,*
283 B.R. 661 (Bankr. S.D.N.Y. 2002) .......................................................... 20, 22

*In re Petroforte Brasiliero de Petroleo Ltda,*
542 B.R. 899 (Bankr. S.D. Fla. 2015) ............................................................... 11

*In re Pro-Fit Holdings Ltd.,*
391 B.R. 850 (Bankr. C.D. Cal. 2008) ................................................................ 9

*In re Recoton, Corp.,*
307 B.R. 751 (Bankr. S.D.N.Y. 2004) ............................................................ 9-10

*In re S3 Ltd.,*
242 B.R. 872 (Bankr. E.D. Va. 1999) ................................................................ 11

*In re Suntech Power Holdings Co., Ltd.,*
520 B.R. 399 (Bankr. S.D.N.Y. 2014) ............................................................... 20

*In re Wash. Mut., Inc.*
408 B.R. 45, 50 (Bankr. D. Del. 2009) ............................................................... 10

*In re WinNet R CJSC,*
No. 16-mc-484(DLC), 2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) .................. 15

*Inv. Vehicles v. KPMG, L.L.P.,*
798 F.3d 113 (2d Cir. 2015) .............................................................................. 13

*Krys v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP (In re China Med. Techs., Inc.),*
539 B.R. 643 (S.D.N.Y. 2015) ............................................................................. 9

*Peat, Marwick, Mitchell & Co. v. Creditor's Comm. of Ne. Dairy Co-op. Fed'n, Inc.,*
65 B.R. 886 (N.D.N.Y. 1986) ............................................................................. 11

16-13925-jem   Doc 56   Filed 01/25/18   Entered 01/25/18 21:17:43   Main Document
16-13925-smb   Doc 55-1   Filed 01/25/18   Entered 01/25/18 19:46:33   Memorandum of
Law in Support of Motion   Pg 6 of 30
Pg 6 of 30

*SEC v. Platinum Mgmt.*,
   Civ. No 16-06848 (E.D.N.Y. Dec. 19, 2016) .................................................. 6, 22

*Singularis Holdings Ltd. v. PricewaterhouseCoopers*,
   [2014] UKPC 36 ........................................................................................ 17

*SNP Boat Service SA v. Hotel Le St James,1*
   483 B.R. 776 (S.D. Fla. 2012) ................................................................... 14

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*,
   482 U.S. 522 (1987)............................................................................. 14, 17

*United States v. Arthur Young & Co*,
   465 U.S. 104 (S. Ct. 1984)......................................................................... 10

*United States v. Nordlicht, et.*,
   Cr. No. 16-640 (E.D.N.Y. Dec. 14, 2016) ...................................................... 6

## STATUTORY AUTHORITIES

11 U.S.C. § 103(a) ......................................................................................... 21

11 U.S.C. § 105(a) ....................................................................................... 1, 4

11 U.S.C. § 109 .......................................................................................... 21, 22

11 U.S.C. § 109(a) ...................................................................................... 20, 21

11 U.S.C. § 542(e) .................................................................................. *passim*

11 U.S.C. § 1501(a) ....................................................................................... 13

11 U.S.C. § 521 ......................................................................................... 15, 20

11 U.S.C. § 1521(a) ......................................................................................... 1

11 U.S.C. § 1521(a)(4)............................................................................... *passim*

11 U.S.C. § 1522(a) ................................................................................... 16, 17

28 U.S.C. § 157 ............................................................................................... 4

28 U.S.C. § 157(b)(2) ....................................................................................... 4

28 U.S.C. § 1334............................................................................................. 4

16-12923-smb    Doc 631    Filed 01/25/18    Entered 01/25/18 19:46:33    Memorandum of
Law in Support of Motion    Pg 7 of 30

28 U.S.C. §1408 ................................................................................................................ 4

28 U.S.C. §1409 ................................................................................................................ 4

28 U.S.C. §1782 ................................................................................................... 12, 13, 15

## **RULES**

Fed. R. Bankr. P. 2004(b) ................................................................................................. 9

Fed. R. Bankr. P. 2004(c) ................................................................................................. 9

16-13025-jlg    Doc 56    Filed 01/25/18    Entered 01/25/18 21:17:43    Main Document
                                    Pg 8 of 30
16-13025-scc    Doc 55-1    Filed 01/25/18    Entered 01/25/18 19:46:33    Memorandum of
                        Law in Support of Motion    Pg 8 of 30

Margot MacInnis and Nilani Perera, the foreign representatives (**"Foreign Representatives"**) of Platinum Partners Value Arbitrage Fund (International) Limited (in Official Liquidation) (**"International Fund" or "Fund"**), hereby move for an order, pursuant to 11 U.S.C. §§ 105(a), 542(e) & 1521(a), and Rule 2004 of the Federal Rules of Bankruptcy Procedure, directing CohnReznick LLP (**"CohnReznick"**) to comply with a Subpoena to Produce Documents (**"Subpoena"**), served on August 31, 2017, a copy of which is attached as Exhibit 1 to the accompanying Declaration of Jack B. Gordon (**"Gordon Decl."**).

In support of this Motion, the Foreign Representatives state as follows:

## PRELIMINARY STATEMENT

1.    Platinum Partners Value Arbitrage Fund L.P. (**"PPVA" or "Master Fund"**), a Cayman Islands exempted limited partnership, was established in or about 2003 and promoted as a multi-strategy hedge fund offering high returns and liquidity. By 2012, however, most of its assets were highly illiquid and it lacked sufficient cash to honor redemption requests in a timely manner. In August 2016, following its failure to honor numerous such requests, PPVA and its offshore feeder fund, the International Fund, were placed into liquidation (the **"Cayman Proceedings"**) by the Grand Court of the Cayman Islands (the **"Grand Court"**).

2.    Shortly thereafter, senior executives of Platinum Management (NY) LLC (**"Platinum Management"**), the entity that managed PPVA, were indicted by a federal grand jury in Brooklyn on various charges of conspiracy and fraud in connection with those operations. Five days later, the Securities and Exchange Commission (**"SEC"**) filed a civil complaint against Platinum Management and the indicted individuals.

3.    The Foreign Representatives are officers of the Grand Court obligated to "collect, realise and distribute" the Fund's assets, and empowered to investigate the "promotion, business,

dealings and affairs" of the Fund, including the causes of its failure.[2] They obtained chapter 15

recognition of the Fund's Cayman-based insolvency proceeding in aid of those efforts, and this

Court's recognition order expressly authorizes them to engage in discovery by, among other

things, issuing written requests for the turnover of documents concerning the Fund.[3]

4.     CohnReznick had been engaged to provide audit services to the Master Fund, the

International Fund, and related feeder funds (collectively, the **"Funds"**) for the years ending

December 31, 2014 and 2015—the two years immediately preceding the collapse of PPVA and

institution of the Cayman Proceedings. To aid in their investigation, the Foreign Representatives

asked CohnReznick to make available its records concerning the Funds. In response,

CohnReznick produced documents that it said were property of the Funds, but no other papers in

its possession concerning the Funds' financial affairs. The Foreign Representatives thereafter

issued the Subpoena, seeking all documents and records concerning the audit engagements and

financial affairs of the Funds.

5.     CohnReznick does not dispute that it has responsive documents that have not been

produced to the Foreign Representatives. Instead it relies upon a series of general objections that

have no merit. CohnReznick objects that the Subpoena seeks documents that the Foreign

Representatives would be unable to obtain under Cayman discovery rules, but the scope of

discovery-related relief available under chapter 15 is not restricted by the scope of discovery that

would be available to a foreign representative in her home jurisdiction.

6.     CohnReznick further contends that the Subpoena impermissibly seeks "pre-suit

discovery" concerning potential claims that would fall within the scope of arbitration provisions

---

[2]     *See* Declaration of Stephen Leontsinis in Support of Chapter 15 Petitions, ¶¶ 37, 40 (citing Sections 110 and 102 of the Companies Law of the Cayman Islands). [ECF Doc. 3].

[3]     Matthew James Wright and Christopher Barnett Kennedy, the previous joint liquidators of the Fund, filed the petition for recognition. This Court recognized Margot MacInnis and Nilani Perera as substitute Foreign Representatives by Supplemental Order dated February 28, 2017. [ECF Doc. 39].

in the engagement letters between CohnReznick and the Funds. But those arbitration clauses have no bearing upon the scope of discovery available to the Foreign Representatives under chapter 15 since the Foreign Representatives are merely conducting an open-ended investigation and have not asserted any claims against CohnReznick.

7.  CohnReznick also argues that the Subpoena is void because the Foreign Representatives did not adequately establish that the Fund has property in the United States at the time of the petition. This "Hail Mary" objection is factually inaccurate. Nor has CohnReznick made any showing in support of its boilerplate objections that the Subpoena is overly broad or unduly burdensome.

8.  Discovery of information in the possession of an insolvent company's former auditor is essential to an investigation of the company's affairs and the identification of assets for the benefit of creditors. Here, the need for information is especially acute insofar as a federal grand jury has charged the Funds' former managers with having engaged in fraudulent schemes concerning the Funds' financial affairs, and the managers have previously asserted their Fifth Amendment right against self-incrimination when asked questions about particular financial transactions concerning the Funds.

9.  Given the nexus between the documents and information sought from CohnReznick and the nature and scope of the Foreign Representatives' investigation, the requested discovery falls squarely within the scope of sections 542(e) and 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004. Because CohnReznick's engagement was for a two-year period, the volume of documents should be relatively limited; any retrieval burden will be minimal in comparison to the Foreign Representatives' need for the documents.

16-12925-jlm   Doc 56   Filed 01/25/18   Entered 01/25/18 21:17:43   Main Document
16-12925-scc   Doc 539   Filed 01/25/18   Entered 01/25/18 19:46:43   Memorandum of
Law in Support of Motion   Pg 11 of 30
Pg 11 of 30

## PROCEDURAL HISTORY, JURISDICTION AND VENUE

10.    On October 18, 2016, the Foreign Representatives' predecessors, Matthew James Wright and Christopher Barnett Kennedy, filed a petition in this Court for recognition of the Cayman Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In October 2017, a similar petition was filed with respect to the Cayman-based insolvency proceeding of Platinum Partners Value Arbitrage Intermediate Fund Limited (the **"Intermediate Fund"**).

11.    On November 22, 2016, the Court entered an order (the **"Recognition Order"**) recognizing the Cayman Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. [ECF Doc. 27]. On October 12, 2017, the Court entered a similar order with respect to the Cayman-based liquidation proceeding of the Intermediate Fund. [Case No. 17-12269, ECF Doc. 12].[4]

12.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

13.    The statutory predicates underlying the relief requested in this Motion are sections 105(a), 542(e) and 1521(a) of the Bankruptcy Code and Bankruptcy Rule 2004.

### RELEVANT BACKGROUND

#### A.    The PPVA Funds

14.    The Master Fund was registered as an exempted limited partnership, and the International Fund and Intermediate Fund were formed as exempted limited companies, all under the laws of the Cayman Islands.

---

[4]    The chapter 15 proceedings are being jointly administered.

15.     The International Fund is an indirect feeder fund into the Master Fund. It was supposed to invest all of its investable capital in the Intermediate Fund, which in turn was supposed to invest all of its investable capital in the Master Fund. Another fund, Platinum Partners Value Arbitrage Fund (USA) L.P. (**"Onshore Fund"**), also served as a feeder fund into the Master Fund.

16.     On July 28, 2016, an International Fund investor filed a creditor's petition in the Grand Court seeking the Fund's liquidation. On August 23, 2016, the Master Fund petitioned the Grand Court for an order of liquidation of the Master Fund. The Grand Court subsequently appointed Messrs. Wright and Kennedy as Joint Liquidators of the International Fund and Master Fund.

17.     On December 16, 2016, Messrs. Wright and Kennedy were replaced as Joint Liquidators of the International Fund by Ms. MacInnis and Ms. Perera, the current Foreign Representatives. On February 14, 2017, the Grand Court appointed Ms. MacInnis and Cosimo Borrelli (also of the firm Borrelli Walsh) as Joint Liquidators of the Intermediate Fund.

**B.     Pre-Liquidation Management of the Funds**

18.     Prior to appointment of the Joint Liquidators, the Funds were managed by Platinum Management, which was and is headquartered in New York City. Platinum Management was responsible for managing, trading, investing and allocating the Funds' assets. Additional administrative functions were performed by SS&C Technologies, Inc., (**"SS&C"**) in Windsor, Connecticut. Original books and records of the Fund were located in New York, Connecticut and elsewhere in the United States.

19.     On December 14, 2016, a federal grand jury indicted senior executives of Platinum Management on charges of conspiracy, securities fraud, investment advisor fraud, and

16-13725-jlm   Doc 56   Filed 01/25/18   Entered 01/25/18 21:17:43   Main Document of
16-13725-smb   Doc 39   Filed 01/25/18   Entered 01/25/18 19:46:33   Memorandum of
Law in Support of Motion   Pg 13 of 30
Pg 13 of 30

wire fraud in connection with the operation of various Platinum entities, including Platinum Management. *See United States v. Nordlicht, et. al.*, Cr. No. 16-640 (E.D.N.Y. Dec. 14, 2016). The indictment alleges, among other things, that the defendants engaged in a scheme to defraud investors concerning: (i) the valuation of PPVA assets; (ii) PPVA's liquidity; (iii) PPVA's redemption process; and (iv) related party transactions involving PPVA.

20.     Five days later, the SEC filed a complaint against Platinum Management and the indicted individuals seeking various forms of relief in connection with the alleged "multi-pronged fraudulent scheme." *See SEC v. Platinum Management (NY) LLC, et. al.*, Civ. No 16-06848 (E.D.N.Y. Dec. 19, 2016).

21.     According to the SEC, Mark Nordlicht and David Levy, the co-chief investment officers of Platinum Management, have each asserted his right against self-incrimination when questioned by the Litigation Trustee for Black Elk (a PPVA investment) concerning Platinum-related matters. Compl. ¶¶ 182–85, *SEC v. Platinum Mgmt.*, Civ. No 16-06848 (E.D.N.Y. Dec. 19, 2016). Other indicted individuals include Platinum Management's managing member, Uri Landesman, and its chief financial officer, Joseph SanFilippo.

22.     It merits emphasis that the Foreign Representatives must depend almost entirely on third parties for information about the acts, conduct, assets or financial condition of the Funds.

C.     **The CohnReznick Subpoena**

23.     In the course of their investigation, the Foreign Representatives determined that CohnReznick had involvement with the Funds that would put them in possession of documents and information concerning the Funds' affairs.

24.    In particular, CohnReznick had been engaged to audit the Funds' financial statements for the years ending December 31, 2014 and 2015—the two years immediately preceding the Cayman Proceedings. *See Gordon Decl.*, Ex. 3 (Engagement Letter).

25.    The Foreign Representatives initially asked CohnReznick in writing for copies of records concerning the Funds. In response, CohnReznick provided a small number of documents, being merely what it represented to be copies of all original documents "*belonging to the Fund*" that are still in CohnReznick's possession. CohnReznick refused to provide any other documents or information concerning the Funds, including for example its audit work papers, engagement documents, communications, representations, invoices and other relevant documents within its audit file, even though such documents concern the Funds and are, or ought to be, in CohnReznick's possession.

26.    The Foreign Representatives believe that the exercise of their discovery rights under the Bankruptcy Code and Bankruptcy Rules is necessary to fully investigate the facts and circumstances concerning the financial affairs of the Funds and their collapse. The financial affairs of the Funds are complex, questions have been raised about various aspects of the Funds' financial affairs, including the valuation of the Funds' assets, and former executives of Platinum Management have asserted their Fifth Amendment rights. Access to information concerning the Funds' financial affairs in the possession of the Funds' former auditors is essential to the Foreign Representatives' investigation.

16-12925-jlm   Doc 56   Filed 01/25/18   Entered 01/25/18 21:17:43   Main Document
16-12923-smb   Doc 35   Filed 01/25/18   Entered 01/25/18 19:46:33   Memorandum of
Law in Support of Motion   Pg 15 of 30   Pg 15 of 30

27.     Accordingly, on August 31, 2017, the Foreign Representatives served the Subpoena upon CohnReznick, seeking all documents concerning CohnReznick's performance of services for the Funds, including all documents concerning the financial affairs of the Funds.[5]

28.     On October 2, 2017, CohnReznick served written objections to the entirety of the Subpoena.  A copy of the objections is attached as Exhibit 2 to the Gordon Decl.

## ARGUMENT

**I.     The Subpoena Is Proper Under Sections 542(e) and 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004**

29.     CohnReznick does not dispute the Court's authority to provide assistance to the Foreign Representatives by ordering compliance with the Subpoena. Nor would such a challenge be viable insofar as the Subpoena is squarely within the scope of discovery available under sections 542(e) and 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004.

30.     Section 1521(a)(4) of the Bankruptcy Code expressly authorizes the Court, upon recognition of a foreign proceeding, to enter an order at the request of the foreign representative providing for "the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities."

31.     Consistent with section 1521(a)(4), the Recognition Order expressly authorizes the Foreign Representatives to seek discovery "concerning the assets, affairs, rights, obligations or liabilities of the Funds, the Funds affiliates and the Funds' subsidiaries," including "upon written request, obtaining turnover of any and all documents . . . that are property of, concern or were made or issued on behalf of the Funds . . . ." Recognition Order ¶ 7.

---

[5]     Although not required, the Foreign Representatives provided CohnReznick with written consent from the liquidators of the Master Fund to disclosure of documents and information concerning the Master Fund. Furthermore, Ms. MacInnis is a common liquidator of both the International Fund and the Intermediate Fund.

32.     The Subpoena seeks documents concerning audits that CohnReznick performed on behalf of the Funds for the two years immediately prior to the Funds' liquidations, including documents concerning the Funds' assets, liabilities and financial affairs. It is thus expressly authorized by the plain language of section 1521(a)(4) and paragraph 7 of the Recognition Order. Documents concerning the CohnReznick audits also fall within the scope of Rule 2004, which authorizes the Foreign Representatives to subpoena documents relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004(b), 2004(c).

33.     "'One of the main purposes of chapter 15 is to assist a foreign representative in the administration of the foreign estate,' and Rule 2004 proceedings are one of the mechanisms by which bankruptcy courts provide such assistance." *Krys v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP (In re China Med. Techs., Inc.)*, 539 B.R. 643, 649 (S.D.N.Y. 2015) (internal brackets omitted) (quoting *In re Millennium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 347 (Bankr. S.D.N.Y. 2012)). *See also In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 860 (Bankr. C.D. Cal. 2008) (discovery under section 1521(a)(4) includes the "examination of witnesses pursuant to Rule 2004 and the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities") (quoting 11 U.S.C. § 1521(a)(4)).

34.     As a mechanism for assisting interested parties "in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred," Rule 2004 permits "a broad investigation into the affairs of the debtor." *In re China Fishery Group Ltd.*, No. 16-11895(JLG), 2017 WL 3084397, *4 (Bankr. S.D.N.Y. July 19, 2017); *see also In re Recoton, Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). Objections as to scope, like those asserted by Cohn Reznick here, are routinely rejected

on the ground that Rule 2004 not only allows, but to some extent encourages, discovery "in the nature of a 'fishing expedition.'" *In re Wash. Mut., Inc.* 408 B.R. 45, 50 (Bankr. D. Del. 2009) (quoting *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)). *See also In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (Rule 2004 "can be legitimately compared to a fishing expedition"); *In re GHR Energy,* 33 B.R. 451, 453 (Bankr. D. Mass 1983) (same).

35.     "Any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). *See also In re Gawker Media L.L.C.*, No. 16-11700(SMB), 2017 WL 2804870, *6 (Bankr. S.D.N.Y. June 28, 2017) (the examination of third parties for the purpose of discovering assets, examining transactions, and determining whether wrongdoing has occurred "fits squarely within the purpose of Rule 2004").

36.     Audit work papers, in particular, contain information "that is both relevant and fundamental to an understanding of [the debtor's] financial condition." *In re GHR Companies, Inc.*, 41 B.R. 655, 663 (Bankr. D. Mass. 1984). As Judge Lifland observed years ago, access to auditor information "is essential" to a liquidator's investigation into the causes of the debtor's insolvency, and "clearly" within the scope of former section 304, current section 1521(a)(4), and Rule 2004. *In re Hughes*, 281 B.R. 224, 228–29 (Bankr. S.D.N.Y. 2002).

37.     Insulating from disclosure an accountant's "interpretations of the client's financial statements would be to ignore the significance of the accountant's role as a disinterested analyst served with public obligations." *In re GHR Companies*, 41 B.R. at 663–64 (Bankr. D. Mass. 1984) (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 818 (1984)).

16-13925-jlm    Doc 56    Filed 01/25/18    Entered 01/25/18 21:17:33    Main Document
Pg 18 of 30
16-13925-scc    Doc 531    Filed 01/25/18    Entered 01/25/18 19:46:33    Memorandum of
Law in Support of Motion    Pg 18 of 30

38.     Thus, all substantive information contained in an accountant's work papers pertaining to the financial affairs of the accountant's client is properly discoverable. *See, e.g.*, *In re S3 Ltd.*, 242 B.R. 872, 875–76 (Bankr. E.D. Va. 1999); *In re Kroh*, 80 B.R. 488, 491 (Bankr. W.D. Mo. 1987); *Peat, Marwick, Mitchell & Co. v. Creditor's Comm. of Ne. Dairy Co-op. Fed'n, Inc.*, 65 B.R. 886, 887–88 (N.D.N.Y. 1986).

39.     The importance of audit-related information is further reflected in section 542(e) of the Bankruptcy Code, which specifically authorizes the court to order "an attorney, accountant or other person" holding recorded information relating to "the debtor's property or financial affairs" to "turn over or disclose such recorded information to the trustee." 11 U.S.C. § 542(e).

40.     Section 542(e) requires the disclosure of documents concerning a debtor's property or financial affairs, whether or not the documents themselves are property of the estate. *In re McKenzie*, 716 F.3d 404, 419 (6th Cir. 2013); *In re Am. Metrocomm Corp.*, 274 B.R. 641, 652 (Bankr. D. Del. 2002). A foreign representative may seek disclosure pursuant to section 542(e). *See In re AJW Offshore Ltd.*, 488 B.R. 551, 558–59 (Bankr. E.D.N.Y. 2013).

41.     In sum, the Subpoena seeks documents inarguably within the scope of discovery authorized by sections 542(e) and 1521(a)(4) of the Bankruptcy Code, as well as Bankruptcy Rule 2004. Accordingly, an order compelling CohnReznick to comply with the Subpoena would be proper under all three provisions. *See also In re Petroforte Brasiliero de Petroleo Ltda*, 542 B.R. 899, 911 (Bankr. S.D. Fla. 2015) (agreeing with *In re Millennium Global* that Rule 2004 applies under chapter 15 and finding the discovery at issue was proper "whether the Court applied § 1521 or the arguably broader discovery rights under Rule 2004").

11

16-13925-jlg   Doc 56   Filed 01/25/18   Entered 01/25/18 21:17:33   Main Document
Pg 19 of 30
16-13923-scc   Doc 55-1   Filed 01/25/18   Entered 01/25/18 19:46:33   Memorandum of
Law in Support of Motion   Pg 19 of 30

## II.     CohnReznick's Objections to the Subpoena Have No Merit

### A.     The Scope of Discovery Available under Cayman Law is Irrelevant to the Scope of Discovery Available under Chapter 15

42.     Invoking an entirely different statute, 28 U.S.C. § 1782, CohnReznick argues that the Foreign Representatives should not be allowed to take advantage of chapter 15 discovery mechanisms to access auditor work papers allegedly unavailable to them under Cayman law (the "foreign discoverability" objection). Moreover, they claim, if the situation were reversed, Cayman courts would not allow a foreign liquidator to take advantage of Cayman discovery rules to access documents unavailable to them under the law of the liquidator's home forum (the "reciprocity" objection). *See* ECF Doc. 52 (Letter dated Jan. 2, 2018) ("***Stroock Ltr.***"); *Gordon Decl.* Ex. 2, Gen. Obj. 3 & 4. The objections have no merit.

43.     CohnReznick's suggestion that the scope of assistance available under chapter 15 should be guided by the discretionary factors applicable to requests for assistance under 28 U.S.C. § 1782 is incorrect. *See Stroock Ltr.* at 2 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004) (explaining that "a district court could consider whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions").

44.     Assistance under section 1782 is available upon the application of "any interested person," 28 U.S.C. § 1782(a), whereas relief under section 1521(a)(4) is limited to a foreign representative recognized under chapter 15. The scope of the Court's discretion with respect to an application for discovery under chapter 15 is guided by the purposes and relevant provisions of the Bankruptcy Code and Bankruptcy Rules, not by the discretionary factors which may be applicable to an application under  28 U.S.C. § 1782.

45.     CohnReznick's objections based upon alleged Cayman law simply find no support in the plain language of the applicable statute – here 11 U.S.C. §1521. Section

1521(a)(4) authorizes the Court to enter an order providing for "the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." There is no further qualification that such information must be discoverable in the foreign representative's home jurisdiction. The same is true with respect to Rule 2004. *Cf. Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there.").

46.    Nor does anything in chapter 15 condition relief thereunder upon the availability of reciprocal relief in the foreign jurisdiction. Chapter 15 is based upon the Model Law on Cross-Border Insolvency (**"Model Law"**) of the United Nations Commission on International Trade Law. *See* 11 U.S.C. § 1501(a). It applies when assistance is sought in the United States "by a foreign court or a foreign representative in connection with a foreign proceeding." *Id.* § 1501(b)(1). Relief is available whether or not the Model Law has been implemented in the foreign representative's home jurisdiction, let alone implemented in the precise manner as it has been implemented in the United States. Even under 28 U.S.C. § 1782, it is well established that the assistance of the U.S. court is a "one-way street" in that it "grants wide assistance to others, but *demands* nothing in return." *Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992).[6]

47.    Similarly, with respect to "foreign discoverability," a foreign nation "may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions," but there is "no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use." *Intel,* 542 U.S. at 261 (quoting *In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998)).

---

[6]    Providing such assistance "encourag[es] foreign countries by example to provide similar means of assistance to our courts," *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015), "whether or not reciprocal arrangements" actually exist. *Malev*, 964 F.2d at 101.

48.     Indeed, an express restriction on the scope of discovery permitted in the forum of the foreign insolvency proceeding would not limit the relief available to a foreign representative under chapter 15. *See, e.g.*, *SNP Boat Service SA v. Hotel Le St James* 483 B.R. 776, 787 (S.D. Fla. 2012) (French blocking statute does not "deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute") (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987)).

49.     And while bankruptcy courts have made "U.S. style" discovery available in aid of Cayman-based liquidations for decades – *see, e.g.*, *In re Gee*, 53 B.R. 891, 904 (Bankr. S.D.N.Y. 1985) (ordering discovery to proceed against persons and entities found within this district and who have knowledge concerning the acts, conduct, property, liabilities, or financial condition of the debtor in a Cayman-based liquidation proceeding) – there is no indication that the Grand Court has ever "taken offense" at U.S. courts for so doing.

50.     Because the Subpoena seeks documents squarely within the scope of sections 542(e) and 1521(a)(4) of the Bankruptcy Code, as well as Rule 2004, CohnReznick's assertions regarding Cayman law are irrelevant. There is no "foreign discoverability" or "foreign reciprocity" requirement under the plain language of the applicable statutory provisions, nor would such requirements be consistent with the underlying purposes of chapter 15. *See also In re Hughes*, 281 B.R. at 230 (discovery available to foreign liquidators under former section 304 is not limited to what might be available in the foreign proceeding).[7]

---

[7]     Thus, CohnReznick's further contention that the Foreign Representatives have not yet attempted to obtain discovery from CohnReznick through the Grand Court also is irrelevant. *Cf. In re Metallgesellschaft AG*, 121 F.3d 77, 80 (2d Cir. 1997) ("If district courts were free to refuse discovery based upon its unavailability in a foreign court or because the foreign court had not first passed on the discoverability of the material sought, § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes.").

51.     In all events, CohnReznick's objections fail even against the discretionary factors considered under 28 U.S.C. § 1782. CohnReznick suggests that the Court may consider whether the discovery sought by the Foreign Representatives "conceals an attempt to circumvent foreign proof-gathering restrictions," but CohnReznick identifies no "attempt to circumvent foreign proof-gathering restrictions" here, and there is none. *See, e.g.*, *In re Millennium Global,* 471 B.R. at 347 ("Because BCP is not a party to the U.K. arbitration, BCP cannot complain that the Liquidators are circumventing BCP's rights in that proceeding with their requested discovery."); *cf. In re WinNet R CJSC*, No. 16-mc-484(DLC), 2017 WL 1373918, at *8 (S.D.N.Y. Apr. 13, 2017) ("SG has shown that WinNet's request is properly viewed as an attempt to circumvent the rulings in the Reorganization Case by gathering evidence on an issue that has already been decided on the merits.").

52.     Rather, CohnReznick is attempting to use an inapplicable discretionary factor as a back-door way of imposing a foreign discoverability requirement that is inconsistent with the plain language of chapter 15. Just as a district court may not deny assistance under section 1782 on that basis, it may not do so under chapter 15. *Cf. In re Catalyst Managerial Servs.*, DMCC, 680 F. App'x 37, 40 (2d Cir. 2017) ("[W]e have held that a district court may not deny § 1782 discovery solely because the foreign court did not have the opportunity to consider it first.") (citing *Malev*, 964 F.2d at 100) ("[R]equiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782.").

53.     CohnReznick's reliance upon *In re Hopewell*, 258 B.R. 580 (Bankr. S.D.N.Y. 2001), for the proposition it would be inappropriate to allow the Foreign Representatives to take discovery in the U.S. that the Cayman courts would prohibit, is utterly misplaced. *Hopewell* does not stand for the general proposition that discovery under chapter 15 (or in a proceeding under

16-13925-jlm   Doc 56   Filed 01/25/18   Entered 01/25/18 21:17:43   Main Document
16-13925-scc   Doc 55   Filed 01/25/18   Entered 01/25/18 19:46:33   Memorandum of
Law in Support of Motion   Pg 23 of 30   Pg 23 of 30

former section 304) is or should be "restricted to the type of discovery permitted under the laws of the jurisdiction where the main proceeding is taking place." *In re Hughes*, 228 B.R. at 227. Such an interpretation would be "inconsistent with the purpose underlying section 304 and other federal laws governing cross-border discovery." *Id.*[8]

54.     In *Hopewell* the foreign representative initiated a bankruptcy proceeding in order to enjoin an arbitration brought by a creditor in the United States and thereby force the creditor to arbitrate in Bermuda in accordance with Bermuda law. After the bankruptcy court granted the petition and enjoined the U.S. arbitration, the foreign representative sought U.S. bankruptcy court discovery not in connection with its general efforts to determine assets and liabilities but in connection with the Bermuda arbitration. *In re Hopewell*, 258 B.R. at 585. Under *those* circumstances, providing unilateral discovery rights to the foreign representative would "distort" the Bankruptcy Code's requirement to ensure "just treatment of all holders of claims against or interest in such estate," and create "a fundamental unfairness that Congress could not have intended." *Id.*

55.     Here, by contrast, the Foreign Representatives seek discovery in connection with their general efforts to determine assets and liabilities. They have not asserted any claims against CohnReznick and there is no proceeding between the Foreign Representatives and CohnReznick as to which one-sided discovery is being sought. Under *these* circumstances, CohnReznick cannot point to any "fundamental unfairness."

56.     Indeed, section 1522(a) of the Bankruptcy Code states that the court may grant relief under section 1521 as long as "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). Here, the interests of the

---

[8]     In any event, the Foreign Representatives do not agree that the discovery sought in the subpoena would be prohibited by the Cayman Court. Either way, *Hopewell* is inapposite.

debtor and creditors would be *furthered* by an order compelling CohnReznick to comply with the Subpoena. As for CohnReznick, any bona-fide interest in need of protection can be adequately addressed by mechanisms generally available to persons from whom discovery is sought (for example, a protective order concerning trade secrets).

57.     There is no reason why CohnReznick should be entitled to any greater protection against disclosure than that which is available to similarly situated persons subject to this Court's jurisdiction. Indeed, CohnReznick's reliance upon the scope of discovery available to a liquidator under Cayman law is especially disingenuous insofar as CohnReznick's engagement letters with the Funds include New York choice-of-law provisions. Just as foreign nationals are not entitled to "preferred status in our courts" based upon foreign blocking statutes, *Société Nationale Industrielle Aérospatiale,* 482 U.S. at 544 n.29, CohnReznick is not entitled to preferred status by virtue of the Funds' Cayman-based liquidations.

58.     In sum, the scope of discovery allegedly available under Cayman law is irrelevant and CohnReznick's objection on that basis should be rejected. [9]

**B.      The Arbitration Provisions in the CohnReznick Engagement Letters are Irrelevant to the Scope of Permissible Discovery in Aid of the Foreign Representatives' Investigation**

59.     CohnReznick further contends that the Subpoena "impermissibly seek[s] to obtain pre-suit discovery and investigate potential claims against CohnReznick that would fall directly within the scope of the parties' contractually-agreed arbitration provision to which the Court should give effect." *Stroock Ltr.* at 2; *see also Gordon Decl.* Ex. 2, Gen. Obj. 2. This objection, too, should be overruled.

---

[9]     CohnReznick's cites *Singularis Holdings Ltd. v. PricewaterhouseCoopers* [2014] UKPC 36 for the proposition that Cayman courts would reject an attempt by a foreign liquidator to obtain discovery that she would not be allowed to obtain in her home forum. *Stroock Ltr.* at 1. The Foreign Representatives do not agree that *Singularis* actually supports that proposition. Regardless, the case is irrelevant because there is no foreign discoverability or reciprocity requirement under chapter 15.

17

60.     The Subpoena does not implicate the arbitration clauses in the engagement letters

between CohnReznick and the Funds because the Foreign Representatives are merely conducting

an investigation and have not asserted any claim against CohnReznick that would be subject to

arbitration. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 630 (Bankr. D. Del. 2016)

(arbitration clause not implicated because "a Rule 2004 examination is not a 'dispute or claim'; it

is an investigatory tool used prior to a dispute"); *In re New Century TRS Holdings, Inc.*, 407 B.R.

558, 571 (Bankr. D. Del. 2009) (arbitration clause in KPMG engagement letter not implicated

where no claim had been asserted against KPMG at the time discovery was sought); *In re*

*Friedman's, Inc.*, 356 B.R. 779, 783 (Bankr. S.D. Ga. 2005) (arbitration clause not triggered

absent a "discrete dispute between the parties that could be argued to control the scope of

discovery").

61.     CohnReznick relies upon *In re Daisytek, Inc.*, 323 B.R. 180 (N.D. Tex. 2005), but

courts that have subsequently considered *Daisytek* have rejected its analysis. *See Millennium Lab*

*Holdings II*, 562 B.R. at 631 ("[T]he Court will not speculate as to what causes of action the

Trustee may unearth through the Rule 2004 investigations, and therefore the reasoning in

*Daisytek* is not compelling."); *Friedman's*, 356 B.R. at 784 (*Daisytek* relied upon cases in which

"the parties were contesting identified and specific causes of action," rather than cases in which

potential claims were being investigated); *New Century TRS Holdings*, 407 B.R. at 571

(following *Friedman's*). This Court should do the same.

62.     As explained in *Friedman's*, to follow *Daisytek* in circumstances where the debtor

does not yet know the full extent of any claims it may have and has not identified a specific

cause of action that is the source of its Rule 2004 examination "would defeat a fundamental

purpose of Rule 2004, which is to grant debtors like Friedman's a broad power to determine

18

what causes of action they may possess." 356 B.R. at 784. Prospectively shutting down that investigation "would be fundamentally at odds with bankruptcy policy and severely damage the interest of unsecured creditors." *Id.*

63.      Because CohnReznick and the Funds are not parties to an arbitration proceeding, CohnReznick cannot complain that the Foreign Representatives are circumventing any rights CohnReznick may have under the arbitration clauses. *In re Millennium Global,* 471 B.R. at 347. *See also In re J & R Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010) (typical discovery takes place "in the context of some type of dispute . . . and the scope of the inquiry is limited to issues which are relevant to that dispute," while a Rule 2004 examination "not only does not require the existence of litigation to justify the inquiry, but, such a dispute prevents recourse to it").

64.      *Daisytek* also is distinguishable from this case insofar as the arbitration clauses at issue in *Daisytek* expressly precluded discovery unless "authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery." 323 B.R. at 186. Ernst & Young argued that a Rule 2004 examination would "invalidate[] its right to arbitrate the Trustee's professional malpractice claim with restricted discovery approved by the arbitrators." *Id.* Here, not only has no claim been asserted against CohnReznick, but the arbitration provisions in the engagement letters contain no similar restriction.

### C.      The Recognition Order Was Properly Granted

65.      CohnReznick argues that the Foreign Representatives should not have been granted chapter 15 recognition because they allegedly made no attempt to establish that the International Fund had a domicile, place of business, or property in the United States, as required

by 11 U.S.C. § 109(a) and *In re Barnet*, 737 F.3d 238 (2d Cir. 2013). *Stroock Ltr.* at 2; *Gordon Decl.* Ex. 2, Gen. Obj. 2. The factual premise for this objection is baseless.

66.    The Foreign Representatives' petition for recognition was supported by the Declaration of Christopher Barnett Kennedy, which established that the International Fund had a "small balance of cash" located in the United States (in New York in particular) at the time of the petition. *Kennedy Decl.* ¶ 49. [ECF Doc. 2].[10] Because the petition included evidence that the Fund had property in the United States in the form of a cash balance, the requirements of section 109(a) were satisfied. *In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) ("there is no statutory requirement as to the property's minimum value"); *see also In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014); *In re McTague*, 198 B.R. 428, 431 (Bankr. W.D.N.Y. 1996).

67.    CohnReznick nevertheless asserts that the cash balance in New York "may be insignificant or merely an improper effort to establish eligibility under section 109(a)." *Stroock Ltr.* at 2. But as this Court observed in *Octaviar*, the Second Circuit in *Barnet* emphasized that the Court "must abide by the plain meaning of the words in the statute," and section 109(a) "says, simply that the debtor must have property; it says nothing about the amount of such property nor does it direct that there be any inquiry into the circumstances surrounding the debtor's acquisition of the property, and is thus consistent with other provisions of the Code that reject lengthy and contentious examination of the grounds for a bankruptcy filing." *In re Octaviar Admin. Pty Ltd*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014).

68.    *In re Head*, 223 B.R. 648 (Bankr. W.D.N.Y. 1998), on which CohnReznick relies, is not to the contrary. In *Head*, the court was dealing with chapter 11 and 13 petitions filed in bad

---

[10]    The "small balance of cash" refers to $25,000 held in the trust account of Holland & Knight LLP, which at the time represented the International Fund's liquidators. *See* Declaration of Christopher Barnett Kennedy Regarding Cayman Liquidations, ¶ 5.

faith by Canadian debtors who were attempting to avoid contractual liability to a creditor in
London. *See In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 13 (Bankr. S.D.N.Y.
2003). In finding that the debtors lacked property in the United States, the court relied upon
"eligibility" as "defined by 11 U.S.C. § 109 *and interpreted by this Court's decision in*
[*McTague*]." *In re Head*, 223 B.R. at 651 (emphasis added).

69.      In *McTague*, however, the court held, as did this Court in *Octaviar*, that the plain
language of section 109 did not permit inquiry into either the quantity of property in the United
States, or the circumstances surrounding how the property ended up here. *In re McTague*, 198
B.R. at 432. While placing property in the United States for the sole purpose of creating
eligibility might warrant (but not require) dismissal under some other provision of the
Bankruptcy Code (such as section 305), it did not warrant dismissal under section 109. *Id.*

70.      Section 305 is not applicable in a case under chapter 15. *See In re British Am. Ins.
Co.*, 488 B.R. 205, 239–40 (Bankr. S.D. Fla. 2013) (citing 11 U.S.C. § 103(a)). Indeed, "[t]here
is no provision in federal law allowing a federal court to abstain from an entire chapter 15 case."
*Id.* Thus, CohnReznick's entirely unsupported suggestion that the Fund's ownership of cash in
New York may reflect "an improper effort to establish eligibility under section 109(a)" is
irrelevant.

71.      In all events, the Kennedy Declaration further established that the International
Fund was managed by Platinum Management, which was headquartered in New York. *See
Kennedy Decl.* ¶ 9 and *International Fund Winding-Up Petition* (**"Int'l Fund Pet."**) ¶¶ 7–8,
attached as Ex. A to Kennedy Decl. [ECF Doc. 2-1, at 19 of 66] ("[T]he Fund carries out its
business as an investment fund, through the Investment Manager and the Investment Manger's
offices, located in New York, U.S.A."). The Kennedy Declaration also established that

21

administrative functions on behalf of the Funds were performed by SS&C Technologies, Inc. *See Int'l Fund Pet.* ¶ 9.

72.     Although not specifically mentioned in the Kennedy Declaration, books and records concerning management of the Fund were located in the United States, including fund administration and accounting records kept by SS&C in Connecticut, and books and records maintained by Platinum Management, *see, e.g.*, Gordon Exs. 4–7 (correspondence seeking books and records from SS&C and Platinum Management); *Gordon Decl.* Ex. 8 (Stipulation and [Proposed] Order, *SEC v. Platinum Management*, Civ. No 16-06848 (E.D.N.Y.), at 3) (concerning Cayman Liquidators' "access to the Platinum ESI that belongs to the respective entities under their supervision").

73.     Insofar as original business records constitute "property of the estate for the purposes of section 109," *In re Paper I Partners, L.P.*, 283 B.R. at 674; *see also In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 37–38 (Bankr. D. Del. 2000), the Fund had property in the United States in addition to cash. In sum, the requirements of section 109 were satisfied and the petition for recognition was properly granted.

### D.      The Subpoena is Neither Overbroad nor Unduly Burdensome

74.      CohnReznick's boilerplate objections that the Subpoena is overly broad and unduly burdensome require little response. As CohnReznick acknowledged by omission in its January 2, 2018 letter to the Court, these are not among its "principal objections" to the Subpoena. *See Stroock Ltr.* at 1. Although the objections were discussed in the Foreign Representatives' letter to the Court, they are not even mentioned in CohnReznick's response.

75.     And for good reason. CohnReznick was engaged to provide audit services to the Funds for only two years (years ending December 31, 2014 and 2015). Documents related to the

engagement should be relatively limited. The Subpoena is limited to the engagement and is neither overly broad nor unduly burdensome.

## CONCLUSION

For the foregoing reasons, the Foreign Representatives respectfully submit that CohnReznick's objections should be overruled and the Court should grant the Foreign Representatives' motion to compel compliance with the Subpoena.

**LEWIS BAACH KAUFFMAN**
**MIDDLEMISS PLLC**

By:____/s/_____
        Jack B. Gordon
        Bruce R. Grace
        1899 Pennsylvania Ave., NW, Suite 600
        Washington, DC 20006
        (202) 833-8900

*Attorneys for the Foreign Representatives*

Dated:  January 25, 2018