**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
| PLATINUM PARTNERS VALUE | : | Case No. 16-12925 (SCC) |
| ARBITRAGE FUND L.P. (IN OFFICIAL | : |  |
| LIQUIDATION), et al. | : | (Jointly Administered) |
|  | : |  |
| Debtors in Foreign Proceedings | : | **REDACTED VERSION –** |

-----------------------------------------------------------------x     **PENDING MOTION TO SEAL**

 

 

### MEMORANDUM OF LAW IN OPPOSITION TO THE FOREIGN REPRESENTATIVES' MOTION FOR AN ORDER COMPELLING COHNREZNICK LLP TO COMPLY WITH SUBPOENA FOR PRODUCTION OF DOCUMENTS

 

 

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038-4982
(212) 806-5400

*Attorneys for CohnReznick LLP*

 

 

Of Counsel:

James L. Bernard
David M. Cheifetz

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT BACKGROUND ..........................................................................................3

    A.    CohnReznick's Engagement to Audit the Funds ........................................3

    B.    Voluntary Production of Documents ..........................................................4

    C.    The Subpoena ..............................................................................................4

    D.    Efforts to Meet and Confer ........................................................................5

ARGUMENT ......................................................................................................................5

    I.    The Subpoena is an Improper Effort to Obtain Documents From CohnReznick That the Liquidators are Precluded From Obtaining in the Cayman Proceedings ................................................................................5

    II.    The Subpoena Impermissibly Seeks Pre-Suit Discovery to Investigate Potential Claims Against CohnReznick in Contravention of Valid and Binding Arbitration Provisions in the Funds' Engagement Letters With CohnReznick ...............................................................................13

    III.    Neither Rule 2004 Nor Section 542(e) Provides a Basis to Disregard Cayman Law or the Contractual Arbitration Provisions ...................................20

        A.    Even if Rule 2004 Applied to Chapter 15 Cases, it Does Not Supersede Section 1521 ................................................................20

        B.    Even if Section 542(e) Applied to Chapter 15 Cases, it Does Not Call For a Different Outcome ...................................................22

    IV.    Even if the Subpoena is Proper, it Should be Substantially Narrowed .............22

    V.    CohnReznick Does Not Press its Objection to the Subpoena on the Basis That the International Fund Did Not Meet the Requirements of Section 109(a) ...............................................................................................24

CONCLUSION ...................................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AJW Offshore Ltd.*,
488 B.R. 551 (Bankr. E.D.N.Y. 2013)....................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................17

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011).........................................................................................13

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009)..................................................................22

*In re Barnet*,
737 F.3d 238 (2d Cir. 2013)...........................................................................10, 21

*In re Bd. of Dirs. of Hopewell*,
258 B.R. 580 (Bankr. S.D.N.Y. 2001)........................................................ *passim*

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006).......................................................................................14, 16

*In re Catalyst Managerial Services, DMCC*,
680 Fed. App'x. 37 (2d Cir. 2017).......................................................................11

*In re China Medical Tech.*,
539 B.R. 643 (S.D.N.Y. 2015)..............................................................................21

*In re CIS Corp.*,
123 B.R. 488 (S.D.N.Y. 1991)..............................................................................24

*Comsat Corp. v. National Science Foundation*,
190 F.3d 269 (4th Cir. 1999) ...............................................................................19

*In re Condor Ins. Ltd.*,
601 F.3d 319 (5th Cir. 2010) ............................................................................6, 9

*In re Crysen/Montenay Energy Co.*,
226 F.3d 160 (2d Cir. 2000)..................................................................................14

*In re Daisytek, Inc.*,
323 B.R. 180 (N.D. Tex. 2005)................................................................... *passim*

*In re Friedman's, Inc.*,
    356 B.R. 779 (Bankr. S.D. Ga. 2005) .................................................................16, 17, 18, 19

*In re Glitnir banki hf.*,
    No. 08-14757, 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) .............................20, 21

*Golden v. O'Melveny & Myers LLP*,
    No. 14-cv-08725, 2017 WL 5178721 (C.D. Cal. Nov. 6, 2017) ...........................................22

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989)....................................................................................13, 14, 18

*In re Hughes*,
    281 B.R. 224 (Bankr. S.D.N.Y. 2002)..................................................................10, 11, 12

*Intel Corp. v. Advanced Micro Devices*,
    542 U.S. 241 (2004)...............................................................................................6, 7, 10, 11

*In re J.T. Moran Fin. Corp.*,
    118 B.R. 233 (Bankr. S.D.N.Y. 1990) .................................................................................13

*In re Lawson Burich Assoc.*,
    59 B.R. 681 (Bankr. S.D.N.Y. 1986) ...................................................................................21

*In re Lee*,
    472 B.R. 156 (Bankr. D. Mass. 2012) .................................................................................22

*MBNA Am. Bank, N.A. v. Hill*,
    436 F.3d 104 (2d Cir. 2006)..........................................................................................14, 20

*McIntire v. China MediaExpress Holdings, Inc.*,
    252 F.Supp.3d 328 (S.D.N.Y. 2017)....................................................................................19

*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997)...................................................................................................11

*In re Millennium Global Emerging Credit Master Fund Limited*,
    471 B.R. 342 (Bankr. S.D.N.Y. 2012) ...........................................................................21, 22

*In re Millennium Lab Holdings II, LLC*,
    562 B.R. 614 (Bankr. D. Del. 2016) ...............................................................................16, 19

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
    473 U.S. 614 (1985)..........................................................................................................14, 17

*National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*,
    165 F.3d 184 (2d Cir. 1999)..................................................................................................19

*In re New Century TRS Holdings, Inc.*,
    407 B.R. 558 (Bankr. D. Del. 2009) .................................................16

*Oriental Commercial & Shipping Co. v. Rosseel*, *N.V.*,
    125 F.R.D. 398 (S.D.N.Y. 1989) .....................................................20

*In re Petroforte Brasiliero de Petroleo Ltda.*,
    542 B.R. 899 (Bankr. S.D. Fla. 2015).............................................21

*In re Pro-Fit Holdings Ltd.*,
    391 B.R. 850 (Bankr. C.D. Cal. 2008).............................................21

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989) .........................................................................14

*Shearson/American Express v. McMahon*,
    482 U.S. 220 (1987)...................................................................13, 14

*SNP Boat Service S.A. v. Hotel Le St. James*,
    483 B.R. 776 (S.D. Fla. 2012) ........................................................12

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)...................................................................13, 16

## Statutes

11 U.S.C. § 304(c) (repealed 2005) ........................................................9

11 U.S.C. § 542(e) .................................................................................20

11 U.S.C. § 1501(a)(3).............................................................................8

11 U.S.C. § 1507....................................................................................21

11 U.S.C. § 1521 ............................................................................*passim*

11 U.S.C. § 1522(a) .......................................................................8, 19, 23

28 U.S.C. § 1782.........................................................................10, 11, 21

## Other Authorities

Black's Law Dictionary (10th ed. 2014)................................................17

Collier on Bankruptcy P 2004.01 (16th ed. 2017) ................................20

Fed. Bankr. R. P. 2004 ....................................................................*passim*

Fed. Bankr. R. P. 9016.............................................................................6

Fed. R. Civ. P. 8(a)(2)............................................................................................17

Fed. R. Civ. P. 44.1.................................................................................................6

Fed. R. Civ. P. 45....................................................................................................4

H.R. REP. NO. 109-31 (2005), 2005 WL 832198.......................................................9

## PRELIMINARY STATEMENT

CohnReznick – one of the former auditors of the Funds whose Cayman Liquidators commenced these chapter 15 proceedings – has already produced numerous documents to the Liquidators.[1] While CohnReznick has been more than reasonable, the Liquidators insist that chapter 15 allows them to conduct a broad fishing expedition into CohnReznick's own audit workpapers. But chapter 15 discovery is limited to what is "necessary" and "appropriate." And the discovery sought here is neither. The Liquidators' motion to compel should be denied.

*First*, the relevant provisions of the Cayman Companies Law that allow both domestic and foreign liquidators to obtain documents in connection with Cayman insolvency proceedings do not permit the Liquidators to obtain CohnReznick's workpapers. So rather than ask the court overseeing the Cayman Proceedings, the Liquidators ask *this* Court to help them obtain the documents. The Liquidators try to justify their extraordinary request in the name of comity and cooperation. But ignoring the very law that applies to the Cayman Proceedings, in aid of which this chapter 15 case was commenced, would turn the notion of comity on its head. Indeed, if the roles were reversed, Cayman courts would reject the very tactics being used here by the Liquidators because foreign representatives may not avail themselves of broader discovery rights in the Cayman Islands than they would otherwise have in their home forum.

*Second*, the Liquidators are also trying to dodge the Funds' pre-insolvency contractual obligations to CohnReznick, to which the Liquidators are indisputably bound. The relevant

---

[1] Capitalized terms used herein have the same meaning as in the Memorandum of Law in Support of the Foreign Representatives' Motion to Compel (cited below as "Mem. __") and the Joinder in Support (cited below as "Joinder __"). We refer to Platinum Partners Value Arbitrage Fund (International) Limited as the "International Fund," Platinum Partners Value Arbitrage Intermediate Fund Ltd. as the "Intermediate Fund," and Platinum Partners Value Arbitrage Fund L.P. as the "Master Fund." We also refer to the Platinum funds and their liquidators collectively as the "Funds" and the "Liquidators."

engagement letters make clear that any potential claims that the Liquidators may want to bring against CohnReznick are subject to mandatory arbitration and related discovery limitations. The only federal district court to have considered whether a pre-insolvency arbitration agreement supersedes bankruptcy-related discovery to investigate potential claims held that, if the potential claims would be subject to arbitration, discovery should be within the discretion of arbitrators not judges. The Liquidators nevertheless assert that any reliance on the arbitration agreements is premature because the Liquidators have not yet commenced a proceeding against CohnReznick. But the broad arbitration provisions apply to any "disputes," "controversies," or "claims," not just to full-fledged litigation. And while the Liquidators protest that adhering to the provisions would contravene important bankruptcy goals, they disregard the equally strong federal policy in favor of arbitration. In fact, chapter 15 requires the Court to protect CohnReznick's contractual arbitration rights, not to abrogate them.

*Third*, even if the Subpoena is enforceable, it should be substantially narrowed. In a good faith effort to assist the Liquidators, CohnReznick voluntarily provided them with nearly one gigabite of data to which they arguably were entitled under Cayman law and pursuant to the relevant engagement letters. Yet the Liquidators are not willing to compromise one bit.

In sum, the Liquidators' motion to compel should be denied because granting the relief sought therein would be contrary to the law of the very court to which this Court is being asked to provide assistance and would contravene a valid and enforceable arbitration agreement.[2]

---

[2] To avoid further dispute over the issue, CohnReznick will not at this time press its objection that the Subpoena is *void ab initio* on the basis that the International Fund did not properly satisfy section 109(a) at the time of filing its petition for recognition. In light of certain comments made by the Liquidators, however, we briefly address this objection below. *See infra* Point V. In any event, CohnReznick's remaining objections are independently sufficient to deny the Liquidators' motion to compel.

## RELEVANT BACKGROUND

### A.  CohnReznick's Engagement to Audit the Funds

CohnReznick is a limited liability partnership engaged in the provision of accounting,

assurance, tax, and business advisory services. CohnReznick (Cayman) Certified Public

Accountants ("CohnReznick Cayman") is an affiliate of CohnReznick located in the Cayman

Islands. The Funds engaged CohnReznick and CohnReznick Cayman to audit the Funds'

financial statements for the years ending December 31, 2014 and December 31, 2015. The

engagement letters are attached as Exhibits 1-4 to the accompanying Declaration of David M.

Cheifetz ("Cheifetz Decl."). The engagement letters provided, in relevant part, that:

> Any dispute, controversy, or claim arising out of or relating to the
> services or the performance or breach of the Agreements
> (including disputes regarding the validity or enforceability of this
> Agreement) or in any prior services or agreements between the
> parties shall be finally resolved by arbitration in accordance with
> the International Institute for Conflict Prevention and Resolution
> ("IICPR") Rules for Non-Administered Arbitrations by a panel of
> three arbitrators, one chosen by each party, and the third selected
> by the two party-selected arbitrators. The arbitration shall be
> governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.
>
> . . .
>
> Such arbitration shall be binding and final. In agreeing to
> arbitration, the parties acknowledge that in the event of any dispute
> (including a dispute over fees) the parties are giving up the right to
> have the dispute decided in a court of law before a judge or jury
> and instead the parties are accepting the use of arbitration for
> resolution.

Cheifetz Decl., Exs. 1-4 (General Terms and Conditions, "Dispute Resolution").

On September 16, 2015, CohnReznick issued audit opinions on the Funds' financial

statements for the year ending December 31, 2014. CohnReznick terminated its engagement with

the Funds prior to completing an audit or issuing an audit opinion for the Funds' financial

statements for the year ending December 31, 2015.

### B. Voluntary Production of Documents

On May 25, 2017, in response to informal requests under Cayman law from the

Liquidators for the International Fund and Intermediate Fund, and while reserving its right to

object to further requests, CohnReznick voluntarily provided documents pertaining to the

offshore feeder funds, other than its own audit workpapers. Cheifetz Decl., Ex. 5. On August 18,

2017, in response to a similar request from the Liquidators for the Master Fund, CohnReznick

made another voluntary production of documents, which CohnReznick still had in its possession

pertaining to the Master Fund, but which did not reflect CohnReznick's own work product or

analysis. Cheifetz Decl., Ex. 6. In total, CohnReznick provided the Liquidators with almost a

thousand electronic files pertaining to the Funds amounting to ***nearly 1 gigabite of data***. Apart

from a brief email acknowledgment from the Liquidator for the Master Fund thanking

CohnReznick for its cooperation, CohnReznick did not hear further from the Liquidators until

receiving the instant Subpoena on or about August 31, 2017. Cheifetz Decl., Ex. 7.

### C. The Subpoena

On or about August 31, 2017, CohnReznick received a letter from the law firm Morgan

Lewis, prior counsel to the International Fund, enclosing the Rule 45 Subpoena (the "Subpoena

Cover Letter"). Cheifetz Decl., Ex. 8. The Subpoena sought documents both from CohnReznick

and CohnReznick Cayman. No prior notice of the Subpoena was given nor was any notice filed

on the docket prior to issuing the Subpoena as is required by Rule 45(a)(4). Nor was any prior

motion made to the Court requesting authority to issue the Subpoena. The Master Fund

Liquidators did not file their own Subpoena. Rather, the Subpoena Cover Letter indicated that

-4-

they consented to the issuance of the Subpoena by the International Fund. The Subpoena broadly

seeks production of all of CohnReznick's workpapers, related emails, and a variety of other

documents, without regard to whether those documents reflect CohnReznick's own work or

internal communications. *See, e.g.,* Cheifetz Decl., Ex. 8 at Request No. 1 ("All documents and

communications concerning your engagement to perform and/or your performance of auditing,

accounting, or other services for, on behalf of, or in relation to any Fund").

### D.  Efforts to Meet and Confer

On October 4, 2017, two days after timely serving our responses and objections to the

Subpoena, we engaged in a productive meet and confer session with Morgan Lewis. Counsel was

not aware of CohnReznick's prior cooperation with the Liquidators' informal requests for

documents and agreed to get back to us regarding our objections and to make an effort to narrow

the scope of the Subpoena. But we never heard back. On November 14, 2017, we received an

email from Mr. Gordon informing us that his firm is now representing the Liquidators for the

International Fund. We engaged in courteous meet and confer sessions, but unlike the

representations we received from prior counsel, Mr. Gordon informed us that his clients were not

willing to narrow their requests or compromise on them in any significant way. In light of that

position, we informed Mr. Gordon that we stood by our objections.

### ARGUMENT

**I.    The Subpoena is an Improper Effort to Obtain Documents From CohnReznick That
the Liquidators are Precluded From Obtaining in the Cayman Proceedings**

Although CohnReznick already voluntarily produced a significant volume of documents

to which the Liquidators may be entitled under Cayman law, the Liquidators now seek this

Court's assistance in obtaining additional documents from CohnReznick. But even though

CohnReznick Cayman has access to the same workpapers that the Liquidators requested in the

Subpoena, they have not tried to obtain the Cayman court's assistance. *See Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264 (2004) (noting that the need for discovery in aid of a foreign proceeding is generally not as apparent when a foreign tribunal can obtain jurisdiction over evidence).[3] As more fully set forth in the accompanying declaration of Rachael Reynolds ("Reynolds Decl."), under Cayman law, insolvency representatives may not obtain audit workpapers or materials that are not the debtor's property. *See* Reynolds Decl. ¶¶ 13-28. Moreover, Cayman courts would ***reject*** a foreign liquidator's attempt to obtain discovery in the Caymans that would be unavailable to her under the law of her home forum, which is ***exactly*** what the Liquidators are trying to do here in the U.S. *See id.* ¶¶ 29-36.[4]

The Liquidators say all of this is "irrelevant." Mem. ¶ 50. Far from it. The Liquidators commenced their U.S. chapter 15 proceedings to recognize and aid their Cayman Proceedings. While chapter 15 may assist a foreign representative by ***applying*** foreign law in the U.S., it is not supposed to enlarge her powers beyond the limits of that foreign law. *See In re Condor Ins. Ltd.*, 601 F.3d 319, 326-27 (5th Cir. 2010). Allowing a Cayman liquidator to obtain documents in the U.S. that she cannot obtain in the Caymans, especially where the Cayman courts would not do so for U.S. liquidators in analogous circumstances, would be a perversion of the comity concerns that underlie chapter 15 and would just invite forum shopping.

Rather than dispute Cayman law, the Liquidators argue that our objections based upon Cayman law "simply find no support in the plain language of the applicable statute – here 11

---

[3] In contrast, the Liquidators previously reported that ██████████████████████████████████████████████████████████████████████████████ Cheifetz Decl., Ex. 9 at ¶¶ 3.17 n. 1, 3.22.

[4] In determining foreign law, the Court properly may consider the declaration and exhibits attached thereto. Fed. Bankr. R. P. 9016 (incorporating Fed. R. Civ. P. 44.1).

U.S.C. § 1521." Mem. ¶ 45. This is just wrong. Contrary to the Liquidators' contention, section

1521 expressly permits this Court to exercise discretion when considering whether to order

discovery. 11 U.S.C. § 1521(a) ("Upon recognition of a foreign proceeding, whether main or

nonmain, where ***necessary to effectuate the purpose of this chapter*** and to protect the assets of

the debtor or the interests of the creditors, the court ***may***, at the request of the foreign

representative, grant any ***appropriate relief***") (emphasis added); *see also In re SPhinX Ltd. et al.*,

No. 06-11760 (RDD) (*Order Denying Ex Parte Motion of the Foreign Representatives for . . . an*

*Order Compelling the Production of Documents and Examination of Witnesses Pursuant to §*

*1521 of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure*,

dated May 14, 2007) (Cheifetz Decl., Ex. 10) (noting that the plain text of section 1521 "suggests

that the Court should use some degree of discretion, rather than blindly turning to the broad

fishing expedition provided for in Bankruptcy Rule 2004").[5]

The relief sought by the Liquidators is neither necessary nor appropriate. It is not

necessary for three reasons. First, the Liquidators have not even attempted to ask the Cayman

courts for assistance with obtaining the desired information from CohnReznick Cayman. We do

not suggest that there is some absolute rule that they must do so. But where there is a possibility

that doing so could moot the relief being sought here (if we are wrong about Cayman law), it

would be a reasonable step to take and is a factor that this Court should consider in determining

whether it is "necessary" to grant relief to the Liquidators. *See Intel*, 542 U.S. at 264 ("a foreign

tribunal has jurisdiction over those appearing before it, and can itself order them to produce

evidence"); *In re Bd. of Dirs. of Hopewell*, 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001) (denying

---

[5] As discussed below, Rule 2004 is inapplicable here, but in any case it would not provide an independent
source of power to order disclosure beyond the confines of § 1521(a)(4). *See infra* Point III(A).

-7-

motion for discovery in former section 304 proceeding in part because foreign representative had

not yet sought out the assistance of the foreign court).

Second, the Liquidators argue that because CohnReznick was only engaged to audit the

Funds' 2014 and 2015 financial statements, "documents related to the engagement should be

relatively limited." Mem. ¶¶ 9, 75. Putting aside for a moment whether this fairly characterizes

the burden on CohnReznick, *see infra* Point IV, in contrast, the Liquidators say ███████

████████████████████████████████████████████████████████████████████

██████ Cheifetz Decl., Ex. 9 at ¶ 3.19. In fact, CohnReznick has already turned over to the

Liquidators around one gigabite of other non-workpapers in response to their informal requests

for documents and there has been no showing or suggestion at all that the Liquidators are

missing any records that the Funds may have transmitted to CohnReznick for its audits.

Third, section 1521 provides that the relief sought must be necessary ***to effectuate the***

***purpose of this chapter***. 11 U.S.C. § 1521(a) (emphasis added). But the "purpose" of chapter 15

is not just to aid the Liquidators, it is to provide for "fair and efficient administration of cross-

border insolvencies that protects the interests of all creditors, ***and other interested entities*** . . ."

11 U.S.C. § 1501(a)(3) (emphasis added). Indeed, the Court may only grant the relief sought

under section 1521 if "the interests of the creditors and ***other interested entities***, including the

debtor, are ***sufficiently protected***"). 11 U.S.C. § 1522(a) (emphasis added). Providing an open

door for the Liquidators to obtain all of CohnReznick's workpapers (and more), where the

Liquidators have not even tried to obtain the documents in their home forum and where they are

targeting claims against CohnReznick that would be subject to a binding arbitration agreement,

*see infra* Point II, does not sufficiently protect the interests of CohnReznick.[6]

---

[6] Likewise, under former section 304, in determining whether to grant relief, the courts were "guided by

Assuming (as we assert) that Cayman law precludes discovery of the material sought by the Subpoena, then granting the Liquidators the relief they seek would not be an "appropriate" exercise of discretion under section 1521. 11 U.S.C. § 1521(a). In *Hopewell*, the debtor sought broad discovery in the United States under section 304 that would assist it in a foreign arbitration proceeding between the debtor and the target of discovery. *See id.*, 258 B.R. at 582. The court denied the motion. *Id.* at 587. It held that courts should be "guided in providing discovery by applicable foreign law, a principle at the core of 304" and that in an ancillary proceeding to seek discovery in the U.S., where the law of the foreign jurisdiction would not permit the discovery the foreign representative was seeking, the U.S. court should "defer to foreign law." *Id.* at 584, 586 ("To the extent this Court can act under § 304 as an 'adjunct' to the foreign court, it should rarely, if ever, exercise its discretion to order disclosure that would not be available in the foreign court"). To be sure, the debtor in *Hopewell* sought the court's assistance to obtain discovery in connection with a pending arbitration proceeding in Bermuda, but that only further supports CohnReznick's argument here that discovery would be inappropriate in light of the relevant arbitration agreements. *See id.* at 585 (noting that discovery relief sought by debtor would be "particularly inappropriate as it involves an arbitration which is supposed to take place with a minimum of court supervision or interference"); *see also infra* Point II.

The Liquidators protest that we "invok[e] an entirely different statute, 28 U.S.C. § 1782" in further support of our arguments. Mem. ¶ 42. That protest rings hollow. As an initial matter, it was the Liquidators who relied upon this very statute in their letter to the Court [Dkt. 50]

---

just treatment of all holders of claims against or interests in [the] estate." 11 U.S.C. § 304(c) (repealed 2005). *See Hopewell*, 258 B.R. at 585. Chapter 15 courts may still use case law interpreting former 304 in interpreting current chapter 15 issues. *See* H.R. REP. NO. 109-31, at 145 (2005), 2005 WL 832198; *In re Condor*, 601 F.3d at 328.

requesting a pre-motion conference. And for good reason: seeking discovery in aid of a foreign proceeding under section 1782 is analogous to seeking discovery assistance from a U.S. court pursuant to section 1521. The Liquidators try to discredit their own analogy by arguing that "the scope of the Court's discretion with respect to an application for discovery under chapter 15 is guided by the purposes and relevant provisions of the Bankruptcy Code and Bankruptcy Rules, not by the discretionary factors which may be applicable to an application under 28 U.S.C. § 1782." Mem. ¶ 44. Not so. Several courts have read the discovery provisions in section 1521 (or former section 304) in concert with section 1782. *See In re Barnet*, 737 F.3d 238, 251 (2d Cir. 2013) (explaining that, in light of section 1782, Congress "may have intended to limit the relief provided by chapter 15"); *In re Hughes*, 281 B.R. 224, 230 (Bankr. S.D.N.Y. 2002) (noting that "when determining the scope of discovery permissible in a 304 proceeding, section 304 should be read together with [§ 1782]"); *Hopewell*, 258 B.R. at 586 (noting that "§ 1782 provides a further reason not to distort § 304 and use it as a discovery tool in aid of arbitration").

In *Intel*, the Supreme Court held that there is no categorical foreign-discoverability rule under section 1782. *See id.*, 542 U.S. at 259-62. But *Intel* made clear that whether discovery would be unavailable in the foreign proceeding is a factor that "bear[s] consideration." *Id.* at 264-65 (explaining that "a district court could consider whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions"). *Intel* also explained that "comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases." *Id.* at 261. Applying those guideposts here makes sense. Just as a court may consider these various discretionary factors under section 1782, the Court should consider them under section 1521. It would not appropriately advance the interests of comity and parity, or be fair to the interests of CohnReznick, to grant the Liquidators' request where (i) the Liquidators

-10-

have not even attempted to obtain the discovery in the Cayman Islands, (ii) Cayman law restricts

discovery of audit workpapers, and (iii) Cayman law rejects efforts of foreign liquidators to

obtain broader discovery than they can obtain in their home forum.[7]

The Liquidators rely on *In re Hughes*, which denied an auditor's motion to quash a Rule

2004 deposition subpoena after finding that discovery available to foreign liquidators under

section 304 is not limited to what might be available in the foreign proceeding. *See id.*, 281 B.R.

at 227. But, whereas *Intel* now instructs that foreign law **is** a relevant consideration to a request

for discovery in aid of a foreign proceeding, *Hughes* predates *Intel* and therefore based its

contrary conclusion on pre-*Intel* jurisprudence. *See id.* at 230. Moreover, although it believed

that it was "not required" to do so, the *Hughes* court **did** consider "whether, under the

circumstances presented, the Bermuda Court would grant the discovery sought by the Joint

Liquidators." *Id*. In fact, the court in *Hughes* found that the "discovery sought . . . [was] clearly

within the powers entrusted to the Joint Liquidators by the Bermuda Court . . ." *Id.* at 229. Those

powers explicitly included the "power to . . . see, review, secure, take possession of and copy any

books, papers, writings, documents, and records relating to the accounts and audits of the

Company's accounts that are located in the offices of its auditors . . ." *Id.* The court also gave

---

[7] Throughout their memorandum the Liquidators also repeatedly cite cases interpreting section 1782. The Liquidators cannot on the one hand rely on section 1782 jurisprudence and on the other disclaim any relevance it may have to the instant dispute. In any event, the cases cited by the Liquidators are fully consistent with the Supreme Court's holding in *Intel* that efforts to evade the discovery limitations under foreign law are a relevant factor when determining whether to provide discovery assistance in aid of a foreign proceeding. *See In re Catalyst Managerial Services, DMCC*, 680 Fed. App'x. 37, 40 (2d Cir. 2017) (noting that a "district court may not deny a § 1782 discovery request **solely** because the foreign court did not have an opportunity to consider it first") (emphasis added); *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (explaining that discovery may not be denied under section 1782 "**solely** because such discovery is unavailable in the foreign court" but noting that "foreign discoverability" is a "consideration") (emphasis added) (citing *In re Application of Gianoli*, 3 F.3d 54, 60 (2d Cir. 1993) (suggesting that courts "may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in the exercise of discretion under section 1782")).

-11-

"credence to the argument and persuasive authority contained in" a supporting declaration concerning foreign law. *Id.* at 230. Thus, unlike here, the court did not have to consider whether it would be appropriate to compel discovery that would be unavailable in a foreign court. *See id.*

Finally, the Liquidators also misplace their reliance on *SNP Boat Service S.A. v. Hotel Le St. James*, 483 B.R. 776 (S.D. Fla. 2012), citing it for the proposition that "an express restriction on the scope of discovery permitted in the forum of the foreign insolvency proceeding would not limit the relief ***available to*** a foreign representative under chapter 15." Mem. ¶ 48 (emphasis added). But *SNP* had nothing to do with a request for relief "available to" a foreign representative under section 1521(a)(4) (available only "at the request of the foreign representative"). In *SNP*, a ***creditor sought discovery relief from*** a French insolvency representative to establish that the creditor had not been afforded due process in the foreign insolvency proceedings. *See id.*, 483 B.R. at 779-80. The foreign representative, relying, in part, on a French blocking statute, resisted discovery. *See id.* The district court ultimately held that limited inquiry into the sufficiency of the French proceeding was warranted, despite the blocking statute, to determine whether the creditor's interests were protected in the French proceedings. *See id.* at 786-88. That holding, however, supports CohnReznick's position, not the Liquidators'. Permitting the foreign representative in *SNP* to use the sword of U.S. chapter 15 proceedings while maintaining the shield of the French blocking statute unfairly would have given the foreign representative preferred status in U.S. courts. *See id.* This is precisely the kind of tactical advantage that the Liquidators are trying to gain here by invoking what they perceive to be U.S. discovery laws that are more accommodating than their own laws.

In short, the Court respectfully should exercise its discretion to deny the Liquidators'

motion to compel because the Subpoena is an improper attempt to get documents from

CohnReznick that the Liquidators may not obtain in the Cayman Proceedings.

## II.    The Subpoena Impermissibly Seeks Pre-Suit Discovery to Investigate Potential Claims Against CohnReznick in Contravention of Valid and Binding Arbitration Provisions in the Funds' Engagement Letters With CohnReznick

The Liquidators' effort to obtain documents from CohnReznick also tries to shirk the

contractual limitations on discovery to which the Funds agreed at the time of the relevant

engagements with CohnReznick. The engagement agreements contained mandatory arbitration

provisions. Cheifetz Decl., Exs. 1-4. And there is no dispute that the Liquidators are bound by

the Funds' pre-insolvency contractual arbitration obligations. *See In re J.T. Moran Fin. Corp.*,

118 B.R. 233, 235 (Bankr. S.D.N.Y. 1990) (citing *Hays & Co. v. Merrill Lynch, Pierce, Fenner

& Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989)).[8] Yet the Liquidators say that the arbitration

provisions have "no bearing upon the scope of discovery available to [them] under chapter 15

since [they] are merely conducting an open-ended investigation and have not asserted any claims

against CohnReznick." Mem. ¶ 6. That argument is legally and factually wrong.

The United States Supreme Court has stressed repeatedly that the Federal Arbitration Act

requires courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express v.

McMahon*, 482 U.S. 220, 226 (1987); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct.

1740, 1748-49 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior

Univ.*, 489 U.S. 468, 478 (1989)) (explaining that it is "beyond dispute that the FAA was

---

[8] Cayman law is fully consistent with U.S. law on this point. *See* Reynolds Decl. ¶¶ 37-39. Moreover, under Cayman law, courts would disallow discovery for the improper purpose of providing liquidators with a strategic advantage over persons against whom they may seek to arbitrate. *See id.* ¶¶ 26-28.

designed to promote arbitration."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (describing the FAA as "embody[ing] [a] national policy favoring arbitration.").

Given this clear national policy favoring arbitration, courts have conceded that they "can no longer subscribe to a hierarchy of congressional concerns that places the bankruptcy law in a position of superiority over the [FAA]." *Hays*, 885 F.2d at 1161. Thus, courts routinely enforce arbitration agreements even when faced with competing concerns under the Bankruptcy Code, for example by dismissing or staying adversary proceedings that raise non-core state law claims derived from pre-petition conduct. *See id.* So strong is this policy that, in the Second Circuit, bankruptcy courts "generally ***do not*** have discretion to ***decline*** to stay ***non-core*** proceedings in favor of arbitration." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000) (emphasis in original); *see also MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 110 (2d Cir. 2006) (holding that ***even a core*** bankruptcy claim for violation of the automatic stay was arbitrable because it "would not necessarily jeopardize or inherently conflict with the Bankruptcy Code").[9]

Although no court in this Circuit has directly addressed whether discovery limitations of arbitration clauses may supersede bankruptcy discovery under section 1521, the district court in *In re Daisytek, Inc.*, 323 B.R. 180, 186-88 (N.D. Tex. 2005) concluded that bankruptcy discovery, even under Rule 2004, ***can*** be superseded by an arbitration clause. We respectfully

---

[9] Underscoring the vital importance of arbitration, courts have also enforced contractual arbitration provisions, pursuant to the FAA, despite numerous other important federal statutes and policies. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 486 (1989) (enforcing pre-dispute agreement to arbitrate claims under the Securities Act of 1933 and ruling arbitration would not produce substantial inequitable results or undermine substantive rights under the Securities Act); *McMahon*, 482 U.S. at 242 (enforcing arbitration agreement between broker and customer in customer's RICO action against broker); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624-27 (1985) (holding that antitrust claims arising out of an international commercial transaction were arbitrable despite fact that they were not specifically mentioned in arbitration clause).

-14-

submit that the facts of *Daisytek* are indistinguishable, and its reasoning is both persuasive and fully consistent with this Circuit's law mandating enforcement of arbitration agreements.

The court in *Daisytek* vacated a bankruptcy court order allowing a creditors' trust to conduct a Rule 2004 examination of the debtor's former accountants. *See id.*, 323 B.R. at 188. As here, the accountants argued that a mandatory arbitration clause in the relevant engagement letters prevented discovery. *See id.* at 185-86.[10] The district court determined that it must look to the underlying proceeding to determine whether a matter in a bankruptcy must be submitted to arbitration. *See id.* "If the court determines that a proceeding does not derive exclusively from the Code, the court has no choice but to abstain and allow the parties to arbitrate the matter." *Id.* at 187. The *Daisytek* court rejected the premise, made by the Liquidators here, that the bankruptcy discovery was the proceeding at issue, deciding instead that the "proper focus is on the underlying nature of the proceedings that could flow from the information obtained through" the bankruptcy discovery process. *Id.* Ultimately, although the trustee had taken the position, like the Liquidators here, that it was not yet possible to know exactly what claims the trustee might bring as a result of his investigation, the district court instructed the bankruptcy court to determine the extent to which the discovery sought by the trustee could relate to the trustee's potential claim for pre-petition audit malpractice, in which case the bankruptcy court ***must*** give effect to the terms of the arbitration provisions in the engagement agreements. *See id.* at 184-85,

---

[10] Contrary to the Liquidators' contention, the arbitration provision in *Daisytek* is substantially similar to the provision here. Mem. ¶ 64. The arbitration clause in *Daisytek* precluded discovery unless "authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery." *See id.*, 323 B.R. at 186. Here as well, the arbitration provision incorporated by reference the rules of the International Institute for Conflict Prevention and Resolution, which provide that "[t]he Tribunal may require and facilitate such discovery as it shall determine is appropriate in the circumstances, taking into account the needs of the parties and the desirability of making discovery expeditious and cost-effective." Cheifetz Decl., Ex. 11 at Rule 11.

187-88. As in *Daisytek*, we respectfully submit that this Court should preclude any discovery that relates to the investigation of potential pre-petition state law claims against CohnReznick. *See id.*

The Liquidators urge this Court to reject the district court's reasoning in *Daisytek* and adopt the bankruptcy court's reasoning in *In re Friedman's, Inc.*, 356 B.R. 779, 783-85 (Bankr. S.D. Ga. 2005). But the court's reasoning in *Friedman's* is neither persuasive nor consistent with Second Circuit law. In *Friedman's*, the court faced a debtor's motion to compel discovery from its accountants over the accountants' objection that the discovery was precluded by a valid arbitration agreement with the debtor. *Id.* at 782. The court overruled the accountants' objection because "there is no identifiable, discrete dispute between the parties that could be argued to control the scope of discovery." *Id.* at 783. The court also found that "to follow *Daisytek* in these circumstances would defeat a fundamental purpose of Rule 2004, which is to grant debtors like Friedman's a broad power to determine what causes of action they may possess." *Id.* at 784.[11]

At the heart of the reasoning in *Friedman's*, adopted by the Liquidators here, are two basic flaws. First, the lack of an "identifiable" or "discrete" claim or dispute, or pending arbitration proceeding, does not preclude enforcement of an arbitration provision. Arbitration is a creature of contract. So what matters is what the parties intended to be covered by their arbitration agreement. *Buckeye*, 546 U.S. at 443; *Volt*, 489 U.S. at 478. The *Friedman's* court overlooked the fact that the relevant arbitration clause did not just cover "identifiable" or "discrete" disputes, but rather encompassed "any controversy or claim arising out of or relating

---

[11] The Liquidators also rely on *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614 (Bankr. D. Del. 2016) and *In re New Century TRS Holdings, Inc.*, 407 B.R. 558 (Bankr. D. Del. 2009), both of which based similar conclusions on the reasoning in *Friedman's*. We note that *In re New Century* is particularly distinguishable as it upheld a request from a court-appointed examiner merely to **transfer** documents that the auditor **already had produced** to a liquidating trustee and did not involve a request for production of any additional documents. *See id.*, 407 B.R. at 567-68, 571.

to the services" provided by the accountants. 356 B.R. at 782. Here too, the broad arbitration clause in the engagement agreements between CohnReznick and the Funds encompassed "any dispute, controversy or claim arising out of or relating to the services or the performance or breach of this Agreement." Cheifetz Decl., Exs. 1-4. Indeed, questions about the existence of such disputes, controversies, or claims must be decided "with a healthy regard for the federal policy favoring arbitration." *Mitsubishi*, 473 U.S. at 626. As in *Daisytek*, the language in the relevant arbitration clauses here is broad enough to encompass the current disputes, controversies, or claims between CohnReznick and the Liquidators. *See id.*, 323 B.R. at 188 n. 8 ("The bankruptcy court also questioned whether the arbitration clauses apply because there is no 'controversy or claim' . . . To the extent the court is suggesting that the clauses afford [the auditor] no protection from discovery before the initiation of formal arbitration proceedings, its interpretation appears to misread the clauses").[12]

To be sure, CohnReznick vehemently denies that it bears any responsibility whatsoever for any losses suffered by the Funds flowing from the Funds' alleged criminal scheme to defraud its auditors and investors. Nor have the Liquidators commenced any lawsuits against CohnReznick (other than this motion to compel). But the notion that the Liquidators are simply conducting an "open-ended" investigation is disingenuous. It is abundantly clear that the Liquidators have CohnReznick squarely in their sights. ██████████████████████████
██████████████████████████████████ Cheifetz Decl., Ex. 9 at ¶¶ 6.28, 8.4. ████
████████████████████████████████████████████████████████

---

[12] A "claim" does not mean only a cause of action asserted in a lawsuit. Nor does a claim require a party to know all facts necessary for him or her to decide whether he wants to pursue the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (noting that Fed. R. Civ. P. 8(a)(2) does not require detailed factual allegations). Furthermore, a "controversy" encompasses a mere "disagreement or dispute" and does not require the existence of a full-fledged justiciable claim. Black's Law Dictionary (10th ed. 2014).

 *See id.* at ¶ 7.7 (explaining that ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ ).

        To the extent the Liquidators wish to investigate potential claims against individuals or

entities **other than** CohnReznick, it is unnecessary for the Liquidators to obtain CohnReznick's

workpapers. Workpapers reflect CohnReznick's own work, professional judgment, and analysis

of the financial statements that the Funds, themselves, created. They are not merely records and

documents that may reflect financial information about the Funds or their transactions with

others. In fact, the Liquidators' insistence on obtaining CohnReznick's own audit workpapers

(which they contend are not especially voluminous) ██████████████████████████

██████████████ , Cheifetz Decl., Ex. 9 at ¶ 3.19, reveals their true purpose: to try to

find something CohnReznick did wrong to support a claim against it. *See id.* at ¶ 7.7 (noting

████████████████████████████████████████████████████████

████████████████ ). But, again, these are precisely the types of non-core claims that

would be covered by the arbitration provisions in the engagement agreements, which the

bankruptcy courts must enforce. *See Daisytek*, 323 B.R. at 185, 188 (vacating order compelling

production of documents to Trustee even though Trustee asserted that knowledge from auditor's

workpapers "will be used in all aspects of his investigation" against others).

        Second, the conclusion in *Friedman's* that enforcing an arbitration clause is

"fundamentally at odds with bankruptcy policy" improperly "places the bankruptcy law in a

position of superiority over the [FAA]." *Hays*, 885 F.2d at 1161. It also overlooks that

compelling production from a party with an enforceable arbitration provision with the debtor

-18-

does **not** "sufficiently protect[]" that party's interests. 11 U.S.C. § 1522(a). Accepting the assertion made by the debtor in *Friedman's* (and by the Liquidators here) that a party may seek court-sanctioned discovery to determine whether a claim or controversy exists (while conceding that such a potential claim or controversy would be governed by the arbitration agreement) risks making arbitration agreements illusory. One party could prevent the arbitrator from having control over discovery just by contending that it has not yet determined whether it has a claim. Then, when it comes time to arbitrate, that party would have in hand broad discovery, while the party defending the arbitration would be bound by the arbitration provision's limited discovery.

This risk is clear and present here. If the Court permits the Liquidators to conduct pre-suit discovery, and the Liquidators ultimately commence arbitration proceedings, CohnReznick will have lost its bargained-for contractual rights to limit discovery in accordance with the governing rules set forth in its engagement letters with the Funds. *See National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 190-91 (2d Cir. 1999) (noting that "broad-ranging discovery . . . would undermine one of the significant advantages of arbitration and thus arguably conflict with the strong federal policy favoring arbitration."); *Comsat Corp. v. National Science Foundation*, 190 F.3d 269, 276 (4th Cir. 1999) ("A hallmark of arbitration – and a necessary precursor to its efficient operation – is a limited discovery process").[13]

This is precisely why courts consistently deny requests for discovery in aid of arbitration for the purposes of establishing a possible arbitrable claim. *See McIntire v. China MediaExpress Holdings, Inc.*, 252 F.Supp.3d 328, 330-31 (S.D.N.Y. 2017) (quashing subpoenas served to law firm by court-appointed receiver in an SEC civil enforcement action to investigate or obtain

---

[13] In this regard, the court's conclusion in *Millennium Lab Holdings II* that compelling discovery from the auditor would not "prevent [the auditor] from asserting any right to arbitration (and attendant rights) if a proceeding is commenced," fundamentally misconstrues one of the most important "attendant rights" of arbitration, namely, to limit discovery as deemed appropriate by an arbitrator. *See id.*, 562 B.R. at 630.

evidence in support of arbitrable malpractice claims); *Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 125 F.R.D. 398, 400-01 (S.D.N.Y. 1989) (indicating that discovery in aid of arbitration is permissible only in "extraordinary circumstances" which "addresses situations where a party's ability to properly present its case to the arbitrators will be irreparably harmed"). The result should be no different in a proceeding to aid a foreign bankruptcy because enforcing the arbitration agreement here would not "necessarily jeopardize or inherently conflict with the Bankruptcy Code." *Hill*, 436 F.3d at 110; *see also Hopewell*, 258 B.R. at 585 (explaining that it "would distort the purpose of [section 304] to provide discovery rights to one party to a matter but not the other and create a fundamental unfairness that Congress could not have intended").

In sum, to sufficiently protect the contractual rights of CohnReznick, the Court should enforce the arbitration agreements and deny the Liquidators' motion to compel.

**III.    Neither Rule 2004 Nor Section 542(e) Provides a Basis to Disregard Cayman Law or the Contractual Arbitration Provisions**

**A.    Even if Rule 2004 Applied to Chapter 15 Cases, it Does Not Supersede Section 1521**

The Liquidators served the Subpoena without ever making a Rule 2004 motion. So for that reason alone Rule 2004 does not apply. *See* Collier on Bankruptcy P 2004.01 (16th ed. 2017) ("a subpoena issued by the bankruptcy clerk is not sufficient" to invoke Rule 2004). In any event, even if the Rule 2004 procedures applied to chapter 15 cases, Rule 2004 cannot somehow supersede the explicit boundaries of section 1521(a)(4). Contrary to the Liquidators' assertion (Joinder ¶ 6) that "every court to examine the issue" has held that Rule 2004 applies to chapter 15 proceedings, several courts have held that the scope of discovery available under section 1521(a)(4) is construed more narrowly than under Rule 2004. *See, e.g., In re Glitnir banki hf.*, No. 08-14757, 2011 WL 3652764, *6 (Bankr. S.D.N.Y. Aug. 19, 2011) ("this Court has

-20-

observed that §1521(a)(4) may not authorize the 'fishing expeditions' associated with Rule 2004"); *Hopewell*, 258 B.R. at 584 (noting that Rule 2004 is not an "independent source of power to order the requested disclosure" under section 304). Moreover, given the Liquidators' access to section 1782, the Court respectfully should heed the Second Circuit's suggestion to limit the scope of chapter 15 discovery, not expand it. *See In re Barnet*, 737 F.3d at 251.

Nevertheless, the Liquidators urge this Court to find that "Rule 2004 is directly applicable in chapter 15 cases, or in the alternative, exercise its authority under section 1521(a)(7) and 1507 to do the same." Joinder ¶ 11. In support of this position the Liquidators rely on *In re Millennium Global Emerging Credit Master Fund Limited*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012). In that case, the court expressly noted that it "need not reach th[e] issue," but went on to surmise that making Rule 2004 applicable to chapter 15 proceedings would be consistent with purposes of chapter 15. *Id.* at 346-47. The court relied upon section 1507 which permits a court to "provide additional assistance to a foreign representative." 11 U.S.C. § 1507. Yet allowing the general statutory provision in section 1507 to somehow override the specific statutory boundaries set forth in section 1521 makes no sense. *See In re Glitnir*, 2011 WL 3652764, at *6. And it is also inconsistent with well-settled rules of statutory construction. *See In re Lawson Burich Assoc.*, 59 B.R. 681, 689-90 (Bankr. S.D.N.Y. 1986) ("a court should [not] read general provisions to override specific provisions of a statute").[14]

---

[14] Nor do the additional cases cited by the Liquidators provide any more persuasive support. *See, e.g., In re Petroforte Brasiliero de Petroleo Ltda.*, 542 B.R. 899, 910-911 (Bankr. S.D. Fla. 2015) (agreeing with the court in *Millennium* that Rule 2004 might apply in chapter 15 proceedings, but not needing to reach the issue because "rulings on the Discovery Motions would be the same whether the Court applied § 1521 or the arguably broader discovery rights under Rule 2004"); *In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 860 (Bankr. C.D. Cal. 2008) (construing provisional relief available under section 1519 and, in so doing, inaccurately quoting section 1521(a)(4) to include phrase "pursuant to Rule 2004"); *In re China Medical Tech.*, 539 B.R. 643, 648 (S.D.N.Y. 2015) (considering whether documents were properly withheld pursuant to a Rule 2004 examination where foreign representative waived any applicable privilege, and

Even if the Court were to find that Rule 2004 applied here, that would not invalidate

CohnReznick's objections. Indeed, neither *Millennium* nor any other case cited by the

Liquidators in support of their request to apply Rule 2004, addressed any argument concerning

the restrictions of foreign discovery law or the impact of arbitration agreements. *Compare*

*Daisytek*, 323 B.R. at 188 (denying Rule 2004 discovery in light of arbitration agreement).

**B.    Even if Section 542(e) Applied to Chapter 15 Cases, it Does Not Call For a Different Outcome**

Similarly, the Liquidators also argue that the Subpoena is permissible under section

542(e). Once again, it is far from clear that the turnover provisions in chapter 5 of the Code apply

to chapter 15 cases. *Compare In re AJW Offshore Ltd.*, 488 B.R. 551, 553 (Bankr. E.D.N.Y.

2013) (making section 542 applicable via section 1521(a)(7)) with *In re Lee*, 472 B.R. 156, 182

(Bankr. D. Mass. 2012) (noting that "section 542 is inapplicable to Chapter 15 cases") and *In re*

*Atlas Shipping A/S*, 404 B.R. 726, 746 (Bankr. S.D.N.Y. 2009) (holding that the discretionary

nature of § 1521's turnover provisions suggests that the mandatory obligations of § 543 should

not apply in the chapter 15 context). But again it makes no difference. Whether framed as

requests for discovery under section 1521, Rule 2004, or section 542(e), the Subpoena should be

quashed because it is an end-run around the restrictions in Cayman law and the parties'

contractual arbitration agreement. *See Golden v. O'Melveny & Myers LLP*, No. 14-cv-08725,

2017 WL 5178721, *2-3 (C.D. Cal. Nov. 6, 2017) (compelling trustee to withdraw motion for

turnover of documents possessed by debtor's former law firm because turnover motion was "an

attempt to end-run the arbitration discovery process" in a pending arbitration).

**IV.    Even if the Subpoena is Proper, it Should be Substantially Narrowed**

---

where target of discovery did not challenge application of Rule 2004 to chapter 15).

The Liquidators suggest that CohnReznick's documents related to its engagements for the Funds should be "limited," but they place no limits at all on which documents they seek. Mem. ¶¶ 9, 75. Nor do they place any limits on other ESI such as emails, which in any audit, let alone multiple audits, can be quite voluminous. To the contrary, the Liquidators' requests are expansive. *See, e.g.,* Cheifetz Decl., Ex. 8 at Request No. 1 ("All documents and communications concerning your engagement to perform and/or your performance of auditing, accounting, or other services for, on behalf of, or in relation to any Fund"); *id.* at Request No. 5 ("All drafts and final versions of any work product that you prepared which relates to or mentions any Fund, or which was prepared pursuant to your engagement to perform any services for, on behalf of, or in relation to, any Fund"); *id.* at Request No. 15 ("All emails that are property of, concern, or were made or issued on behalf of, the Funds . . ."). Despite already having collected an enormous amount of data pertaining to the Funds, it is unclear whether the Liquidators have bothered to narrow their requests here by first reviewing that data to determine whether there is a legitimate need to place broad ESI demands on CohnReznick.

If the Liquidators are sincere that their discovery requests are merely in connection with their "open-ended" efforts to gain information about the Funds' financial condition, and are not necessarily directed at potential (arbitrable) claims against CohnReznick, then they should be willing to compromise in some way that sufficiently protects the interests of CohnReznick. *See* 11 U.S.C. § 1522(a). But the Liquidators will not compromise. For example, we asked the Liquidators if there were particular issues concerning the Funds' financial condition about which they needed more information, yet they refused to narrow their requests in any way. The Liquidators also refused to drop their request for any documents pertaining to CohnReznick's preliminary work on the Funds' 2015 financial statement audits even though CohnReznick never

issued an audit opinion concerning the 2015 financial statements. The Liquidators' intransigence belies any assertion that they are not targeting claims against CohnReznick.

The Subpoena also is objectionable to the extent it requests proprietary and confidential information from CohnReznick. While the Liquidators suggest (Mem. ¶ 57) that a protective order would be sufficient to address these concerns, courts have limited the scope of bankruptcy discovery on auditors where, for example, discovery is sought of proprietary audit materials. *See In re CIS Corp.*, 123 B.R. 488, 491 (S.D.N.Y. 1991).

Finally, to the extent that the Subpoena requests documents in the custody and control of CohnReznick Cayman, Cheifetz Decl., Ex. 8 at Request No. 2, that request should properly be directed to the Cayman courts. *See In re SPhinX* (Cheifetz Decl., Ex. 10 at p. 13).

## V.    CohnReznick Does Not Press its Objection to the Subpoena on the Basis That the International Fund Did Not Meet the Requirements of Section 109(a)

Though we are not pressing our objection that the Subpoena is *void ab initio* because the International Fund did not properly satisfy section 109(a) at the time of filing its petition for recognition, we feel compelled to respond to the Liquidators' pejorative characterization of the objection as a "Hail Mary." Mem. ¶ 7.[15] Quite simply, the recognition petition made only one, brief reference to a "small balance of cash" located in the United States, without further explanation, and it was replete with other contradictory references indicating that the International Fund had no property in the United States. *See* Declaration of Christopher Kennedy ("Original Kennedy Decl.") [Dkt. 2 in 16-12934] ¶ 49 ("save for a small balance of cash located

---

[15] Similarly, the Liquidators for the Master Fund erroneously assert that we raised this objection "for the first time" in our pre-motion letter to the Court on January 2, 2018. Joinder ¶ 32. In fact, we raised this objection months earlier in our original responses and objections to the Subpoena. Gordon Decl., Ex. 2 at ¶ 1. And we discussed it with counsel in our meet and confer sessions. While the Master Fund also faults us for not "assert[ing] an objection to recognition . . . when [the International Fund] filed its chapter 15 proceeding or at any time prior to the entry of the recognition order," we were never given notice of those proceedings. Joinder ¶ 32.

in New York, all of the International Funds' assets are now and always have been located in the Cayman Islands"); Pet. for Recognition [Dkt. 1 in 16-12934] ¶ 18 ("Virtually all of the assets of the International Fund are located in the Cayman Islands"); *id.* ¶ 21 ("The Liquidators understand that the assets of the International Fund consist solely of its share of the Intermediate Fund [located in the Cayman Islands]").

Recognizing the insufficiency of the prior declarations in support of their petition, the Liquidators submitted a supplemental declaration with their motion to compel explaining that "the balance of cash to which [they] referred was $25,000 held in the trust account of Holland & Knight LLP, which at the time represented the International Fund's liquidators"). Declaration of Christopher Kennedy, dated Jan. 24, 2018 [Dkt. 53-2] ¶ 5. While we accept that representation, we note it is unclear whether the retainer remained unearned at the time of the filing of the petition. Similarly, the Liquidators also now concede that the original supporting declarations did not "specifically mention[]" the presence of books and records of the International Fund located in the United States. Mem. ¶ 72. But they now make, and we accept, such a representation in their memorandum of law (though it is also unclear to what extent or why those records are property of the International Fund and not the entities that possessed them). *Id.* Nor did the Liquidators for the Master Fund, who join in the motion to compel, ever issue their own subpoena. Because the only entity to issue the Subpoena had not established that it had property in the U.S. at the time of filing its petition for recognition, our objection was well founded.[16]

---

[16] The Liquidators' assertion that "the Kennedy Declaration further established that the International Fund was managed by Platinum Management, which was headquartered in New York" and that therefore "the Fund carries out its business . . . in New York" is irrelevant because by the time of filing the petition for recognition, the Liquidators had assumed control over the Fund, so it was no longer "carrying out business" in New York for purposes of section 109(a). Mem. ¶ 71; Original Kennedy Decl. ¶¶ 52-54.

## CONCLUSION

For the foregoing reasons the Liquidators' motion to compel should be denied.


Dated:    New York, New York
          February 16, 2018

                                 STROOCK & STROOCK & LAVAN LLP

                         By:     /s/ James L. Bernard
                                 James L. Bernard
                                 David M. Cheifetz
                                 Stroock & Stroock & Lavan LLP
                                 180 Maiden Lane
                                 New York, New York 10038
                                 (212) 806-5400

                                 *Attorneys for CohnReznick LLP*