**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 15 |
| PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P. (IN OFFICIAL LIQUIDATION),[1] *et al.*, | Case No. 16-12925 (SCC) |
|  | (Jointly Administered) |
| Debtors in Foreign Proceedings. |  |

## MEMORANDUM DECISION ON MOTION OF THE FOREIGN REPRESENTATIVES OF PLATINUM PARTNERS VENTURE ARBITRAGE FUND (INTERNATIONAL) LIMITED FOR AN ORDER COMPELLING COHNREZNICK LLP TO COMPLY WITH A <u>SUBPOENA FOR PRODUCTION OF DOCUMENTS</u>

---

[1]    The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) (1954); Platinum Partners Value Arbitrage Fund (International) Ltd. (in Official Liquidation) (2356); and Platinum Partners Value Arbitrage Intermediate Fund Ltd. (in Official Liquidation) (9530).

A P P E A R A N C E S:

LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1899 Pennsylvania Ave., NW, Suite 600
Washington, DC 20006
By:     Jack B. Gordon, Esq.

*Counsel for the Liquidators of Platinum*
*Partners Value Arbitrage Fund (International) Limited (in Official Liquidation)*

HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
By:     Warren E. Gluck, Esq.

*Counsel for the Liquidators of the Platinum*
*Partners Value Arbitrage Fund L.P. (in Official Liquidation)*

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
By:     David M. Cheifetz, Esq.

*Counsel for CohnReznick LLP*

# TABLE OF CONTENTS

I.   BACKGROUND ...................................................................................................2

    A.  The Platinum Funds .................................................................................2

    B.  Procedural History ...................................................................................3

    C.  The Funds' Relationship with CohnReznick .................................................5

II.  APPLICABLE LAW ............................................................................................7

    A.  Chapter 15 of the Bankruptcy Code..........................................................7

    B.  Other Provisions of the Bankruptcy Code and Rules Pertaining to Discovery ............9

III. DISCUSSION ....................................................................................................11

    A.  Chapter 15 of the Bankruptcy Code Authorizes the Court to Grant the Relief
        Sought in the Motion ...............................................................................11

        1.  There Are No Grounds to Deny the Motion on the Basis of Comity .................13

            a.  CohnReznick Has Not Demonstrated That the Discovery Sought in the
                Subpoena Is Impermissible under Cayman Law. ......................................13

            b.  Principles of Comity Support Granting the Motion..................................18

        2.  CohnReznick's Additional Arguments Are Unavailing. ....................................21

    B.  The Arbitration Provisions of the Engagement Letter Are Not Binding Because
        There is No "Dispute, Controversy, or Claim" at Issue..............................................23

IV.  CONCLUSION...................................................................................................28

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**


Before the Court is the motion (the "Motion") of Margot MacInnis and Nilani Perera (the "International Fund Liquidators"), the foreign representatives of Platinum Partners Venture Arbitrage Fund (International) Limited (in Official Liquidation) (the "International Fund"), for an order pursuant to 11 U.S.C. §§ 105(a), 542(e), and 1521(a) and Rule 2004 of the Federal Rules of Bankruptcy Procedure, directing CohnReznick LLP ("CohnReznick") to comply with a subpoena to produce documents served on August 31, 2017 (the "Subpoena").  Martin Nicholas John Trott and Christopher Barnett Kennedy (the "Master Fund Liquidators," and together with the International Fund Liquidators, the "Liquidators"), the duly appointed joint official liquidators and foreign representatives of Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) (the "Master Fund") filed a Joinder to the Motion (the "Joinder"). CohnReznick filed a Memorandum of Law in Opposition to the Motion (the "Objection").

The International Fund Liquidators bring the Motion in order to obtain records concerning the International Fund, the Master Fund, and Platinum Partners Value Arbitrage Intermediate Fund Ltd. (the "Intermediate Fund" and collectively with the International Fund and the Master Fund, the "Funds") that are within the possession of CohnReznick, which provided audit services to the Funds for calendar years 2014 and 2015.  CohnReznick objects to the Motion and argues that it need not comply with the Subpoena on the grounds that (i) the Subpoena seeks documents that the Liquidators would be unable to obtain under applicable Cayman law and (ii) the Subpoena impermissibly seeks "pre-suit discovery" concerning potential claims that would fall within the scope of the arbitration provisions in the engagement

1

letters between CohnReznick and the Funds.  Alternatively, if the Motion were granted,

CohnReznick argues that the Subpoena is overly broad and should be narrowed substantially.

For the reasons set forth below, the Court will grant the Motion and require CohnReznick

to comply with the Subpoena.

## I.  BACKGROUND

### A.  The Platinum Funds

The Master Fund, a multi-strategy hedge fund that invests and trades in U.S. and non-

U.S. financial instruments and other funds, assets, and holding companies, is a Cayman Islands

exempted limited partnership.  The Master Fund was established in or about 2003.  By 2012,

most of its assets were highly illiquid and it was unable to honor numerous redemption requests

from its investors in a timely manner.  In August 2016, following its failure to honor numerous

such requests, the Master Fund and its offshore feeder fund, the International Fund, were placed

into liquidation by order of the Grand Court of the Cayman Islands (the "Grand Court").[2]

The relationships between the Funds are as follows.  The Intermediate Fund, an exempted

limited liability company incorporated in the Cayman Islands and a limited partner in the Master

Fund, was to invest all of its investable capital in the Master Fund.  The International Fund, an

exempted limited company under the laws of the Cayman Islands, was to invest all of its capital

in the Intermediate Fund.  The International Fund offered participating shares to prospective

investors; its stated investment objective was to achieve superior capital appreciation through its

indirect investment in the Master Fund.  As such, the financial position of the International Fund

---

[2]     Each of the Funds is in liquidation pursuant to orders of the Grand Court (cause nos. FSD 131 of 2016
(AJJ) ("Master Fund Liquidation"), 118 of 2016 (AJJ) ("International Fund Liquidation,"), and FSD 30 of 2017
(AJJ) (the "Intermediate Fund Liquidation" and collectively with the Master Fund Liquidation and the International
Fund Liquidation, the "Cayman Proceedings").

was dependent upon the performance of the Master Fund and, in turn, the value of the assets in which the Master Fund held interests.[3]

Prior to the appointment of the Liquidators, the Funds were managed by Platinum Management (NY) LLC ("Platinum Management"), which is headquartered in New York. Platinum Management administered the Funds' operations and was responsible for managing, trading, investing, and allocating the Funds' assets. Platinum Management maintained records, correspondence, and other information pertaining to the Funds' operations and investments.

On December 14, 2016, shortly after the initiation of the Master Fund Liquidation and the International Fund Liquidation, a federal grand jury in the United States District Court for the Eastern District of New York indicted certain senior executives of Platinum Management on charges of conspiracy, securities fraud, investment advisor fraud, and wire fraud in connection with the operation of the Funds. *See United States v. Nordlicht, et al.*, Cr. No. 16-640 (E.D.N.Y. Dec. 14, 2016). Five days later, the Securities and Exchange Commission (the "SEC") filed a civil complaint against Platinum Management and the indicted individuals seeking various forms of relief in connection with the alleged "multi-pronged fraudulent scheme." *See Sec. & Exch. Comm'n v. Platinum Mgmt. (NY) LLC, et. al.*, Civ. No. 16-06848 (E.D.N.Y. Dec. 19, 2016) (the "SEC Action"). According to the complaint filed in the SEC Action, Mark Nordlicht and David Levy, the co-chief investment officers of Platinum Management, have asserted their Fifth Amendment rights against self-incrimination when questioned by the Litigation Trustee for Black Elk (a Master Fund investment) concerning Platinum related matters.[4]

---

[3]     *See* Kennedy Declaration in Support of Ch. 15 Petitions for Recognition as Foreign Main Proceedings [ECF No. 2] ¶ 17.

[4]     Compl. ¶¶ 182–85, SEC Action.

### B. Procedural History

On October 18, 2016, Christopher Barnett Kennedy and Matthew James Wright,[5] in their

capacity as duly appointed joint liquidators, filed petitions in this Court for the recognition of the

Master Fund Liquidation and the International Fund Liquidation in the Cayman Islands as

foreign main proceedings under chapter 15 of title 11 of the United States Code (the

"Bankruptcy Code").  Pursuant to the Order Directing Joint Administration of Debtors' Chapter

15 Cases entered by this Court on October 25, 2016, the chapter 15 cases of the Master Fund and

the International Fund were consolidated for procedural purposes.  There were no objections

filed to the request for recognition.  On November 22, 2016, this Court entered an order (the

"Recognition Order") recognizing the Master Fund Liquidation and the International Fund

Liquidation as foreign main proceedings under chapter 15 of the Bankruptcy Code.

The Liquidators are officers of the Grand Court who are obligated under Cayman law to

"collect, realise, and distribute" the Funds' assets, and they are empowered to investigate the

"promotion, business, dealings and affairs" of the Funds, including the causes of their failure.[6]

In furtherance of this objective, the Recognition Order expressly authorizes the Liquidators to

"examine witnesses, take evidence, and seek the production of documents within the territorial

jurisdiction of the United States concerning the assets, affairs, rights, obligations or liabilities of

the Funds, the Funds affiliates and the Funds' subsidiaries," including "upon written request,

---

[5]     Messrs. Christopher Barnett Kennedy and Matthew James Wright were originally appointed as the joint
official liquidators of the Master Fund and the International Fund.  In September 2017, Mr. Wright resigned and Mr.
Martin Nicholas John Trott replaced him as the joint official liquidator of the Master Fund.
        As a result of the Grand Court's determination on October 23, 2016 that the Master Fund and the
International Fund should not have the same official liquidators, the Grand Court appointed Margot MacInnis and
Nilani Perara as the joint official liquidators of the International Fund. The International Fund Liquidators are also
joint official liquidators of the Intermediate Fund.
[6]     *See* Motion ¶ 3 (citing Declaration of Stephen Leontsinis in Support of Chapter 15 Petitions ¶¶ 37, 40
(citing Sections 102 and 110 of the Companies Law of the Cayman Islands)).

obtaining turnover of any and all documents . . . that are property of, concern or were made or issued on behalf of the Funds . . . ."[7]

In August 2017, the International Fund Liquidators, in their capacity as the joint official liquidators of the Intermediate Fund, filed a chapter 15 petition in this Court with respect to the Intermediate Fund Liquidation.[8]  On September 7, 2017, this Court entered the Order Directing Joint Administration of Debtors' Chapter 15 Cases and, on October 12, 2017, this Court entered an order recognizing the Intermediate Fund Liquidation.

### C. The Funds' Relationship with CohnReznick

CohnReznick is a limited liability partnership engaged in the provision of accounting, assurance, tax, and business advisory services.  The Funds engaged CohnReznick to provide audit services to the Funds for calendar years 2014 and 2015, the two years preceding the collapse of the Master Fund and the initiation of the Cayman Proceedings.  The engagement letters between each Fund and CohnReznick (the "Engagement Letters") contain an arbitration clause which states, in relevant part, that:

> Any dispute, controversy, or claim arising out of or relating to the services or the performance or breach of the Agreements (including disputes regarding the validity or enforceability of this Agreement) or in any prior services or agreements between the parties shall be finally resolved by arbitration in accordance with the International Institute for Conflict Prevention and Resolution ("IICPR") Rules for Non-Administered Arbitrations . . . Such arbitration shall be binding and final. In agreeing to arbitration, the parties acknowledge that in the event of any dispute (including a dispute over fees) the parties are giving up the right to have the dispute decided in a court of law before a judge or jury and instead the parties are accepting the use of arbitration for resolution.[9]

The Engagement Letters are governed by New York law.

---

[7]    Recognition Order ¶ 7.
[8]    Case No. 17-12269, ECF No. 1.
[9]    General Terms and Conditions, "Dispute Resolution," Cheifetz Declaration at Exs. 1-4.

CohnReznick issued audit opinions on the Funds' financial statements for the year 2014, but it terminated its engagement with the Funds prior to completing an audit or issuing an audit opinion for the Funds' financial statements for the year 2015.

To assist in their investigation of the Funds, the International Fund Liquidators asked CohnReznick to make available its records concerning the Funds.  The Master Fund Liquidators separately made an informal request for documents from CohnReznick.  In response, CohnReznick produced copies of original documents that it maintained were the property of the Funds, but it did not provide other documents in its possession concerning the Funds, such as its audit work papers, engagement documents, communications, representations, invoices, and other relevant documents within its audit file.

Accordingly, on August 31, 2017, the International Fund Liquidators served the Subpoena upon CohnReznick, seeking, among other things, "[a]ll documents and communications concerning [CohnReznick's] engagement to perform and/or [its] performance of auditing, accounting, or other services for, on behalf of, or in relation to any Fund" and "[a]ll documents concerning the assets, liabilities, and other financial affairs of [any] Fund, whether provided by the Fund or obtained from other sources."[10]  The Master Fund Liquidators did not file a separate subpoena; rather, the cover letter to the Subpoena indicated that the Master Fund Liquidators consented to the issuance of the Subpoena by the International Fund Liquidators.

On October 2, 2017, CohnReznick served written objections to the Subpoena upon the International Fund Liquidators.  The parties were unable to resolve the objections consensually. On December 14, 2017, counsel to the International Fund Liquidators filed a pre-motion letter with this Court, requesting a conference and, if necessary, leave to file a motion to compel

---

[10]    Motion at Ex. 3 (Kennedy Declaration) at Ex. 1(Subpoena) at Annex A at pp. 6-7.

CohnReznick to comply with the Subpoena (the "Gordon Letter").  On January 2, 2018, counsel

to CohnReznick filed a letter in response to the Gordon Letter, expressing CohnReznick's

objection to any further production under the Subpoena.  After a brief conference with the Court,

the parties agreed on a briefing schedule for a motion to compel.

On January 25, 2018, the International Fund Liquidators filed the Motion, together with

the Declaration of Christopher Barnett Kennedy (the "Kennedy Declaration") and the

Declaration of Jack Gordon in support of the Motion; the Master Fund Liquidators filed the

Joinder, together with the Declaration of Warren E. Gluck in Support of the Joinder (the "Gluck

Declaration").  On February 16, 2018, CohnReznick filed the Objection, together with the

Declaration of David M. Cheifetz (the "Cheifetz Declaration") and the Declaration of Rachael

Reynolds (the "Reynolds Declaration") in support of the Objection.  On March 2, 2018, (i) the

International Fund Liquidators filed a Reply Memorandum of Law in Support of the Motion (the

"Reply") and the Declaration of Mark A. Russell in Support of the Motion (the "Russell

Declaration") and (ii) the Master Fund Liquidator filed a Reply in Support of the Motion (the

"Master Fund Reply").  Oral argument on the Motion was held on April 5, 2018.

## II.    APPLICABLE LAW

### A.  Chapter 15 of the Bankruptcy Code

By commencing an ancillary case under chapter 15 and obtaining recognition of a foreign

main proceeding, a foreign representative receives a "[r]ight of direct access" to courts in the

United States, subject to any limitations that the court may impose consistent with the policy of

chapter 15. 11 U.S.C. § 1509.[11]  Section 1521(a) of the Bankruptcy Code provides that, upon

recognition of a foreign main proceeding, a bankruptcy court may, "at the request of a foreign

---

[11]     Specifically, once recognition is granted pursuant to section 1517 of the Bankruptcy Code, the foreign
representative has the capacity to sue and be sued in a court in the United States.  11 U.S.C. § 1509(b)(1).

representative, grant any appropriate relief" . . . "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors."  11 U.S.C. § 1521(a).  Such relief includes "the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;" and "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."  11 U.S.C. §§ 1521(a)(4) and (a)(7).

However, the court's power to grant relief under section 1521 is not without restriction; section 1522(a) specifically states that relief under section 1519 or section 1521 may be granted "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  "The idea underlying [§ 1522] is that there should be a balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief."  *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 626 (Bankr. S.D.N.Y. 2010) (citing GUIDE TO ENACTMENT OF THE UNCITRAL MODEL LAW ON CROSS-BORDER INSOLVENCY ¶ 161).  Indeed, the plain text of section 1521 suggests that the court should exercise discretion and grant relief only when it is necessary and appropriate.  *See In re SPhinX Ltd., et al.*, No. 06-11760 (RDD) (*Order Denying Ex Parte Motion of the Foreign Representatives for . . . an Order Compelling the Production of Documents and Examination of Witnesses Pursuant to § 1521 of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure, dated May 14, 2007 (Ex. A, Tr. 6:23-7:1)*) (Cheifetz Declaration at Ex. 10).

Comity plays a significant role in cross-border insolvency proceedings.  *In re Cozumel Caribe S.A. de C.V.*, 482 B.R. 96, 114-15 (Bankr. S.D.N.Y. 2012).  "'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will,

upon the other.  But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws."  *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895).  If recognition is granted, section 1507 of the Bankruptcy Code grants the bankruptcy court authority to "provide additional assistance to a foreign representative under this title or under other laws of the United States" provided that such assistance is "consistent with the principles of comity" and satisfies the fairness considerations set forth in subsection (b) thereof.  11 U.S.C. § 1507(a) and (b). Thus, chapter 15 provides courts with broad, flexible, and pragmatic rules to fashion relief that is "largely discretionary and turns on subjective factors that embody principals of comity."  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008).

### B.  Other Provisions of the Bankruptcy Code and Rules Pertaining to Discovery

Foreign representatives in chapter 15 cases seeking court-ordered discovery at times seek relief pursuant to section 542(e) of the Bankruptcy Code and/or Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which are either directly applicable to chapter 15 cases or, in the alternative, delineate relief which can be granted by the court pursuant to section 1521(a)(4) or section 1521(a)(7).

Section 542(e) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee."  11 U.S.C. § 542(e).  Courts have held that a foreign representative

may seek disclosure pursuant to section 542(e).  *See In re AJW Offshore Ltd.,* 488 B.R. 551, 564

(Bankr. E.D.N.Y. 2013).

Bankruptcy Rule 2004 authorizes a party in interest, such as a foreign representative, to

subpoena documents relating "to the acts, conduct, or property or to the liabilities and financial

condition of the debtor, or to any matter which may affect the administration of the debtor's

estate . . . ." Fed. R. Bankr. P. 2004(a), 2004(b).  Relief sought pursuant to Bankruptcy Rule

2004 may also be available pursuant to sections 1507, 1521(a)(4) or 1521(a)(7).  "'[O]ne of the

main purposes of chapter 15 is to assist a foreign representative in the administration of the

foreign estate," and Rule 2004 proceedings are one of the mechanisms by which bankruptcy

courts provide such assistance."  *Krys v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP (In re*

*China Med. Techs., Inc.)*, 539 B.R. 643, 649 (citing *In re Millennium Glob. Emerging Credit*

*Master Fund Ltd.*, 471 B.R. 342, 347 (Bankr. S.D.N.Y. 2012)); *see also In re AJW Offshore Ltd.*,

488 B.R. at 564 (permitting discovery by a chapter 15 foreign representative under Rule 2004);

*In re Pro-Fit International Ltd.*, 391 B.R. 850, 860 (Bankr. C.D. Cal. 2008) (discovery under

section 1521(a)(4) includes "the examination of witnesses pursuant to Rule 2004 and the

delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.").

The language of Rule 2004 is permissive "and in the proper context the Court may

authorize the examination of third parties that possess knowledge of the debtor's acts, conduct,

liabilities or financial condition which relate to the administration of the bankruptcy estate." *In*

*re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted).  However, a

court's discretion is not unfettered.  Courts have imposed limits on the use of Rule 2004

examinations; for instance, "once an adversary proceeding or contested matter is commenced,

discovery should be pursued under the rules of [such adversary proceeding] and not by Rule

10

2004." *Id.* (citations omitted). This so-called "pending proceeding rule" reflects a concern that

parties to a litigation could circumvent an adversary's rights by using Rule 2004 rather than

obtaining discovery through the rules applicable to such other adversary proceeding. *See In re*

*Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. at 347; *In re Glitnir banki hf.*,

No. 08-14757 (SMB), 2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011). However,

those matters and entities that are not affected by an adversary proceeding should not be able to

avoid examination under Rule 2004, even if it is likely that the entity seeking discovery will

eventually sue the target. *Id.* at *4 n.11, *5 n.12 (citations omitted).

## III.  DISCUSSION

### A.  Chapter 15 of the Bankruptcy Code Authorizes the Court to Grant the Relief Sought in the Motion

The Liquidators argue that the documents subpoenaed from CohnReznick are both

relevant and necessary to their ongoing investigation of the Funds' affairs because, as the Funds'

outside auditor, CohnReznick has a unique set of documents and analyses concerning the Funds'

assets, liabilities, and financial affairs which would assist the Liquidators' investigation and

understanding of the Funds' affairs for the two years immediately prior to the Funds'

liquidations.[12] As such, the relevance of the documents the Liquidators seek goes well beyond

any claim that the Liquidators might ultimately pursue against CohnReznick.[13] In addition, the

Liquidators argue that, because former executives of the Funds have asserted their Fifth

Amendment rights, the Liquidators will be unable to obtain information about the conduct,

assets, or financial condition of the Funds from such individuals and instead must depend almost

entirely on third-party discovery for such information.[14]

---

[12]   Reply at 1-2; Joinder ¶ 41.
[13]   Reply at 1.
[14]   Motion ¶ 26.

The Liquidators assert that the documents they have requested under the Subpoena plainly concern "information concerning the debtor's assets, affairs, rights, obligations or liabilities" within the meaning of section 1521(a)(4) of the Bankruptcy Code, and pursuant to (i) paragraph 7 of the Recognition Order, (ii) section 1521(a)(4), and (iii) this Court's holding in *Millennium Global* and other relevant precedent, this Court is expressly authorized to grant the Liquidators the relief sought in the Motion.[15]  "By its terms, this provision enables a [f]oreign [r]epresentative to take broad discovery concerning the property and affairs of a debtor." *In re Millennium Global*, 471 B.R. at 346.  The Liquidators support their assertion that such relief under section 1521(a)(4) is routinely granted in chapter 15 cases with numerous examples.[16] Further, they argue that the relief sought in the Motion also falls within the Court's powers to grant relief pursuant to section 1521(a)(7) of the Bankruptcy Code and Bankruptcy Rule 2004.

CohnReznick does not dispute the significance of the documents the Liquidators seek or the Liquidators' authority to obtain documents pursuant to the terms of the Recognition Order. Instead, it asserts that the Subpoena is not "necessary" or "appropriate," pointing to the plain language in section 1521(a) which states that "appropriate relief" may be granted "where necessary to effectuate the purpose of [chapter 15]."[17]  It argues that the Motion is inappropriate because the purpose of chapter 15 is to aid not only the debtor but all interested entities, and by providing the Liquidators with "an open door" to obtain all of CohnReznick's work papers not otherwise discoverable under Cayman law, its interests, as well as the interests of comity and

---

[15]     *See generally* Motion ¶¶ 30-41.
[16]     *See e.g.*, Gluck Declaration, Exs. C-E (attaching orders permitting foreign representative to seek discovery in *In re Transfield ER Cape Ltd. (BVI)*, No. 10-16270 (MG) (Bankr. S.D.N.Y. Jan. 13, 2011); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. August 14, 2014); *In re ICP Strategic Credit Income Fund Ltd.*, et al., No. 13-12116 (REG) (Bankr. S.D.N.Y. November 14, 2013); and *In re The International Banking Corporation B.S.C. (c)*, No. 09-17318 (SMB) (Bankr. S.D.N.Y. January 15, 2010 and December 30, 2015)).
[17]     11 U.S.C. § 1521(a).

parity, are not being protected.[18]  Specifically, CohnReznick asserts that foreign representatives

may not avail themselves of broader discovery rights than they allegedly would otherwise enjoy

under the laws of their home forum.  Simply put, CohnReznick asserts that Cayman law would

not permit the Liquidators to obtain CohnReznick's work papers, and that therefore such relief

should not be granted by this Court.  CohnReznick also opposes the Motion on the grounds that

the requested relief is unnecessary because (i) the Liquidators have not attempted to obtain

discovery first in the Caymans and (ii) CohnReznick has already turned over a substantial

number of documents.[19]  CohnReznick urges the Court to exercise some degree of discretion in

exercising its powers under section 1521(a).

For the reasons discussed below, the Court finds that the relief sought in the Motion is

necessary and appropriate under section 1521(a) of the Bankruptcy Code.

### 1.  There Are No Grounds to Deny the Motion on the Basis of Comity

#### a.  CohnReznick Has Not Demonstrated That the Discovery Sought in the Subpoena Is Impermissible Under Cayman Law

CohnReznick argues that the Court should deny the Motion because the Liquidators

would not be permitted to obtain in the Cayman Islands the discovery sought in the Subpoena.

As a result, CohnReznick posits that allowing the Liquidators to bypass Cayman law would be a

"perversion of the comity concerns that underlie chapter 15 and would just invite forum

shopping."[20]  In support of its argument, CohnReznick cites to the Reynolds Declaration, in

which Ms. Reynolds states that, under Cayman law, insolvency representatives may not obtain

audit work papers or materials that are not the debtor's property.[21]

---

18    Objection at 8.
19    *See generally* Objection at 5-13.
20    Objection at 6.
21    *See* Objection at 6 ("As more fully set forth in the accompanying declaration of Rachael Reynolds . . . ,
under Cayman law, insolvency representatives may not obtain audit workpapers or materials that are not the debtor's
property." (citing to Reynolds Declaration ¶¶ 13-28)).

The Liquidators believe that this Court need not even address the issue of what a Cayman court would say about the discoverability of the subpoenaed documents.  Indeed, in oral argument, counsel for the Master Fund Liquidator argued quite emphatically that the question is irrelevant to this Court's chapter 15 analysis.  While that may indeed be so, nonetheless, the Court will examine the question of Cayman law.  Specifically, the Liquidators criticize CohnReznick's interpretation of Cayman law, arguing that CohnReznick has failed to introduce any evidence that the Cayman courts have affirmatively prohibited the discovery of evidence of the type sought here.  At best, they say, the Reynolds Declaration supports the conclusion that Cayman law on this issue is, as the Liquidators characterize it, "unsettled."[22]  The Court agrees.

The Reynolds Declaration describes the relief which may be available under section 138 of the Companies Law of the Cayman Islands (2016 Revision) (the "Companies Law").  Section 138 states that a Cayman court may require any person that "has in his possession any property or documents to which the company appears to be entitled" to "deliver such property or documents to the official liquidator."[23]  Reynolds states that the Liquidators "may . . . try to rely" upon section 138(1)."[24]  Ms. Reynolds concedes, however, that there is little judicial guidance from Cayman courts as to whether "audit working papers" constitute "property or documents to which the company appears to be entitled" as such term is used in section 138(1).  Ms. Reynolds states that liquidators in the Cayman Islands currently cite to one case, *China Milk Products Group Limited (In Liquidation)*,[25] in support of applications seeking production of audit work

---

[22]     *See* Reply at n.2 (citing Russell Declaration ¶ 11).
[23]     Reynolds Declaration ¶ 21.
[24]     *See id.* ¶¶ 20-21.
[25]     *See* Reynolds Declaration at Ex. 3 (*China Milk Products Group Limited (In Liquidation)* (FSD 83 of 2011 (AJJ), 20 May 2015).

papers that allegedly contain information belonging to the debtor; however, the *China Milk* decision does not squarely support CohnReznick's position here.

In *China Milk*, the Cayman liquidators sought assistance from the Grand Court in obtaining discovery of audit work papers from the auditors who had previously been engaged by China Milk, the company in liquidation.  While the parties had agreed that the audit work papers at issue were property of the auditors, the auditors acknowledged that information about the assets, liabilities, and transactions of China Milk could not be regarded as *exclusively* belonging to the auditor simply because the documents containing such information formed part of the audit work papers.  The Grand Court permitted certain discovery sought by the China Milk liquidators, reasoning that

> the official liquidators are not seeking to obtain information about audit programs and procedures in respect of which [the auditors] claim a proprietary interest. They are seeking information about China Milk's own assets and liabilities and, . . . it is not disputed that [the auditor's] audit working papers and files are likely to include copies of documents and information extracted from China Milk's books and records.[26]

The Grand Court concluded that the liquidators were entitled to obtain audit work papers and files pursuant to section 138 of the Companies Law if such documents were found to contain information from the company's own books and records.[27]  The court also noted that Hong Kong law, which governed the engagement letter[28] between the debtor and the auditor, permitted such discovery.

Relying on the Reynolds Declaration, CohnReznick argues that, under Cayman law, insolvency representatives may not obtain audit work papers or materials that are not the debtor's

---

[26]    *Id.* ¶ 16.
[27]    *Id.* ¶ 20.
[28]    As previously noted, the CohnReznick Engagement Letters are governed by New York law, not Cayman law, a fact which CohnReznick elects to ignore in its arguments and observations concerning Cayman law.

property.[29]  The Reynolds Declaration makes clear, however, that Cayman courts "have not yet given any further guidance on precisely what will constitute 'documents containing information belonging to a company', which may be obtained under section 138, notwithstanding that the documents themselves form part of the 'audit working papers.'"[30]  Accordingly, because the Cayman courts have not clearly defined what portions of audit work papers constitute a debtor's property, any assertion that audit working papers are the sole property of an auditor under Cayman law and cannot be produced to a company's liquidator for that reason is simply unsupported.

Additionally, although the Reynolds Declaration recognizes the Grand Court's ultimate holding in *China Milk,* Ms. Reynolds states that subsequent applications by liquidators for production of information pursuant to Cayman law (which have relied on the decision in *China Milk*) have proven unsuccessful.[31]  While that may be true, she cites no authority to support such assertion and, more importantly, concedes that these applications have all been unsuccessful on other grounds.[32]  CohnReznick also has not attempted to distinguish the facts in *China Milk* from the instant case by demonstrating that its audit work papers do not contain any information extracted from the Funds' books and records, which they undoubtedly do.

The Liquidators, in contrast, maintain that the Cayman courts have not yet fully addressed whether, in light of certain case law, audit work papers are available to liquidators pursuant to section 138 of the Companies Law, at least where the question of entitlement is governed by Cayman law.[33]  In the Russell Declaration, submitted by the International Fund

---

[29]    Objection at 6 (citing to Reynolds Declaration ¶¶ 13-28).
[30]    Reynolds Declaration ¶ 25.
[31]    *See id.* ¶¶ 24-25.
[32]    *Id.* ¶ 25.
[33]    *See* Reply at 4 n.2; Russell Declaration ¶¶ 11, 13.

Liquidators in support of the Reply, Mr. Russell states that this question is unsettled under

Cayman law.  Mr. Russell cites to *Singularis Holdings Ltd. v. PricewaterhouseCoopers, [2014]*

*UKPC 36* (*"Singularis"*), a decision in which the Judicial Committee of the Privy Council

denied an attempt by liquidators in a Cayman insolvency proceeding to obtain documents from

the debtor's former auditor by way of a Bermuda recognition proceeding but nonetheless

expressed doubt about whether information acquired in serving as a company's auditor would

belong exclusively to such auditor simply because the auditor recorded such information in

working papers which constitute its property.[34]  Although in *Singularis* the Privy Council did not

directly address the issue of whether audit working papers constitute "information belonging to a

company," it nonetheless stated that

> [the liquidators] have accepted before the Board that the information which they
> seek belongs to [its auditors] and was therefore properly excluded from the order
> made by the Grand Court of the Cayman Islands.  Whether this was correct was not
> therefore a point argued before the Board.  Nonetheless, the Board would not wish
> to part with this case without expressing their doubts about whether information
> which PwC acquired solely in their capacity as the company's auditors can be
> regarded as belonging exclusively to them simply because the documents in which
> they recorded that information are their working papers and as such their property.[35]

After considering the evidence presented by the parties on the issue of whether audit

work papers sought by liquidators are discoverable under the Companies Law – namely, the

decision of the Grand Court in *China Milk*, the dictum of the Privy Council in *Singularis*, and the

statements by the declarants here that there are no additional decisions by Cayman courts on the

issue – the Court finds that it has not been provided with evidence sufficient to enable it to

conclude that Cayman law prohibits the discovery sought in the Subpoena.  Accordingly, the

argument that comity prohibits granting the Motion fails.

---

[34]    *See* Russell Declaration ¶ 13 (citing *Singularis* ¶ 30).
[35]    *See* Reynolds Declaration at Ex. 9 (*Singularis Holdings Ltd. v. PricewaterhouseCoopers, [2014] UKPC 36*
¶ 30).

###### b.    Principles of Comity Support Granting the Motion

Even assuming *arguendo* that the discovery of audit work papers in connection with the

orderly wind-up of a company was clearly prohibited under Cayman law, which it is not, the

scope of discovery available in the foreign jurisdiction is not a valid basis upon which this Court,

in the exercise of its discretion, must limit relief available to the Liquidators pursuant to the

Bankruptcy Code and Rules.   Foreign law does not preclude the availability of additional relief

under chapter 15, particularly when granting such relief does not run contrary to the public

policy of the foreign jurisdiction.   Although the boundaries of the international comity doctrine

have been described as "amorphous" and "fuzzy,"[36] it is well-established that comity does not

require that the relief available in the United States be identical to the relief sought in the foreign

bankruptcy proceeding; it is sufficient if the result is comparable and that the foreign laws are not

repugnant to our laws and policies.[37]   As the Supreme Court has aptly noted, "[a] foreign nation

may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or

traditions—reasons that do not necessarily signal objection to aid from United States federal

courts."[38]

---

[36]       *See In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.*, 580 B.R. 64, 92 (Bankr. S.D.N.Y. 2018) (citing *JP Morgan Chase Bank v. Altos Hornos de Mexico*, 412 F.3d 418, 423 (2d Cir. 2005)).

[37]       *See In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1044 (5th Cir. 2012) (collecting cases); *In re Rede Energia S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010).

[38]       *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 261 (2004).  CohnReznick relies heavily on the guidance of the Supreme Court in *Intel*, in which the Court stated that, in determining whether a discovery order should be granted pursuant to 28 U.S.C. § 1782, a district court should consider whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65.  While foreign discovery laws should be considered for comity concerns, they are not determinative of whether discovery should be permitted under U.S. law.  Indeed, the Supreme Court specifically stated that "[b]eyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Id.* at 260.  The primary question is whether a foreign government would be offended by the assistance provided by the U.S. court. *Id.* at 261.
     Although the Liquidators inconsistently reject and embrace the applicability of section 1782 in their pleadings, *see* Motion ¶ 42; Gordon Letter at 2, the Court accepts CohnReznick's arguments that section 1782 is analogous to seeking discovery assistance under section 1521 and that courts routinely read the discovery provisions of section 1521 (or former section 304) in concert with section 1782. *See* Objection at 10 (citing *In re Barnet*, 737

The Liquidators submit that CohnReznick has "fail[ed] to introduce any evidence, let alone 'authoritative proof,' that Cayman would be actively hostile to evidence obtained from an auditor under U.S. law, much less that Cayman has affirmatively prohibited such discovery."[39] In support of this assertion, the Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law. In *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, the Cayman Islands Court of Appeal explicitly dismissed the notion that a plaintiff should be confined to the ordinary process of discovery permitted in the Grand Court where such right was conferred under a U.S. statute, 28 U.S.C. § 1782.[40] In addressing Lyxor's argument that [the Cayman litigant] should have been enjoined from seeking discovery from a non-party under U.S. law because it could have obtained the same information pursuant to Cayman law, the *Lyxor* court stated that

> [t]hat submission may or may not be well-founded but it misses the point. . . . The right to take pre-trial deposition testimony . . . is a right conferred by U.S. law—it is not a right conferred by, or to be withheld under, Cayman law. The relevant question is not whether [the Cayman litigant] could achieve a similar result in the Cayman Islands but whether (if it could) it is acting oppressively or abusively in seeking to rely on the right which it enjoys under U.S. law. [The Cayman litigant] has taken the view that its interests are best served by seeking to obtain the information which it needs by taking oral depositions in New York . . . rather than by proceeding by way of further and better particulars and interrogatories in the Grand Court . . . . It cannot be said that, in making that choice, it is acting oppressively or unconscionably or that its choice amounts to an abuse of the process of the Cayman Courts.[41]

---

F.3d 238, 251 (2d Cir. 2013) (explaining that, in light of section 1782, Congress "may have intended to limit the relief provided by chapter 15"); *In re Hughes*, 281 B.R. 224, 230 (Bankr. S.D.N.Y. 2002) (noting that "when determining the scope of discovery permissible in a 304 proceeding, section 304 should be read together with [§ 1782]"); *Hopewell*, 258 B.R. at 586 (noting that "§ 1782 provides a further reason not to distort § 304 and use it as a discovery tool in aid of arbitration")).

[39]     Reply at 5.

[40]     *See* Russell Declaration at Ex. 1 (*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, 2009 CILR 553).

[41]     *Id.* ¶¶ 57-58.

So too here.  The decision in *Lyxor* demonstrates that Cayman courts take a permissive, and indeed, solicitous, view of a Cayman litigant's efforts to utilize U.S. discovery procedures when possible, so long as such litigant is not acting oppressively or abusing the process of the Cayman courts.  Indeed, it is worth noting that this Court and others in the United States routinely preside over Cayman-based chapter 15 cases in which these courts have occasion to observe the active contributions of Cayman jurists and practitioners to the development of international insolvency law and practice and their dedication to principles of comity.

Because Cayman law neither prohibits nor is hostile to the discovery sought here under U.S. law, principles of comity decisively weigh in favor of granting the Motion.  The Liquidators argue persuasively that CohnReznick's interpretation of comity would reduce the role of this Court to that of "an avatar" for the foreign court presiding over the foreign main proceeding.[42] Further, requiring this Court to ensure compliance with foreign law prior to granting relief sought pursuant to chapter 15 would require the Court to engage in a full-blown analysis of foreign law each and every time a foreign representative seeks additional relief in the United States, which may result in differing interpretations of U.S. law depending on where the foreign main proceeding was pending.[43]  As the Liquidators correctly assert, this interpretation is contrary to the intent of the Model Law on which chapter 15 is based.[44]

---

[42]     *See* Master Fund Reply ¶ 8.

[43]     *See id.* ¶ 5.  Citing *In re Condor Ins. Ltd.*, 601 F.3d 319, 326-27 (5th Cir. 2010), CohnReznick asserts that assistance under chapter 15 "is not supposed to enlarge [a foreign representative's] powers" beyond the powers available in her home jurisdiction.  Objection at 6.  In *Condor*, the Fifth Circuit permitted a foreign representative to bring an avoidance action under the law of St. Kitts and Nevis, noting that, while section 1521(a)(7) of the Bankruptcy Code explicitly prohibits a foreign representative from bringing an avoidance action under chapter 5, section 1521 is silent regarding avoidance proceedings that apply foreign law.  *Id.* at 324.  The Liquidators correctly point out that, while *Condor* holds that a U.S. court may grant relief available under foreign avoidance law, the decision did not opine on the inverse; *i.e.*, the *Condor* court did not hold that relief under chapter 15 is *limited* to the relief available under the law of the liquidator's home forum.  *See* Reply at 6 n.5.  Moreover, section 1521 is not silent as to the relief sought here.  *See* Master Fund Reply ¶ 17.

[44]     *See* Master Fund Reply ¶ 5.

The Court is unpersuaded by CohnReznick's reliance on the decision in *Singularis* for the proposition that a U.S. court should not be able to compel the disclosure of documents which would not have been obtainable under Cayman law. In *Singularis*, as previously discussed, the Judicial Committee of the Privy Council found that the Bermuda court had no jurisdiction under common law to compel the disclosure of documents from the debtor's auditor, PwC, because such documents would not have been obtainable under the law of the Cayman Islands pursuant to where the winding-up was being carried out.[45] However, as CohnReznick admits, *Singularis*, which was an appeal from the Court of Appeal of Bermuda, is only authoritative and not technically binding on Cayman courts or on this Court.[46] Moreover, even assuming that *Singularis* were applicable here, its facts are distinguishable from the facts of this case, and the Court has serious reservations about its rationale. In *Singularis*, the Privy Council determined that Bermuda's law with respect to discovery pertained only to a Bermuda wind-up proceeding, and Singularis was a Cayman company in a Cayman liquidation proceeding. Further, finding that the Bermuda court had (i) no power to wind up a non-Bermudan registered company and (ii) no jurisdiction to conduct an ancillary liquidation, the Privy Council concluded that the Bermuda court had no statutory jurisdiction and instead, turned to the court's authority under common law. Here, in stark contrast, section 1521 specifically provides this Court with the authority to order the discovery sought by the Liquidators.

For all of the foregoing reasons, the Court concludes that application of section 1521 of the Bankruptcy Code to grant the Motion does not offend widely accepted notions comity.

### 2.    CohnReznick's Additional Arguments Are Unavailing

CohnReznick advances a number of additional arguments, all of which are unavailing.

---

[45]    *See* Reynolds Declaration ¶¶ 33-36.
[46]    *See* Reynolds Declaration ¶ 35.

First, CohnReznick also argues that the Subpoena is inappropriate because the Liquidators have

not attempted to seek discovery in the Caymans from CohnReznick Cayman, which has access to

the same working documents.[47]  In support of its assertion, CohnReznick cites to *In re Bd. of*

*Dirs. of Hopewell*, 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001) in which this court denied a

motion for discovery under former section 304 (the predecessor to chapter 15) in part because

the foreign representative had not sought the assistance of the foreign court.[48]  *Hopewell* is

factually distinguishable from this case; in denying the motion therein, the court found that "[t]he

relief Hopewell seeks is particularly inappropriate as it involves an arbitration, which is supposed

to take place with a minimum of court supervision and interference . . ."[49]  As there is no

pending arbitration or proceeding in this case (as discussed *infra*), *Hopewell* is inapposite and

does not support CohnReznick's position.

In fact, CohnReznick readily acknowledges that there is no absolute rule that the

Liquidators must exhaust their rights in the Cayman Islands before seeking relief in this Court.[50]

The Court agrees and declines to impose such a requirement on the Liquidators.  Moreover, the

Court observes that this argument is inconsistent with CohnReznick's comity argument.

CohnReznick cannot, on the one hand, object to discovery under U.S. laws by arguing that the

Liquidators should have first sought discovery in the Caymans, and on the other hand, argue that

such relief would not be permissible under Cayman law.

CohnReznick further contends that the Subpoena is unnecessary since it has already

turned over a thousand electronic files amounting to nearly one gigabyte of information and the

---

[47]     *See* Objection at 5-6.
[48]     *See* Objection at 7-8, 9.
[49]     *Hopewell*, 258 B.R. at 585.
[50]     *See* Objection at 7.

Liquidators have made no showing or suggestion that they are missing any records.[51] CohnReznick's arguments are unconvincing for a number of reasons. First, CohnReznick does not cite to any statute or legal authority that suggests that a foreign representative must demonstrate that it is missing any records before seeking discovery of such information. It also defies logic that the Liquidators would trouble themselves to the lengths they already have in order to seek documents already in their possession. Indeed, the purpose of discovery is to determine what information about the debtor is missing or known. As the Debtors' auditor, CohnReznick is uniquely situated to provide information about the Funds' financial affairs in the years leading up to the Funds' liquidation; this is not the type of "broad fishing expedition" denied by the court in *SPhinX Ltd.* And, as discussed *infra*, CohnReznick has made no showing that the Liquidators' discovery requests are unduly burdensome, particularly since CohnReznick only served as auditor for the Funds for two years. Accordingly, the Court finds it irrelevant that CohnReznick has already surrendered a number of documents to the Liquidators and declines to place any additional burden on the Liquidators to demonstrate missing records from such delivered documents.

### B. The Arbitration Provisions of the Engagement Letter Are Not Binding Because There Is No "Dispute, Controversy, or Claim" at Issue

CohnReznick argues that the Funds are precluded from seeking pre-litigation discovery pursuant to the Bankruptcy Code or Bankruptcy Rule 2004 because the parties are contractually bound by the arbitration clause in the Engagement Letters, which broadly applies to "[a]ny dispute, controversy, or claim" arising out of or related to the rendering of CohnReznick's

---

[51]    *See* Objection at 8.

services and such clause requires that such dispute, controversy, or claim be finally resolved by arbitration and not by a court of law.[52]

CohnReznick argues that the language in the relevant arbitration clauses is broad enough to encompass the discovery disputes between the Liquidators and CohnReznick, as such disputes can be considered a "dispute, controversy, or claim arising out of or related to the services or the performance or breach of [the Engagement Letters]."[53]  CohnReznick maintains that "questions about the existence of such disputes, controversies, or claims must be decided 'with a healthy regard for the federal policy favoring arbitration.'"[54]  Moreover, if the Court permits the Liquidators to conduct pre-suit discovery, and the Liquidators ultimately commence arbitration proceedings against CohnReznick, CohnReznick asserts that it will have lost its bargained-for right to have all disputes – including discovery disputes – decided and finally resolved by arbitration.  Additionally, CohnReznick alleges that the "true purpose" of the Liquidators' discovery requests is to search for "something CohnReznick did wrong to support a claim against it," including but not limited to breach of contract and/or negligence claims, and such non-core state law claims would be covered by the arbitration clauses in the Engagement Letters.[55]  For these reasons, CohnReznick submits that this Court should preclude any discovery that relates to the investigation of potential pre-petition state law claims against CohnReznick because the Court must give effect to the relevant arbitration clauses in the Engagement Letters.[56]

In further support of its argument, CohnReznick relies on *In re Daisytek, Inc.*, 323 B.R. 180 (N.D. Tex. 2005), in which the United States District Court for the Northern District of

---

[52]    *See* General Terms and Conditions, "Dispute Resolution," Cheifetz Declaration at Exs. 1-4.
[53]    *See* Objection at 17 (citing Cheifetz Declaration).
[54]    *See* Objection at 17 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).
[55]    Objection at 18.
[56]    *See id.* at 16-17.

Texas considered on appeal whether a pre-insolvency arbitration agreement superseded

bankruptcy-related discovery sought by a creditors' trust during the pendency of a bankruptcy

case for the purpose of investigating potential claims.  In *Daisytek*, the creditors' trust sought to

conduct a Rule 2004 examination of the debtors' former accountants, and, like CohnReznick, the

accountants argued that the arbitration clauses under the relevant engagement letters prevented

the trust from seeking court-ordered discovery.[57]  The court held that the discovery fell within

the bounds of the arbitration clause if the potential claims arising from the discovery would be

subject to arbitration.[58]  Vacating the Bankruptcy Court's order authorizing the Rule 2004

examination,[59] the court stated that "[t]he proper focus is on the underlying nature of the

proceedings that could flow from the information obtained through the Rule 2004

examination,"[60] and remanded the matter to the Bankruptcy Court, directing it to determine the

extent to which the proceedings the trust intended to initiate derived exclusively from the

provisions of the Bankruptcy Code.  The court held that "[i]f the court determines that a

proceeding does not derive exclusively from the Code, the court has no choice but to abstain and

allow the parties to arbitrate the matter."[61]  If, however, the Bankruptcy Court determined that

such proceeding derived exclusively from the Code, the Bankruptcy Court would have discretion

to refuse to enforce the applicable arbitration agreement if arbitration would conflict with the

purposes of the Code.[62]  CohnReznick submits that the holding in *Daisytek* supports its argument

that, because the Liquidators seek discovery in order investigate potential pre-petition state law

---

[57]       323 B.R. at 185-86.
[58]       *Id.* at 186 (citing *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997) ("[W]e believe that
nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding,
i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether
arbitration of the proceeding would conflict with the purposes of the Code.")).
[59]       *Id.* at 188.
[60]       *Id.* at 187.
[61]       *Id.* at 186-87 (citations omitted).
[62]       *Id.* at 187 (citations omitted).

claims against CohnReznick, such proceedings are non-core, state law claims that fall under the arbitration clauses in the Engagement Letters.

The Liquidators submit that the arbitration provisions under the Engagement Letters are irrelevant because the Liquidators have not asserted any claim against CohnReznick at this time; they are merely seeking information "essential to an investigation of the company's affairs and the identification of assets for the benefit of creditors."[63]  They argue that, in the absence of a pending proceeding, CohnReznick has no contractual right to limit the relief available to the Liquidators under the Bankruptcy Code.[64]  In fact, they emphasize that, were the Motion to be denied on the basis that the relevant arbitration clauses govern the instant discovery dispute, this would eviscerate the pending proceeding rule and undermine the fundamental purposes of section 1521(a)(4) and Bankruptcy Rule 2004.  As counsel stated at the hearing on the Motion, chapter 15 proceedings cannot be held hostage by an arbitration clause when there is no dispute pending.

The Court agrees.  One of the significant objectives of chapter 15 is to provide judicial assistance to foreign representatives in gathering information which will enable them to comply with their duties.  It would be at cross purposes with this objective, in the context of a foreign representative's application seeking discovery pursuant to section 1521, to interpret an arbitration clause so broadly that it eliminates this right.

Inasmuch as CohnReznick relies on the holding in *Daisytek* in support of its position, the Court concludes that the holding in *Daisytek* does not dictate a different result.  Here, the relief

---

[63]      Motion ¶ 8.

[64]      *See* Reply at 8-11.  The Liquidators also argue that the decision in *Daisytek* was wrongly decided and point to three subsequent decisions that have rejected its finding.  *See* Reply at 11-14 (citing *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 631 (Bankr. D. Del. 2016); *In re Friedman's, Inc.*, 356 B.R. 779, 783 (Bankr. S.D. Ga. 2005); *In re New Century TRS Holdings, Inc.* 407 B.R. 558, 571 (Bankr. D. Del. 2009)).

sought under Motion derives exclusively from the provisions of the Bankruptcy Code. The

discovery sought by the Liquidators from CohnReznick clearly falls within the scope of relief set

forth in sections 542(e), 1521(a)(4), and 1521(a)(7) of the Bankruptcy Code and Bankruptcy

Rule 2004. Although the holding in *Daisytek* can be interpreted broadly, the court's decision

was predicated on the fact that the Bankruptcy Court did not consider the underlying nature of

the proceedings in its decision to overrule the auditor's objection of Rule 2004 examination.[65]

Here, the Court has considered the underlying nature of the proceedings before it, and it

concludes that the Liquidators' discovery requests are derived from the Bankruptcy Code and

Rules, and, accordingly, this Court has discretion to decline to apply the arbitration clauses at

this time.

The instant discovery dispute is neither a pending proceeding nor a "dispute, claim, or

controversy" that falls within the parameters of the arbitration clauses in the Engagement

Letters.[66] The Liquidators have continuously stated that their main purpose in issuing the

Subpoena was to obtain information from CohnReznick about the Funds. It is well recognized

that the information and knowledge which an auditor is likely to have regarding a debtor for

which the auditor worked is essential to the investigation of such debtor's financial affairs.[67]

Here, as argued by counsel for the Master Fund Liquidators at oral argument on the Motion, the

notion that the Liquidators, who must manage the affairs of the Funds whose assets were largely

---

[65]    *Daisytek*, 323 B.R. at 188.

[66]    As explicitly stated by the court in *Daisytek*, a "proceeding" is more than a discovery device, "it is a procedural mechanism that enables one to obtain some form of remedy or other relief." *Id.* at 187. Furthermore, the "pending proceeding rule" does not bar relief for potential litigation. *See In re Glitnir*, 2011 WL 3652764, at *5 & n.12 ("That the Foreign Representative may eventually litigate with the same defendants, here or in Iceland, does not call for a different conclusion. In analogous circumstances, a bankruptcy trustee is free to use Rule 2004 to obtain evidence against a target even though it is likely that the trustee will eventually sue the target.").

[67]    *See In re Hughes*, 281 B.R. at 229 ("The issues concerning the insolvency of [the debtor], and when [the debtor] became insolvent requires the Joint Liquidators to understand as much as possible about the financial affairs of [the debtor]. The information and knowledge which the [auditor's] employees are likely to have is essential to this investigation.").

U.S.-based and held by U.S. subsidiaries, do not have the power to seek relief under U.S. law, cannot be countenanced.  Moreover, the need for discovery in this case is particularly acute given the anticipated lack of cooperation by the Funds' executives and the alleged criminal fraud with respect to the Funds.

Accordingly, the Court determines that the arbitration clauses under the Engagement Letters do not limit the relief available to the Liquidators under the Bankruptcy Code and Rules with respect to the Subpoena.

## IV.    CONCLUSION

For all of the foregoing reasons, the Motion is granted.  Any other arguments made and not specifically addressed in this Decision, including but not limited to the argument that the Subpoena is overly broad and should be narrowed, are hereby overruled.

IT IS SO ORDERED.

Dated: April 17, 2018
    New York, New York

                                              /s/ Shelley C. Chapman
                                              HONORABLE SHELLEY C. CHAPMAN
                                              UNITED STATES BANKRUPTCY JUDGE